Kenneth H. Bridges (SBN 243541)
kbridges@bridgesmav.com
Michael T. Pieja (SBN 250351)
mpieja@bridgesmav.com
Lawrence Lien (SBN 265851)
llien@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
Telephone: (650) 804-7800
Facsimile: (650) 852-9224

James Shimota (*Pro hac Vice*)
jshimota@bridgesmav.com
Aaron Taggart (SBN 258287)
ataggart@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
180 N LaSalle, Suite 2215
Chicago, IL 60601
Telephone: (312) 216-1620
Facsimile: (312) 216-1621

ATTORNEYS FOR DEFENDANT
APPLE INC.

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

FLATWORLD INTERACTIVES LLC

                    Plaintiff,

v.

APPLE INC.

                    Defendant.

Case No. 3:12-01956-JSW (EDL)

**DECLARATION OF MICHAEL T. PIEJA PURSUANT TO THE COURT'S APRIL 18, 2013, ORDER (DOCKET NO. 111)**

        Pursuant to the Court's Order of April 18, 2013 (Docket No. 111), I, Michael T. Pieja,

hereby submit the following declaration. I am a member of Bridges & Mavrakakis LLP, counsel

of record for Defendant Apple Inc. in the above-captioned matter. The matters referred to in this

declaration are based on personal knowledge, unless otherwise specified, and if called as a

witness I could, and would, testify competently to these matters.

1.      At the April 9, 2013, motion hearing, before this Court, the parties discussed

FlatWorld's motion to compel the production of certain documents relating to Apple's claims of

damages in other litigation.  At the hearing, and in an Order dated April 18, 2013, the Court

ordered Apple to provide a declaration setting forth what would be required to produce to

FlatWorld copies of Apple's damages expert reports and exhibits thereto, along with any trial

transcripts, from the litigation between Apple and Motorola, consistent with the Protective Order

in that case.

2.      I am also counsel of record for Apple in certain of its litigations with Motorola

and have therefore been able to secure the necessary protective order permissions to review the

documents in question personally and to provide the information below to the Court based on my

personal review and knowledge.

3.      There are two litigations between Apple and Motorola that included damages

claims on patents relating generally to graphical user interfaces that could be used in a touch-

based product.  The first of these is *Motorola Mobility, Inc. v. Apple Inc.*, Case No. 1:12-cv-

20271-RNS (S.D. Fla.).  I am counsel of record for Apple in that action.  Due to the schedule

adopted in that case, no expert reports have yet been submitted or exchanged there.

4.      The second case is *Apple Inc. et al v. Motorola Inc. et al*, Case No. 11-cv-08540

(N.D. Ill.).  This litigation involved around twenty patents.  I am personally familiar with the

subject matter of most of these patents, and the vast majority of them relate to operating systems

and software design, or to cellular telecommunications standards, rather than user-interface and

touch-related technologies.

5.      I have conferred with the counsel who actively represented Apple in the Northern

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

District of Illinois action and I understand that, in that case, Apple provided expert reports relating to the issue of damages from Brian W. Napper.  I am informed that Mr. Napper submitted three expert reports: an initial report addressing Apple's claims of infringement, a rebuttal report addressing Motorola's claims of infringement, and a supplemental report also addressing Apple's claims of infringement.  I understood from page 6 of FlatWorld's reply brief, and from page 15 of the hearing transcript that FlatWorld has limited its request to Apple's expert reports relating to Apple's claims of patent infringement, and I have reviewed both such reports.

6.      Mr. Napper's initial expert report is approximately 300 pages long.  The parties in the *Apple v. Motorola* (N.D. Ill.) litigation have already generated a version of this report with Motorola's CBI redacted.  These redacted versions were generated as a result of an agreement between the parties in *Apple v. Motorola*, so that each party's counsel could show their client a redacted version of the reports.

7.      In addition to Motorola's CBI, Mr. Napper's first report also contains information relating to patent license and settlement agreements between Apple and over 125 third parties, which Mr. Napper included as part of his attempt to identify comparable licenses for his analysis of the "hypothetical negotiation" between Apple and Motorola.  This information has not been redacted.  The vast majority of the third-party licenses referenced in Mr. Napper's report do not relate to user-interface and touch-related technologies, but relate to other, different technologies such as cellular telecommunications.  As noted above, *Apple v. Motorola* involved many patents that do not relate to user interface or touch technologies, and I understand that these licenses were alleged to be relevant to these other technologies.

8.      The body of Mr. Napper's March 20, 2012, report discusses some of these third-party licenses and their impact on the hypothetical negotiation.  An addendum includes further

descriptions of the terms of each license, specifically including the monetary payments made or received under each, the rights granted by each license, and other terms.  In total, information relating to these licenses is information is present on 47 pages of the report, 44 of which are summaries and analyses written in approximately an 8-point font.

9.     Without reviewing each of the 125 licenses in detail, I cannot state for certain which of the information relating to the terms of each of the licenses in question is subject to a confidentiality restriction in the license itself.   I have, however, seen over a dozen of the licenses in question as part of my work on various matters for Apple, and I know that the financial, and certain other, terms for each of those licenses are subject to a confidentiality restriction.  I also know from my personal experience that it is extremely common, but not universal, for Apple's patent licenses to include a provision that states that certain terms of the license, such as the financial terms, are confidential and cannot be divulged without permission.  The licenses also provide requirements about what notice much be provided to the third parties prior to disclosure of any information designated as confidential so that they may object.  These notice requirements generally must be complied with each time the information is produced in litigation.

10.     Accordingly, in order to redact the confidential portions of the third-party license information, or to produce Mr. Napper's initial report with only Motorola's CBI redacted, I would have to do the following: review the licenses for each of the 125 third parties at issue, determine what confidentiality provisions are included in each, identify the requirements the license sets forth for notifying the relevant third parties, identify the appropriate third-party contacts for each license, and contact each third party to secure their permission to disclose the information in this case or their agreement that I had fully redacted any confidential information of theirs from the document.  If the third party objected, I would have to negotiate with them regarding their objections and respond to any motion that any of these third parties chose to file.

11.     I have reviewed Mr. Napper's supplemental expert report on Apple's patents. This report does not appear to contain any third-party CBI other than Motorola CBI, and a copy of this report with Motorola CBI redacted has already been generated.  Also, I am aware that there are no trial transcripts that could be produced in this matter because Judge Posner dismissed all parties' claims before any trial was held.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on April 23, 2013 at Palo Alto, California.


                                        /s/ Michael T. Pieja
                                        Michael T. Pieja