Kenneth H. Bridges (SBN 243541)
kbridges@bridgesmav.com
Michael T. Pieja (SBN 250351)
mpieja@bridgesmav.com
Lawrence Lien (SBN 265851)
llien@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
Telephone:  (650) 804-7800
Facsimile: (650) 852-9224

James A. Shimota (admitted *pro hac vice*)
jshimota@bridgesmav.com
Aaron Taggart (SBN 258287)
ataggart@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
180 N LaSalle, Suite 2215
Chicago, IL 60601
Telephone:  (312) 216-1620
Facsimile: (312) 216-1621

ATTORNEYS FOR DEFENDANT
APPLE INC.

John J. Steele (SBN 122872)
john.steele@johnsteelelaw.com
JOHN STEELE, ATTORNEY AT LAW
2225 East Bayshore Road, Suite 200
Palo Alto, CA 94303
Tel: (650) 320-7662

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FLATWORLD INTERACTIVES LLC<br><br>        Plaintiff,<br><br>v.<br><br>APPLE INC.<br><br>        Defendant. | Case No. 3:12-01956-JSW (EDL)<br><br>**APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISQUALIFY HAGENS BERMAN SOBOL SHAPIRO LLP OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS, AND FOR REFERRAL TO A SPECIAL MASTER**<br><br>**Noticed Hearing Date and Time:**<br>July 26, 2013, 9:00 am, Courtroom 11 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................... 1

II.  FACTUAL BACKGROUND .................................................................................. 2

    A.  John McAleese's Firm, Morgan, Lewis & Bockius LLP, Has Represented
        Apple for Ten Years on Hundreds of Matters Relating to the iPhone. ............................ 3

    B.  John McAleese, Along With His Wife, Jennifer, Are Investors in FlatWorld
        and Own 35% of FlatWorld. ............................................................................................ 3

    C.  FlatWorld and Mr. McAleese Targeted Apple With the Patent-in-Suit
        Since 2007. ........................................................................................................................ 3

    D.  Mr. McAleese Continued to Communicate With FlatWorld and Hagens
        Berman Throughout FlatWorld's Litigation With Apple. ............................................... 6

    E.  Mr. McAleese Passed Apple Confidences Regarding the FlatWorld Litigation
        and FlatWorld's Claims of Privilege to Hagens Berman. .............................................. 7

    F.  The Document Production and Privilege Logs Provided by Hagens Berman
        for FlatWorld Relating to Mr. McAleese's Involvement Contain Significant
        Irregularities. .................................................................................................................... 8

III. ARGUMENT ........................................................................................................... 9

    A.  Since 2007, John J. McAleese III Has Acted as FlatWorld's Attorney,
        Directly Contrary to the Interests of His Client, Apple. ................................................ 9

    B.  Because Mr. McAleese's Law Firm, Morgan Lewis, Has Represented Apple
        Continuously Since 2003, Mr. McAleese Would Be Disqualified From
        Representing FlatWorld Adverse to Apple. ................................................................... 12

    C.  Hagens Berman is Co-Counsel With John McAleese and Therefore Must Be
        Disqualified as Well. ...................................................................................................... 13

        1.  Hagens Berman Should Be Treated as John McAleese's Co-Counsel
            Because Mr. McAleese Actively Worked With Hagens Berman to
            Provide FlatWorld With Legal Advice on Issues in This Litigation
            and to Support FlatWorld's Strategy on Privilege Issues. .................................. 13

        2.  The Court Should Apply California Case Law Presuming That
            Co-Counsel to a Conflicted Lawyer is also Conflicted and Must Be
            Disqualified. ........................................................................................................ 15

        3.  Caselaw Applying a "Fact Specific" Standard as Opposed to the
            *Pound* Presumption Does Not Consider Relevant California Law and
            Should Not Be Followed. ...................................................................................... 17

        4.  Even Under the Fact-Specific Analysis of the *Airport Car Rental* Line
            of Cases, Hagens Berman Must Be Disqualified. ............................................... 19

APPLE'S  MOTION TO DISQUALIFY OR,
IN THE ALTERNATIVE, TO STAY
        i
        Case No. 12-1956 JSW

     5.   The Obfuscation of Relevant Facts Under Hagens Berman's Watch Separately Justifies a Presumption that Hagens Berman Has Received More Than Just One Apple Confidence and Additional Legal Advice From Mr. McAleese. ..........................................................................20

   D.  If the Court Believes that Further Discovery Would Assist in Resolving the Issues Presented, It Should Stay Proceedings and Refer the Matter to a Special Master. ....................................................................................................23

IV.   CONCLUSION ...........................................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*Advanced Messaging Techs., Inc. v. Easylink Servs. Int'l Corp.*,
    No. CV 11-04239, 2012 U.S. Dist. LEXIS 179698 (C.D. Cal. Dec. 19, 2012) ...12, 17, 18

*Beltran v. Avon Prods., Inc.*,
    867 F. Supp.2d 1068 (C.D. Cal. 2012) ....................................................................17

*Canatella v. Krieg, Keller, Sloan, Reilly & Roman LLP*,
    No. C 11-05535, 2012 U.S. Dist. LEXIS 33606 (N.D. Cal. Mar. 13, 2012) ............17, 18

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962) ....................................................................................24

*Farnham v. State Bar*,
    552 P.2d 445 (Cal. 1976) .........................................................................................10

*Flatt v. Superior Court*,
    885 P.2d 950 (Cal. 1994) .........................................................................................13

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*,
    No. C 08-04909, 2010 U.S. Dist. LEXIS 35867 (N.D. Cal. Mar. 20, 2010) ..................18

*In re Airport Car Rental Antitrust Litigation*,
    470 F. Supp. 495 (N.D. Cal. 1979) .......................................................................17, 19

*Kane, Kane & Kritzer, Inc. v. Altagen*,
    165 Cal. Rptr. 534 (Cal. Ct. App. 1980) ....................................................................10

*Miller v. Metzinger*,
    154 Cal. Rptr. 22 (Cal. Ct. App. 1979) .......................................................................9

*Oracle Am., Inc. v. Innovative Tech Distribs., LLC*,
    No. 11-CV-01043, 2011 U.S. Dist. LEXIS 78786 (N.D. Cal. July 20, 2011) ...........17, 19

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys.*,
    980 P.2d 371 (Cal. 1999) ....................................................................................10, 12

*Pound v. DeMera DeMera Cameron*,
    135 Cal. App. 4th 70 (Cal. Ct. App. 2005) ....................................................13, 15, 16, 17

*Rico v. Mitsubishi Motors Corp.*,
    171 P.3d 1092 (Cal. 2007) ........................................................................................22

*Stratagene v. Invitrogen Corp.*,
    225 F. Supp. 2d 608 (D. Md. 2002) ............................................................................24

**RULES**

ABA Model Rules of Prof'l Conduct. R. 1.10 (2012) ..................................................12

ABA Model Rules of Prof'l Conduct. R. 1.7 ...................................................................13

Cal. Rules of Prof'l Conduct R. 3-310 (2013)...............................................................13

Penn. Rules of Prof'l Conduct R. 1.10 (2013) ..............................................................12

Penn. Rules of Prof'l Conduct R. 1.7 ............................................................................13

## SUMMARY OF ARGUMENT

Apple's motion to disqualify plaintiff's trial counsel or alternatively to stay proceedings and refer the issues to a special master stems from a remarkable set of recently-uncovered facts showing that a partner at one of Apple's outside patent law firms has been secretly working for Apple's adversary, FlatWorld, for over six years.  That partner, John J. McAleese III, is an investor in FlatWorld. Over the years he worked on numerous distinctly legal matters for FlatWorld.  His involvement with FlatWorld persisted after this case was filed, and has culminated in his providing an Apple confidence relating to Apple's legal strategies in this case to plaintiff's trial counsel, Hagens Berman.  Rather than put a stop to Mr. McAleese's activities, Hagens Berman participated in them, and concealed them from Apple.  Indeed, Hagens Berman used the information Mr. McAleese provided them to make strategic changes to their positions in this litigation and remained silent about his contacts with them.

As detailed in the memorandum, Mr. McAleese, FlatWorld, and Hagens Berman have engaged in a web of communications and mutual assistance so significant that Mr. McAleese must be considered to be Hagens Berman's co-counsel.  Under California law, Hagens Berman must then be disqualified, both because Mr. McAleese's conflict in working against his own client, Apple, is presumed to infect Hagens Berman, and because of the direct evidence that Apple confidences have passed from Mr. McAleese to Hagens Berman. *See Pound v. DeMera DeMera Cameron*, 135 Cal. App. 4th 70 (Cal. Ct. App. 2005).

Apple brings this motion now because it believes there is already ample evidence to require disqualification, and to halt the prejudice Apple continues to suffer as long as FlatWorld is represented by a firm tainted by the conflicts of one of Apple's own lawyers.  If the Court believes that a more completely developed record is necessary, Apple alternatively moves for a stay of proceedings on the merits pending resolution of this issue.  In that case, Apple further moves the Court for referral to a special master to assist the Court and Apple in uncovering the rest of the evidence relating to disqualification, and to the additional claims and defenses that should be pled before proceeding on the merits.

PLEASE TAKE NOTICE that Defendant Apple Inc. ("Apple") hereby moves this Court for an order disqualifying Plaintiff FlatWorld Interactive LLC's ("FlatWorld") counsel Hagens Berman Sobol Shapiro LLP ("Hagens Berman") or, in the alternative, staying all discovery and proceedings on the merits pending resolution of the disqualification issue and referring the matter to a special master to oversee additional fact gathering regarding Plaintiff's conduct. This motion is noticed for a hearing on Friday, July 26, 2013, at 9:00 am, in Courtroom 11.

## I.  INTRODUCTION

Apple's motion to disqualify is not based on mere structural or technical conflicts. Rather, it stems from a remarkable set of recently-uncovered facts showing that a partner at one of Apple's outside patent law firms has been secretly working for Apple's adversary, FlatWorld, for over six years. The evidence to date shows that this partner, John J. McAleese III, has:

- Conferred with and provided FlatWorld with legal advice on patent litigation, prosecution, licensing, and enforcement—all targeting Apple—since 2007;

- Communicated with FlatWorld's counsel, Hagens Berman, during this litigation and received numerous emails including Hagens Berman legal advice and copies of Apple's pleadings; and

- Provided Hagens Berman with Apple confidences relating to Apple's legal strategies in this case.

Rather than put a stop to Mr. McAleese's activities, Hagens Berman participated in them and concealed them from Apple. Indeed, Hagens Berman used the information Mr. McAleese provided it to make strategic changes to its positions in this litigation. The diagram on the following page summarizes these misdeeds: while there should be no communications between Apple's patent counsel and FlatWorld (except through the parties' litigation counsel of record), there are in fact many.

Given the number and types of contacts between Mr. McAleese, FlatWorld, and Hagens Berman, Mr. McAleese must be considered to be Hagens Berman's co-counsel. Under California law, Hagens Berman must be disqualified, both because Mr. McAleese's conflict in working against his own client, Apple, is presumed to infect Hagens Berman, and because of the



direct evidence that Apple confidences have passed from Mr. McAleese to Hagens Berman.

While the evidence available to date is compelling, more facts exist (or, at least, existed). Directly relevant documents appear to have been destroyed, or withheld but not logged by Hagens Berman. Apple brings this motion now to halt the prejudice Apple continues to suffer as long as FlatWorld is represented by a firm tainted by the conflicts of one of Apple's own lawyers and because ample evidence already exists to require disqualification. If the Court believes that a more completely developed record is necessary, Apple alternatively moves for a stay of proceedings on the merits pending resolution of this issue. In that case, Apple further moves the Court for referral to a special master to assist the Court and Apple in uncovering the rest of the evidence relating to disqualification, and any additional claims and defenses that may arise out of this set of facts.

## II. FACTUAL BACKGROUND

This section lays out facts that Apple has recently learned from FlatWorld and a number of third parties. Because this draws on a large number of documents from many sources, Apple

has compiled the relevant portions of the supporting documents in summary form as Exhibit 37 to the Declaration of Michael T. Pieja ("Pieja Decl.").[1]  This summary is cited below along with the original source citations to assist in following the trail of evidence.

### A.  John McAleese's Firm, Morgan, Lewis & Bockius LLP, Has Represented Apple for Ten Years on Hundreds of Matters Relating to the iPhone.

John J. McAleese, III, is (and at all relevant times has been) a partner in Morgan, Lewis & Bockius LLP ("Morgan Lewis"), a law firm with its head office in Philadelphia.  (Ex. 9.) Morgan Lewis has been Apple's counsel continuously from 2003 until today.  (Declaration of Cyndi Wheeler ("Wheeler Decl.") at ¶¶2, 7.)  Over that time, Morgan Lewis has, among many other things, prosecuted hundreds of patent applications relating to the touch- and gesture-based user interface of the iPhone.  (*Id.* at ¶4.)  This technology—the touch interface of the iPhone and other Apple products—is what FlatWorld accuses of infringement in the present case.

### B.  John McAleese, Along With His Wife, Jennifer, Are Investors in FlatWorld and Own 35% of FlatWorld.

FlatWorld, the plaintiff here, was founded in early 2007, and is the assignee of the patent in suit.  (D.E. 1 at ¶18.)  At the time of its founding, John McAleese and his wife, Jennifer, "contributed capital" to FlatWorld.  (Ex. 37 at 1; Ex. 16.)  Jennifer McAleese became the holder (in name at least) of 35% of the outstanding shares of FlatWorld.  (D.E. 2.)  She also became, along with the inventor of the patent in suit, Slavoljub Milekic, one of FlatWorld's two officers and directors.  (*Id.*; Ex. 34.)  Even before FlatWorld's formal organization in early 2007, John McAleese was provided drafts of FlatWorld's basic incorporation and business organization documents, apparently for review.

### C.  FlatWorld and Mr. McAleese Targeted Apple With the Patent-in-Suit Since 2007.

FlatWorld's infringement allegations relate to a specific gesture in the user interfaces of Apple's iOS devices (such as the iPhone and iPad), Mac computers, and iPod nano.  The iPhone,

---

[1] Unless otherwise noted, citations to exhibits herein refer to exhibits attached to the Pieja Declaration.

which was the first of these devices to incorporate the accused feature, was a closely-held secret until January 9, 2007, when Steve Jobs publicly demonstrated it.  (*See* Ex. 17.)

On January 15, 2007, just six days after the iPhone was revealed, John McAleese consulted with FlatWorld about "potential infringement," "potential litigation," and "business planning." (*See* Ex. 37 at 4; Ex. 3 and Ex. 6 at PRIV1072, PRIV1125, PRIV1315.)[2]  Similarly, in May 2007, John McAleese and FlatWorld discussed "prelitigation investigation," "patent prosecution status," and "potential litigation."  (*See* Ex. 37 at 4; Ex. 3 and Ex. 6 at PRIV0714, PRIV1036; Ex. 5 and Ex. 6 at JMPriv139A.)  Then, in July 2007, shortly after Mr. McAleese received further communications relating to patent "prosecution status," FlatWorld applied for a reissue of the patent-in-suit to, as it later explained, "tailor it more closely to iphone claims [sic]."  (*See* Ex. 2; Ex. 37 at 5-6.)

Mr. McAleese also began participating in FlatWorld's attempts to sue Apple, or to partner with or sell its patent to others to sue Apple.  The first of what would become many such attempts came on June 13, 2007, when John McAleese emailed Daniel Golub, a fellow partner at Morgan Lewis, requesting the name of a firm that "will purchase patents to enforce against infringers."  (*See* Ex. 37 at 7; Ex. 19.)  A week later, FlatWorld began exchanging emails with Rembrandt IP Management LLC, a company that purchases and enforces patents.  These emails discussed the "iPhone" and "potential Rembrandt/FlatWorld litigation theories."[3] (*See, e.g.*, Ex. 37 at 8; Ex. 20 at REM-00000849, REM-00000800, REM-00000822, REM-00000747; Ex. 21.)

---

[2] Documents with a "JM" or "JMPriv" prefix are documents that were produced or logged by John McAleese in response to Apple's subpoena.  Documents with a "MLB_A" prefix are documents that were produced or logged by Morgan Lewis in response to Apple's subpoena.  Documents with a "MLB_F" prefix are documents that were located by Morgan Lewis in response to Apple's subpoena but produced or logged by FlatWorld pursuant to an agreement between the parties.  Finally, documents with a "FWAPP" or "PRIV" prefix are documents that were produced or logged by FlatWorld in response to Apple's discovery requests. Exhibit 6, as cited herein, includes the combined entries relating to John McAleese from all privilege logs in chronological order.

[3] The descriptions come from Rembrandt's privilege log, as these documents are apparently missing from FlatWorld's production and logging, and are being withheld under claims of privilege by Rembrandt.

1    FlatWorld's efforts to target Apple – and Mr. McAleese's involvement – continued over
2  the next several years.  In February 2008, a letter on John McAleese's Morgan Lewis computer
3  was edited using Mr. McAleese's user credentials.  (*See* Ex. 37 at 9-11; Ex. 22.)[4]  The letter
4  appears to be from FlatWorld to a potential buyer of FlatWorld or its patent.  (*Id.*).  It repeatedly
5  mentions Apple as an alleged infringer, stating that FlatWorld's patent "is being used by Apple"
6  and "[a]ccording to legal counsel and troll patent companies, we have an excellent position
7  against Apple if we decide to take that course."  (*Id.*)

8    Likewise, in September 2009, FlatWorld contacted Acacia, one such patent troll
9  company.  (*See* Ex. 37 at 12; Ex. 4 at MLB_F0000210D.)  During this time, Mr. McAleese
10  discussed "potential representation for FlatWorld litigation" and a "[l]icense agreement
11  pertaining to potential representation."  (*See* Ex. 5 and Ex. 6 at JMPriv151A, JMPriv155.)  He
12  also received emails including discussions with Acacia, and an email from FlatWorld that
13  attached information regarding the "Relationship Models" that Acacia offers to patent holders
14  and a draft "Exclusive License Agreement" between Acacia and a patent owner.  (Ex. 37 at 12-
15  15; Ex. 4 and Ex. 6 at MLB_F0000210A-D; Ex. 23 at 11; Ex. 24; Ex. 25; Ex. 26.)

16    Similarly, in June and July of 2010, FlatWorld talked to a patent brokerage company,
17  ICAP Ocean Tomo LLC, about the possibility of listing FlatWorld's patent in an upcoming IP
18  auction. (*See* Ex. 37 at 16; Ex. 27.)  The correspondence states that "Jennifer's husband [*i.e.*, Mr.
19  McAleese] is reviewing the docs," apparently referring to legal agreements governing the
20  placement of FlatWorld's patent at auction. (*Id.*)

21    By 2011, FlatWorld had begun to contact Apple competitors, such as Nokia, who were
22  known to be involved in patent disputes with Apple.  For instance, in an April 5, 2011, email to
23  Nokia, FlatWorld (via Mr. McAleese's wife, Jennifer) told Nokia that "[g]iven your various
24  patent litigations with Apple, I strongly encourage you to take a look at this patent as a potential

---

[4] As shown in Ex. 22 at MLB_A0000015-17, the edits to this letter were made by "MCAL5094."
Michael Ossip, Morgan Lewis' General Counsel, confirmed that MCAL5094 identifies user John
McAleese.  (*See* Pieja Decl. at ¶25).

patent for your portfolio." (*See* Ex. 37 at 17-20; Ex. 1 at FWAPP00004778; Ex. 38.) After receiving Nokia's response, FlatWorld (again via Jennifer McAleese) emailed John McAleese, asking him to "[c]all me when u r driving home so we can discuss a response [sic]." (*See* Ex. 37 at 17-20; Ex. 28 at FWAPP00004699.)  That email seems to have crossed with John McAleese's own email expressing a similar idea:  at nearly the same moment, John McAleese told FlatWorld, "[l]et's talk before your reply to this, okay?" (*See* Ex. 37 at 17-20; Ex. 1 at FWAPP00004777.)  FlatWorld responded, "Yes, definitely." (*Id.*)

While exploring sale options, FlatWorld and Mr. McAleese also continued to explore the option of asserting the patent-in-suit against Apple directly.  On April 8, 2011, John McAleese emailed FlatWorld about "enforcement options."  (*See* Ex. 37 at 21; Ex. 4 and Ex. 6 at MLB_F0000325.)  He then apparently attached an article describing the ITC as a potential forum for patent disputes in the "smartphone" area and noting Apple's suits with its competitors.  (Ex. 29.)  In early 2011, John McAleese attended a meeting with prospective litigation counsel for FlatWorld in the Philadelphia area.  (Ex. 7.)

### D.   Mr. McAleese Continued to Communicate With FlatWorld and Hagens Berman Throughout FlatWorld's Litigation With Apple.

Mr. McAleese's involvement continued apace after Hagens Berman appeared on the scene.  On February 22 and 23, 2012, FlatWorld (via Jennifer McAleese) forwarded John McAleese emails containing Hagens Berman's legal advice. (Ex. 5 and Ex. 6 at JMPriv028A-28C, JMPriv026A-26B.)  On February 27, 2012, John McAleese used his cell phone to call Mark Carlson of Hagens Berman and spoke with him for 29 minutes.  (*See* Ex. 11; Ex. 12.) Approximately a month later, FlatWorld filed the present suit, listing Mark Carlson and two other lawyers from Hagens Berman as counsel of record.  (D.E. 1).

As the case progressed, FlatWorld sent John McAleese at least 10 email chains from Hagens Berman, each described as containing "legal advice pertaining to FlatWorld litigation" or "legal advice regarding FlatWorld representation for patent litigation."  (*See* Ex. 5 and 6 at JMPriv004A-B, JMPriv011A-C, JMPriv013A-B, JMPriv014A-F, JMPriv017A-B, JMPriv018A-C,  JMPriv023A-D,  JMPriv026A-B,  JMPriv027A-B,  JMPriv028A-F.).      FlatWorld  also

forwarded Mr. McAleese litigation documents, including Apple's Answer and Apple's invalidity contentions.  (*See, e.g.*, Ex. 7; Ex. 8; Pieja Decl. at ¶9.)

**E.   Mr. McAleese Passed Apple Confidences Regarding the FlatWorld Litigation and FlatWorld's Claims of Privilege to Hagens Berman.**

Apple began to discover the facts discussed here on February 22, 2013, when FlatWorld served its first privilege log.  (*See* Ex. 9.)  Mr. McAleese's name appeared on that log as a sender, recipient, or in the subject matter description of more than 50 communications with FlatWorld, dated from December 2006 to December 2011. (*See* Ex. 9; Ex. 10.)  FlatWorld's log asserted that its communications to and from Mr. McAleese were protected by the attorney-client privilege.  (*Id.*)  FlatWorld also provided a "key" describing the persons on its log.  This key described Mr. McAleese as an "[a]ttorney at Morgan Lewis & Bockius LLP."  (*Id.*)

On February 25, 2013, the first business day after FlatWorld provided its log, Apple in-house counsel Jeff Risher sent a confidential, attorney-client privileged communication to Scott Garner, a Morgan Lewis partner.  (*See* Declaration of Jeff Risher ("Risher Decl.") at ¶¶4-5; Declaration of Michael J. Ossip ("Ossip Decl.") at ¶2.)  The next day, Mr. Garner forwarded this confidential communication to John McAleese.  (*See* Ossip Decl. at ¶3; Risher Decl. at ¶6.)

Upon receiving Apple's communication, John McAleese immediately called FlatWorld. (*See* Ossip Decl. at ¶5.)  He then called Mark Carlson at Hagens Berman and talked with him about FlatWorld's privilege log and Apple's reaction to it.  (*See id.* at ¶6.)

The next day, February 27, Hagens Berman served a "First Amended Privilege Log." (*See* Ex. 13.)  This new log replaced (almost) all claims of "attorney-client privilege" over FlatWorld's communications with Mr. McAleese with an assertion of the "spousal privilege," presumably because John McAleese sometimes communicated with FlatWorld via his wife, Jennifer McAleese.  (*See* Ex. 10; Ex. 13.)  In serving this "amended" privilege log on Apple and its counsel of record, Hagens Berman made no mention of its communications with John McAleese, instead asserting that it had merely "reviewed and corrected the entries for documents in which John McAleese is listed as a recipient."  (*See* Ex. 14.)

**F.     The Document Production and Privilege Logs Provided by Hagens Berman for FlatWorld Relating to Mr. McAleese's Involvement Contain Significant Irregularities.**

After receiving FlatWorld's February 22 and 27 privilege logs, Apple pursued discovery relating to Mr. McAleese's association with FlatWorld and Hagens Berman from several sources, including FlatWorld, along with John McAleese, Morgan Lewis, Acacia, Rembrandt IP, and other third parties with whom FlatWorld communicated regarding the patent-in-suit.  (*See, e.g.*, Ex. 4; Ex. 5; Ex. 20.)  Apple's analysis of this discovery revealed multiple irregularities.

First, in response to Apple's subpoena, John McAleese—represented by his personal attorney, John Widman—produced documents and a privilege log.  (*See* Ex. 4.)  This log includes numerous emails between Mr. McAleese and FlatWorld.  (*Id*; *see also* Ex. 6.)  At least 100 of these emails do not appear on the privilege log Hagens Berman produced for FlatWorld. In turn, FlatWorld's own privilege log includes at least 20 emails from FlatWorld to John McAleese that do not appear on Mr. McAleese's privilege log.  (*See* Ex. 36.)  Similarly, John McAleese's personal privilege log includes ten email chains that Mr. McAleese received containing Hagens Berman's legal advice from FlatWorld.  (*See* Ex. 4 and Ex. 6 at JMPriv004A-B,   JMPriv011A-C,   JMPriv013A-B,   JMPriv014A-F,   JMPriv017A-B,   JMPriv018A-C, JMPRiv023A-D, JMPRiv026A-B, JMPRiv027A-B, JMPriv028A-F.)   Although these emails originated from an account associated with FlatWorld's officer, Jennifer McAleese, they do not appear anywhere on any FlatWorld privilege log.  Likewise, third-party Rembrandt IP recently produced a privilege log listing over 20 communications with FlatWorld that relate to the "iPhone" and potential infringement theories.  (*See* Ex. 21.) Apple has been unable to locate any of these communications on any of the privilege logs Hagens Berman has provided for FlatWorld.

Finally, with respect to FlatWorld itself, Hagens Berman has now produced four different versions of FlatWorld's privilege log (dated February 22, February 27, April 3, and April 26) relating to FlatWorld's communications with Mr. McAleese.  (*See* Ex. 3; Ex. 9; Ex. 13; Ex. 15.) Among other differences, the February 27 log removed almost all references to the attorney-client privilege with respect to FlatWorld's communications with John McAleese.  (*See* Ex. 10;

Ex. 13.)  One entry, PRIV0473, did describe an October 7, 2009 email as including "legal advice (of John McAleese) regarding potential FlatWorld representation" in both the February 22 and 27 logs.  (*See* Ex. 9, Ex. 10, and Ex. 13 at PRIV0473.)  For this entry, Mr. McAleese's name disappeared later, in the April 3 log, where the words "(of John McAleese)" were simply deleted from the entry.  (*See* Ex. 3 and Ex. 10 at PRIV0473.)  This then became the only entry in FlatWorld's log that refers to "legal advice" but does not identify the origin of that advice.

## III.    ARGUMENT

The evidence establishes that Mr. McAleese has acted as FlatWorld's attorney from 2007 to the present.  His close relationships with FlatWorld and direct and indirect contacts with Hagens Berman during litigation further establish that John McAleese and Hagens Berman are effectively co-counsel.  Mr. McAleese, as a partner at Apple's longtime outside law firm, is barred from working adverse to Apple.  His work with FlatWorld and Hagens Berman, including passing them Apple confidences, has tainted Hagens Berman, who must now be disqualified.

### A.    Since 2007, John J. McAleese III Has Acted as FlatWorld's Attorney, Directly Contrary to the Interests of His Client, Apple.

Mr. McAleese's pervasive involvement with FlatWorld's legal matters leaves no doubt that he has acted as its attorney.  Indeed, the only lawyers who have actually seen John McAleese's communications with FlatWorld concluded exactly that.  FlatWorld's first privilege log—before John McAleese's February 26, 2013 call to Hagens Berman—logged over 50 communications between John McAleese and FlatWorld.  FlatWorld's lawyers at Hagens Berman reviewed each of these communications and, presumably based on their contents, logged every one as "attorney-client" privileged.  (*See* Ex. 9; Ex. 10.)

Even aside from Hagens Berman's admissions on the matter, however, John McAleese's conduct demonstrates that he is, in fact, FlatWorld's attorney.  An attorney-client relationship may arise from the facts and circumstances surrounding a lawyer's conduct.  *Miller v. Metzinger*, 154 Cal. Rptr. 22, 27-28 (Cal. Ct. App. 1979).  In particular, "when a party seeking legal advice consults an attorney at law and secures that advice, the relation[ship] of attorney and client is established *prima facie*."  *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys.*, 980 P.2d

371, 379-380 (Cal. 1999) (quotations omitted).  Neither a formal agreement nor the payment of attorneys' fees is needed to prove such a relationship.  *Farnham v. State Bar*, 552 P.2d 445, 449 (Cal. 1976); *Kane, Kane & Kritzer, Inc. v. Altagen*, 165 Cal. Rptr. 534, 536 (Cal. Ct. App. 1980).

Here, the information John McAleese exchanged with, and the actions he took for, FlatWorld included:

- Reviewing FlatWorld's Operating Agreement (Ex. 37 at 2; Ex. 5 or Ex. 6 at JMPriv126);

- Discussing "potential infringement" and "potential litigation" six days after the iPhone was first demonstrated (Ex. 3 or Ex. 6 at PRIV1072, PRIV1125, PRIV1315);

- Receiving/reviewing discussions about the reissue of the FlatWorld patent, which FlatWorld "tailor[ed]" to target the iPhone (Ex. 37 at 6; Ex. 2);

- Editing a letter from FlatWorld regarding enforcement of the patent-in-suit that explicitly implicated Apple as the infringement target (Ex. 37 at 9-11; Ex. 22);

- Reviewing draft confidentiality and non-disclosure agreements (Ex. 37 at 3; Ex. 4 or 6 at MLB_F0000157, MLB_F0000180);

- Reviewing the available relationship structures offered by Acacia for asserting the FlatWorld patent as well as a draft patent license agreement from Acacia (Ex. 37 at 12-15; Ex. 4 or Ex. 6 at MLB_F0000210A-D; Exs. 23-26);

- Reviewing documents related to listing FlatWorld's patent at auction with ICAP Ocean Tomo (Ex. 37 at 16; Ex. 27);

- Asking FlatWorld's officer Jennifer McAleese to call him regarding a potential patent sale to Nokia to assist Nokia in its litigation against Apple, and presumably having that conversation (Ex. 37 at 17-20; Ex. 1);

- Researching "enforcement options" for FlatWorld's patent litigation and sending an unsolicited email apparently suggesting the International Trade Commission as a forum (Ex. 37 at 21; Ex. 4 or Ex. 6 at MLB_F0000325; Ex. 29);

- Receiving legal advice from Hagens Berman prior to initiation of litigation against Apple and after litigation commenced (Ex. 5 or Ex. 6 at JMPriv004A-B, JMPriv011A-C, JMPriv013A-B, JMPriv014A-F, JMPriv017A-B, JMPriv018A-C, JMPriv023A-D, JMPriv026A-B, JMPriv027A-B, JMPriv028A-F);

- Receiving and apparently reviewing Apple's Answer and its Patent Local Rule 3-4 invalidity contentions in this litigation (Ex. 7; Ex. 8; Pieja Decl. ¶9); and

- Exchanging emails with FlatWorld which included the legal advice of Hagens Berman therein, cut-and-pasted by FlatWorld (Ex. 30).

These actions—drafting legal documents, reviewing pleadings, and preparing enforcement strategies—are intrinsically legal in nature. Indeed, Mr. McAleese knew that he was performing legal work for FlatWorld.   And consistent with this, FlatWorld's privilege log includes dozens of emails to and from John McAleese described as having "purposes" that explicitly refer to legal work, including:

- "Drafted for purpose of litigation";

- "Drafted for purpose of FlatWorld business planning and potential litigation"; and

- "Drafted for purpose of prosecution and litigation".

(*See* Ex. 10.)   In total, the privilege logs Apple has received from FlatWorld and various third parties include over 100 emails involving Mr. McAleese where "litigation" is part or all of the described purpose. (*See* Ex. 33.)

Nor was Mr. McAleese merely a recipient of FlatWorld's confidences:   communications flowed in both directions.   The privilege logs reveal dozens of emails from John McAleese to FlatWorld.   (*See, e.g.*, Ex. 5 and Ex. 6 at JMPriv118A, JMPriv143A, JMPriv205A, JMPriv225A.)   And the evidence shows that John McAleese discussed crucial matters with FlatWorld in unlogged oral communications.   For instance, while discussing FlatWorld's attempt to sell its patent to Nokia, Jennifer McAleese forwarded her husband communications between Nokia and FlatWorld.   John McAleese then suggested that the conversation about FlatWorld's strategy for responding should move "off-paper," from email to phone call: "[l]et's talk before you reply to this, okay?"   (Ex. 1.)   It is unlikely that this was a unique occurrence: given John McAleese's relationship with FlatWorld's officer Jennifer McAleese, he obviously spoke to her in person or by phone frequently.

Even more troubling, after Hagens Berman was engaged by FlatWorld, FlatWorld sent its written legal advice to John McAleese, who then proceeded to discuss matters with Hagens Berman by phone in a call lasting 29 minutes.   (*See* Ex. 5 at JMPriv028A-28C, JMPriv026A-

26B; Ex. 11; Ex. 12.)  Apple cannot know how many more times Mr. McAleese provided advice to FlatWorld or Hagens Berman via in-person meetings, telephone calls, or indirectly through his wife.   But the evidence showing that this has in fact happened, coupled with the obvious incentives to avoid making tangible records of his conversations that would be preserved, suggests that there are additional instances.

In sum, the evidence shows that, when talking to John McAleese, FlatWorld was talking with an attorney about legal matters for the purpose of "litigation." In doing so, FlatWorld "consult[ed] an attorney at law and secure[d] legal advice," and thus "the relation of attorney and client is established *prima facie*."  *SpeeDee Oil*, 980 P.2d at 379-380.

### B. Because Mr. McAleese's Law Firm, Morgan Lewis, Has Represented Apple Continuously Since 2003, Mr. McAleese Would Be Disqualified From Representing FlatWorld Adverse to Apple.

John McAleese's status as FlatWorld's lawyer raises a fundamental concern because Mr. McAleese, through his partnership at Morgan Lewis, is (and has been since 2003) ***Apple's*** lawyer.  Morgan Lewis has represented Apple continuously since 2003, and handled some of Apple's most sensitive legal matters relating to its new products and the patents intended to protect them.   (Wheeler Decl. at ¶¶2-4.)   This work included receiving Apple confidential information related to prosecutions of hundreds of patents relating to the iPhone's touch-based interface, aspects of which are accused products in this case.   (*Id*. at ¶¶4-5.)  As he admitted to Morgan Lewis' then-general counsel, John McAleese knew that Apple was his firm's, and thus his, client. (Ex. 34.)

John McAleese—like every lawyer at Morgan Lewis—owed the firm's client, Apple, fiduciary duties.  *See Advanced Messaging Techs.*, *Inc. v. Easylink Servs. Int'l Corp.*, No. CV 11-04239, 2012 U.S. Dist. LEXIS 179698, at *23 (C.D. Cal. Dec. 19, 2012); ABA Model Rules of Prof'l Conduct. R. 1.10 (2012); Penn. Rules of Prof'l Conduct R. 1.10 (2013).   Most fundamentally, these duties bar a lawyer from being adverse to a current client on any matter. *Flatt v. Superior Court*, 885 P.2d 950, 955-956 (Cal. 1994); *see also* Cal. Rules of Prof'l Conduct R. 3-310 (2013); Penn. Rules of Prof'l Conduct R. 1.7; ABA Model Rules of Prof'l

Conduct. R. 1.7.  By representing FlatWorld against Apple, John McAleese breached his fiduciary duty to Apple, and would necessarily be disqualified if he were FlatWorld's attorney of record.  *See* Cal. Rules of Prof'l Conduct R. 3-310; Penn. Rules of Prof'l Conduct R. 1.7.

### C.   Hagens Berman is Co-Counsel With John McAleese and Therefore Must Be Disqualified as Well.

Hagens Berman and John McAleese are effectively co-counsel, and thus Mr. McAleese's conflict taints Hagens Berman.  California law recognizes two theories under which co-counsel of a conflicted lawyer may be disqualified: a presumption that client confidences have been shared among co-counsel, and a fact-specific analysis.  Both tests require disqualification here.

### 1.   Hagens Berman Should Be Treated as John McAleese's Co-Counsel Because Mr. McAleese Actively Worked With Hagens Berman to Provide FlatWorld With Legal Advice on Issues in This Litigation and to Support FlatWorld's Strategy on Privilege Issues.

Although John McAleese's name does not appear alongside Hagens Berman's on the pleadings, that formality does not change the reality that he is acting as Hagens Bermans' co-counsel.  In California, attorneys may be treated as co-counsel "even if [they] never associated into the case." *Pound v. DeMera DeMera Cameron*, 135 Cal. App. 4th 70, 78-79 (Cal. Ct. App. 2005).  Here, as the graphic above at page 2 illustrates, John McAleese communicated with Hagens Berman both directly and indirectly, through his wife.

First, John McAleese had a long-standing practice of using Mrs. McAleese to convey his advice to FlatWorld and its counsel, including Hagens Berman.  For example, in 2008, when FlatWorld was drafting a letter to be sent from Mrs. McAleese attempting to interest a third party in the patent-in-suit, John McAleese edited it in the background, identifying Apple as a target. (Ex. 37 at 9-11; Ex. 22.)   When FlatWorld was attempting to interest Nokia in buying FlatWorld's patent to assert against Apple, John McAleese was providing verbal advice to FlatWorld as to how to respond.  (Ex. 37 at 17-20; Ex. 1.)  And when FlatWorld was discussing potential litigation and representation by counsel, John McAleese was forwarding documents relating to "enforcement options" to FlatWorld.  (*See* Ex. 37 at 21; Ex. 4 and Ex. 6 at MLB_F0000325; Ex. 29.)

These repeated communications between John McAleese and FlatWorld, via his wife, carved out a "pipeline" through which John McAleese guided FlatWorld's actions without being openly involved.   Advice continued to flow freely through that pipeline to Hagens Berman. During this case, FlatWorld forwarded John McAleese at least ten communications containing Hagens Berman legal advice, along with Apple's pleadings and legal contentions.  (*See*, *e.g.*, Ex. 5 and Ex. 6 at JMPriv004A-B, JMPriv011A-C, JMPriv013A-B, JMPriv014A-F, JMPriv017A-B, JMPriv018A-C, JMPriv023A-D, JMPRiv026A-B, JMPriv027A-B, JMPriv028A-F.)  Given the McAleeses' history, it is overwhelmingly likely that FlatWorld forwarded John McAleese Hagens Berman's emails for the same reason it forwarded him Nokia's—to ask for his advice on them and to guide FlatWorld's own interactions with Hagens Berman.  It is also likely that these forwards prompted unlogged talks between John McAleese and his wife similar to their discussion regarding Nokia.

Given the "pipeline" used by John McAleese, even if Hagens Berman now claims that they do not have direct "contact" or "communications" with him, that simply ignores the indirect communications that the evidence shows occurred.   Apple knows that Hagens Berman has conferred with ***Jennifer*** McAleese on litigation issues: she was FlatWorld's representative at a settlement discussion and attended a Rule 30(b)(6) deposition on claim construction.  (Pieja Decl. at ¶¶43-44.)  Just as Jennifer McAleese's communications with Nokia surely reflected the advice her husband gave her then, her discussions with Hagens Berman now reflect whatever John McAleese is telling her in response to the Hagens Berman emails was being forwarded.

Even worse, once he became aware that Apple was investigating the pipeline of information from Mr. McAleese to Hagens Berman, Mr. McAleese contacted Hagnes Berman directly to provide them with Apple confidences on this point and to discuss FlatWorld's strategy for responding.  Shortly after FlatWorld served its initial privilege log, John McAleese's partner at Morgan Lewis forwarded him a confidential, privileged communication from Apple's in-

house counsel. (*See* Ossip Decl. at ¶¶2-3.)[5]   Mr. McAleese immediately contacted Hagens Berman.  (*Id.* at ¶6.)  He spoke directly to Mark Carlson and told him that Apple had raised concerns regarding FlatWorld's privilege log, specifically Mr. McAleese's status as a lawyer and FlatWorld's associated claims of privilege.  (*Id.*)  By the next day, February 27, Hagens Berman had provided a new privilege log, which removed almost all claims of "attorney-client privilege" over FlatWorld's communications with John McAleese and attempted to recharacterize them as covered by some "spousal privilege."  (Ex. 10.)

This was a major change in FlatWorld's strategy—and one that was triggered directly by John McAleese's passing of an Apple confidence to Hagens Berman.  By injecting a "spousal privilege" into the case, John McAleese and Hagens Berman attempted to make it more difficult for Apple to discover the contents of the communications between them.  And they attempted to thwart Apple's ability to pursue potential counterclaims arising from Mr. McAleese's relationship with FlatWorld and Hagens Berman.  In doing so, John McAleese and Hagens Berman worked together to craft a strategy to thwart Apple's interests. That is precisely what co-counsel do: they work together on behalf of their client (FlatWorld) and against the opposition (Apple).  John McAleese is acting as Hagens Berman's co-counsel, and should be treated as such by the Court.

### 2.   The Court Should Apply California Case Law Presuming That Co-Counsel to a Conflicted Lawyer is also Conflicted and Must Be Disqualified.

Hagens Berman must be disqualified because, under California law, John McAleese is conflicted and Hagens Berman is infected with his conflict.  The California Court of Appeal addressed this issue in *Pound v. DeMera DeMera Cameraon*, where an attorney named Bradley met briefly with defendants' counsel to discuss potential case strategies.  *Pound*, 135 Cal. App. 4th at 73-75.   Defendants did not retain Bradley and, three years later, plaintiffs' counsel met with him "a few times" and associated him as co-counsel.  *Id.*  The record did not reflect that

---

[5] Because Apple's communication to Morgan Lewis is privileged, Apple cannot reveal its contents. Apple will provide this communication for *in camera* review if the Court so desires.

Bradley shared plaintiff's confidences with defendants. *Id.* The trial court disqualified Bradley, but not his co-counsel.

The Court of Appeal reversed, and disqualified Bradley's co-counsel. The *Pound* Court noted that, in cases where an attorney switches from a firm representing a plaintiff to a firm representing an adverse party, "the need to maintain client confidences requires disqualification of [the new] firm when one of the attorneys in the [new] firm has confidential information of the adverse party." *Id*. at 78. Crucially, "disqualification of the [new] firm is required, even if the firm erects an ethical wall around the attorney who possesses the opponent's confidences," meaning that the first party's confidential information did not actually pass to other attorneys of the attorney's new firm. *Id*.

The *Pound* Court found that this rule also applied where attorneys were associated as co-counsel, rather than employees of the same firm, because there was "no logical or substantive manner [of] distinguish[ing] the two situations." *Pound*, 135 Cal. App. 4th at 77. Given this, the court concluded that "it is impossible to conceive a justification for not disqualifying" co-counsel. *Id*. at 78-79. Thus, the *Pound* Court effectively presumed that once an attorney had, or was charged with having, confidential information of a former client, his co-counsel were as well. [6]

*Pound* is on point here. John McAleese had Apple's confidential information, both from personal knowledge and as a result of imputation within his firm. First, as explained above, Mr. McAleese was forwarded Apple in-house counsel's confidential communication to his partner, Scott Garner. (*See* Ossip Decl. at ¶¶2-3.) Second, Morgan Lewis itself possessed large amounts of Apple's confidential information from its work on hundreds of matters relating to the

---

[6] Although *Pound* involved a conflict arising out of a successive representation—where the attorney switching firms no longer represented his original client—the reasoning is, if anything, more appropriate here, where the conflict is current. Mr. McAleese still represents FlatWorld, and Morgan Lewis still represents Apple. The fact that Morgan Lewis is not Apple's counsel of record in this action is irrelevant—Morgan Lewis' work for Apple is substantially related to the technology at issue here and, as discussed above, Apple actually conferred with Morgan Lewis in this matter to seek their assistance in resolving concerns with FlatWorld's privilege assertions.

touch-based interface used in the iPhone.  (Wheeler Decl. at ¶¶3-5.)  Because "presuming an attorney possesses confidential information requires presuming the same for his firm," Mr. McAleese is also presumed to possess the Apple confidential information in Morgan Lewis' possession.  *Advanced Messaging*, 2012 U.S. Dist. LEXIS 179698 at *23.  As the *Pound* Court noted, in light of this, it is "impossible to conceive a justification for not disqualifying" Hagens Berman as co-counsel of Mr. McAleese.  *Pound*, 135 Cal. App. 4th at 78-79.

Applying *Pound* is particularly appropriate here, where Mr. McAleese in fact *did* pass Apple confidential information to Hagens Berman—namely Apple's privileged communication to Scott Garner regarding FlatWorld's privilege log.  (*See* Ossip Decl. at ¶6.)  In addition, as discussed below in subsection 5, a presumption is particularly appropriate here because the evidence shows that FlatWorld and Hagens Berman are acting to withhold or destroy evidence regarding John McAleese's relationship with Hagens Berman that would likely reveal additional confidences or advice passing from Mr. McAleese to Hagens Berman.

### 3. Caselaw Applying a "Fact Specific" Standard as Opposed to the *Pound* Presumption Does Not Consider Relevant California Law and Should Not Be Followed.

The approach taken by *Pound* is widely followed in California.  For instance, in *Beltran v. Avon Prods., Inc.*, the court—although it did not cite *Pound*—disqualified co-counsel of a conflicted lawyer without a showing that they actually received the confidential information giving rise to the conflict.  867 F. Supp. 2d 1068, 1084 (C.D. Cal. 2012).  *Beltran*, like *Pound*, concluded that "[e]ven if [co-counsel] did not, in fact, acquire confidential information, their involvement in the case would taint the appearance of probity and fairness of the proceedings."  *Id.*  Apple notes, however, that a separate line of federal case law in California is in tension with *Pound*.  In a 1979 case, *In re Airport Car Rental Antitrust Litigation*, the court declined to apply a presumption and instead engaged in a case-specific factual analysis to determine whether to disqualify co-counsel to a conflicted attorney.  470 F. Supp. 495, 502 (N.D. Cal. 1979).  Apple has found two later decisions that followed the *Airport Car Rental* approach.  *See Oracle Am., Inc. v. Innovative Tech Distribs., LLC*, No. 11-CV-01043, 2011 U.S. Dist. LEXIS 78786, at

**17-18 (N.D. Cal. July 20, 2011); *Canatella v. Krieg, Keller, Sloan, Reilly & Roman LLP*, No. C 11-05535, 2012 U.S. Dist. LEXIS 33606, at *5 (N.D. Cal. Mar. 13, 2012).

The *Airport Car Rental* line of cases should not be followed here.  First, the *Pound* case and its progeny are better reasoned.  *Pound*—unlike the *Airport Car Rental* cases—analyzes and is consistent with the caselaw holding that confidential information is presumed to be shared among lawyers in a single firm.  As *Pound* correctly recognizes, treating those two situations differently would elevate form over substance. Attorneys within the same firm may never have worked on the same matter, or even met each other, unlike co-counsel, who are specifically associated to work on the same matters and issues.  Indeed, the use of co-counsel in a single case is effectively the assembly of a temporary "firm" to address the client's needs on a given matter.

Second, the recent district court decisions applying the 1979 *Airport Car Rental* decision did not consider *Pound*, or any California state cases at all.  *See Canatella*, 2012 U.S. Dist. LEXIS 33606 at *4 (stating that the court had not found California case law on point).  Since *Pound* undermines the validity of the thirty-four-year-old *Airport Car Rental* decision, the later decisions in *Canatella* and *Oracle* are likewise undercut.

Indeed, the only case that Apple located that considers both *Airport Car Rental* and *Pound* concluded that "the cases [*e.g.*, *Pound*] applying the Vicarious Presumption Rule to co-counsel have the better argument."  *Advanced Messaging*, 2012 U.S. Dist. LEXIS 179698 at *24. The court in *Advanced Messaging* specifically found that the cases that reach the opposite conclusion "do not consider applicable California law." [7]  *Id.* at *25.  This court should consider California law, follow *Pound*, *Beltran*, and *Advanced Messaging*, and presume that Hagens

---

[7] Apple recognizes that *Airport Car Rental*, *Canatella*, and *Oracle* are Northern District of California cases.  However, this Court need not, and should not, follow them, for several reasons. First, issues regarding the regulation of attorney conduct are a matter of state law.  *See Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, No. C 08-04909, 2010 U.S. Dist. LEXIS 35867, at *11 (N.D. Cal. Mar. 20, 2010).  As a result, the 2005 reasoning of the California appellate court in *Pound* is persuasive over the 1979 decision in *Airport*, which did not consider California state law.  Second, *Canatella* and *Oracle* do not present the issue of whether the presumption applied in *Pound* should be applied here, because they do not cite or discuss that case or any analogous case.

Berman has acquired confidential information from Mr. McAleese.

### 4. Even Under the Fact-Specific Analysis of the *Airport Car Rental* Line of Cases, Hagens Berman Must Be Disqualified.

Even if the Court follows *Airport Car Rental*, Hagens Berman must still be disqualified. *Airport Car Rental* held that, in deciding whether to disqualify a firm because of the conflicts of its co-counsel, "the particular facts of each case must be considered in order to determine if disqualification is warranted." *Airport Car Rental*, 470 F. Supp. at 502. The "particular facts" of this case weigh in favor of disqualification, and indeed present a far stronger case for disqualification than any of *Airport* and its progeny.

*First*, in each of *Airport Car Rental*, *Oracle*, and *Canatella*, the courts relied on the fact that co-counsel had not actually received any of the adverse party's confidential information. *See, e.g.*, *Airport Car Rental*, 470 F. Supp. at 502 ("no evidence whatsoever" of confidential information passing to co-counsel); *Canatella*, 2012 U.S. Dist. LEXIS 33606 at **6-7 ("no evidence" of confidential information being passed to co-counsel); *Oracle*, 2011 U.S. Dist. LEXIS 78786 at *17 (suspicion that co-counsel had received confidential information "turned out to be completely unfounded"). Here, the opposite is true: Apple confidences regarding its views on FlatWorld's privilege log were passed from Mr. McAleese to Hagens Berman, and within a day, Hagens Berman acted on them by altering its privilege log.

*Second*, the extended, pervasive interactions between Mr. McAleese and FlatWorld, and on to Hagens Berman, weigh in favor of disqualification. As noted above, Mr. McAleese had a years-long relationship of providing legal advice to FlatWorld, and the evidence shows that this continued once Hagens Berman appeared. The numerous emails Mr. McAleese received, indirectly, from Hagens Berman, and the numerous critical case pleadings he received, find no analog in the *Airport Car Rental* line of cases. Indeed, John McAleese is apparently so integrated with FlatWorld that, on March 7, 2013, Hagens Berman preemptively announced that it would ***represent*** Mr. McAleese were he to become a witness in this case. (*See* Ex. 35.)

*Third*, the depth and nature of Morgan Lewis' representation of Apple weighs strongly in favor of disqualification. The *Airport Car Rental* line of cases rely heavily on the fact that the

conflicted attorney's relationship with his original client was brief and inconsequential. *See Canatella*, 2012 U.S. Dist. LEXIS 33606 at *6 (only 7.6 hours of work for original client). Here, in contrast, Mr. McAleese's firm, Morgan Lewis,[8] represented Apple for ten years on hundreds of closely related matters for Apple totaling millions of dollars in fees. (Wheeler Decl. at ¶¶2-7.)

**Fourth**, as set forth below, the apparent attempts to withhold and obscure evidence of John McAleese's relationships with FlatWorld and Hagens Berman—which occurred on Hagens Berman's watch—suggest that the evidence adduced to date is merely the tip of the iceberg, and that the full record would be even more damaging for Hagens Berman and John McAleese.

### 5. The Obfuscation of Relevant Facts Under Hagens Berman's Watch Separately Justifies a Presumption that Hagens Berman Has Received More Than Just One Apple Confidence and Additional Legal Advice From Mr. McAleese.

Although Apple believes that the evidence available to date is sufficient to require disqualifying Hagens Berman, any doubts regarding the contents of that evidence should be resolved in Apple's favor because the record suggests that FlatWorld, John McAleese and Hagens Berman are actively working together to conceal the facts from Apple and the Court.

As an initial matter, a number of directly relevant documents are simply missing, either deleted by FlatWorld or withheld but not logged without justification. Where FlatWorld and John McAleese corresponded with each other, each side should have a copy of the communications, and thus their productions and logs should match perfectly. But that is not the case. Instead, well over 100 emails between John McAleese and FlatWorld appear on the logs supplied by John McAleese's personal attorney—who has no association with Hagens Berman but not on the log Hagens Berman supplied for FlatWorld.[9] (Ex. 36.) Similarly, although third-

---

[8] Because this case—unlike *Airport Car Rental*—involves a conflict relating to a current, rather than a former, client, Mr. McAleese is charged with knowledge of any confidential information of his firm's current client, Apple, that is in the possession of the firm.

[9] In one particularly troubling example, based on the production prepared by Mr. McAleese's personal attorney, emails relating to legal matters were forwarded to John McAleese. Though the logs prepared by Hagens Berman included the communications that were later forwarded, they did not log the communication that would show that John McAleese was forwarded them. For instance, the threads of emails JMPriv039A-B and JMPriv083A-B involve FlatWorld/Jennifer (Continued…)

party Rembrandt IP logged or produced from its own files dozens of emails between itself and Jennifer McAleese from June 21 to July 15, 2007 (*see* Ex. 21), none of these emails were apparently produced, and none of them were logged by Hagens Berman.  Troublingly, Hagens Berman did log many other FlatWorld communications during this same time period—just not any with Rembrandt. (*See, e.g.*, Ex. 6 at PRIV0131, PRIV0134, PRIV0135, PRIV0903, PRIV1161, PRIV0136, PRIV0137, PRIV0865, PRIV1271, PRIV0951, PRIV1048, PRIV1186.)

In each of these cases, the missing emails were relevant, as evidenced by the fact that they were considered responsive by third parties, and are frequently about Apple or the iPhone. Apple does not yet know whether these emails were destroyed or simply not logged by Hagens Berman.  Moreover, Apple can only identify cases where ***one*** party to a communication failed to log or deleted the documents.  It is impossible to say how many instances there have been where ***both*** parties did so.  This is especially concerning where the parties involved are FlatWorld on the one hand, and John McAleese on the other, because these parties share a substantial incentive to make sure that certain emails do not become evidence.

Worse, FlatWorld and Hagens Berman have apparently deleted or withheld numerous emails that show John McAleese being sent Hagens Berman's legal advice, even though Mr. McAleese's personal attorney, John Widman, provided a log listing ten such email chains. (*See*, *e.g.*, Ex. 5 and Ex. 6 at JMPriv004A-B, JMPriv011A-C, JMPriv013A-B, JMPriv014A-F, JMPriv017A-B,     JMPriv018A-C,     JMPriv023A-D,     JMPRiv026A-B,     JMPriv027A-B, JMPriv028A-F.)    These emails originated from Jennifer McAleese, and thus were within FlatWorld's custody, possession, or control.  (*Id.*)  They were necessarily created after Hagens Berman began advising FlatWorld. And they are evidence of the relationship between John McAleese and Hagens Berman.  Yet either Hagens Berman withheld them from logging or, on

---

McAleese forwarding privileged emails to John McAleese.  (*See* Ex. 5 at JMPriv039A, JMPriv083A.) FlatWorld logged the communications that appear to have been forwarded (JMPriv039B apparently corresponds to PRIV0584, and JMPriv083B apparently corresponds to PRIV0443.)  (*See* Ex. 3 at PRIV0584, PRIV0443).  But FlatWorld did not log the crucial piece— the email from Jennifer McAleese to John McAleese, *i.e.*, JMPriv039A and JMPriv083A.

1    Hagens Berman's watch, they were deleted.  There is no way of knowing how many more such
2    instances exist, or what they may have shown.

3        Most troubling, however, is the issue of Hagens Berman's behavior with respect to
4    FlatWorld's privilege log.  FlatWorld admitted that it has known since at least March 2012 that
5    Apple is Morgan Lewis'—and therefore John McAleese's—client. (Ex. 18 at 4.)  Thus, after
6    receiving a call on February 26 from a lawyer at Apple's outside law firm relaying concerns
7    about his appearance on FlatWorld's log, Hagens Berman must, at a minimum, have known that
8    there was a high likelihood that this information originated from Apple.  Hagens Berman's duty
9    in this situation is clear: when a lawyer receives an adversary's privileged or confidential
10   information, he "should refrain from examining the materials any more closely than is necessary
11   to ascertain if the materials are privileged, and shall immediately notify the sender."  *Rico v.*
12   *Mitsubishi Motors Corp.*, 171 P.3d 1092, 1099 (Cal. 2007).  But Hagens Berman did precisely
13   the opposite—they did not "ascertain if the materials are privileged", they never notified Apple
14   of the communication, and they used Mr. McAleese's communication of Apple confidences as a
15   spur to change FlatWorld's strategies for its privilege assertions.

16       The record also reveals at least one instance where the log Hagens Berman prepared for
17   FlatWorld includes a description that is affirmatively misleading.  In the log entry for PRIV0473,
18   FlatWorld originally described the underlying document as containing "***legal advice (of John***
19   ***McAleese)*** …."  (Ex. 9 at PRIV0473 (emphasis added).)  Yet in the most recent privilege log, his
20   name mysteriously vanished from that entry:



27   (*See* Ex. 3 or Ex. 10 at PRIV0473.)  The document did not change.  The substantive description
28   remains the same.  It allegedly still contains legal advice.  Only John McAleese's name

disappears. And no one appears as a replacement for the person providing the "legal advice" of this entry. The surgical deletion of John McAleese's name appears designed to conceal his involvement with FlatWorld and his role as a legal adviser.

Apple respectfully submits that here the Court should find the evidentiary and logging anomalies are further reason to apply the *Pound* presumption discussed *supra* in section III.C.2. The missing evidence directly impacts Apple's ability to prove what *Pound* presumes—that confidences flowed between co-counsel. In the alternative, Apple respectfully submits that the type and volume of evidence that has gone missing and the logging anomalies are a powerful additional factor in favor of disqualification under the *Airport Car Rental* fact-specific analysis. In either case, the conclusion is the same: Hagens Berman should be disqualified.

> **D.    If the Court Believes that Further Discovery Would Assist in Resolving the Issues Presented, It Should Stay Proceedings and Refer the Matter to a Special Master.**

Apple has brought its motion to disqualify now to halt the ongoing prejudice it suffers from facing an adversary who is being advised by Apple's own lawyer, and because the evidence to date is more than sufficient to disqualify Hagens Berman. Apple intends, however, to seek additional discovery relating to John McAleese's relationship with FlatWorld and Hagens Berman that may support this motion and possible amendments to the pleadings to assert additional claims or defenses. This discovery includes fact depositions of relevant witnesses, including Mr. McAleese and, potentially, Hagens Berman, as well as motion practice, or *in camera* review of numerous relevant documents over which FlatWorld has claimed the spousal and attorney-client privileges.

Apple recognizes that the Court may conclude that additional discovery on these issues may be helpful to assist the Court in resolving Apple's request for disqualification. Indeed, such discovery may potentially facilitate a swift resolution of the case by providing Apple with grounds for case-dispositive claims and defenses. Thus, Apple requests in the alternative that the Court stay proceedings on the merits pending resolution of the disqualification issue, and refer the matter to a special master for the facts underlying this issue (and claims that may arise from

them).  When a stay is requested, a district court considers "[(1)] possible damage which may result from the granting of a stay, [(2)] the hardship or inequity which a party may suffer in being required to go forward, and [(3)] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (internal citations omitted).  Courts have granted stays to parties to avoid prejudice while a disqualification motion is pending.  *See, e.g.*, *Stratagene v. Invitrogen Corp.*, 225 F. Supp. 2d 608, 609-610 (D. Md. 2002) (granting stay pending consideration of motion to disqualify).

Here, if the Court concludes that additional discovery is necessary, Apple would suffer significant "hardship or inequity" if forced to go forward on the merits at the same time.  *CMAX*, 300 F.2d at 268.  Given the facts described above, there is ample reason for Apple to fear that additional improper transmissions of its confidences or legal advice from John McAleese to Hagens Berman will follow.  Having to defend against a plaintiff who is being aided by Apple's own lawyer is *prima facie* prejudicial.  Moreover, a stay here would cause little prejudice to FlatWorld, and likely would avoid prejudice.  FlatWorld is not Apple's competitor, and does not attempt to sell commercially any product embodying the patented technology, which minimizes any risk of prejudice from a stay.  Moreover, no fact discovery cutoff or trial date has been set and the *Markman* hearing is still four months away.  FlatWorld has only noticed one deposition to date, by serving a subpoena on Morgan Lewis.  In short, the case is still at a stage where it can be transferred to new counsel without undue prejudice.  Indeed, granting a stay may well forestall prejudice to FlatWorld: if merits discovery proceeds while Apple takes additional discovery on its disqualification claims and Hagens Berman is later disqualified, the passage of time will only make it more difficult for new counsel to assimilate into the case.  More fundamentally, any prejudice FlatWorld may claim to suffer should be given little (if any) weight.  FlatWorld has admitted that it was aware of the conflict issues in March 2012, even before it even filed its Complaint.  (Ex. 18 at 4.)  Apple, in contrast, could not reasonably have discovered this conflict until after February 22, 2013, when FlatWorld served its first privilege

1  logs.  (Ex. 9.)  And even then, FlatWorld appears to have taken active steps to obscure the nature

2  of the conflict from Apple.  Any prejudice that may accrue is thus entirely of FlatWorld's own

3  making.

4  If the Court does believe that further discovery or a stay would be beneficial, Apple

5  respectfully requests that the Court appoint a special master to hear and resolve the discovery

6  issues surrounding John McAleese's relationship with FlatWorld and Hagens Berman.  This may

7  include resolving privilege claims or reviewing privileged documents *in camera* and reporting to

8  this Court as to how their contents affect the issues raised in this motion.  The discovery would

9  be targeted towards clarifying this disqualification motion, and clarifying the scope of Apple's

10  potential claims against FlatWorld, which will ensure the case proceeds as efficiently as possible.

11  **IV. CONCLUSION**

12  John McAleese—who owes a fiduciary duty to Apple—has long worked actively for

13  FlatWorld's, and against Apple's, interests.  By passing Apple confidences to Hagens Berman,

14  and by nurturing a pipeline of advice flowing from John McAleese through FlatWorld to their

15  counsel, including Hagens Berman, John McAleese has effectively become Hagens Berman's

16  co-counsel.  His conflict taints them and, as a result, Hagens Berman must be disqualified.

17

18  Dated: May 28, 2013

19   _/s/ Michael T. Pieja_____

20  Kenneth H. Bridges (SBN 243541)
    kbridges@bridgesmav.com

21  Michael T. Pieja (SBN 250351)
    mpieja@bridgesmav.com

22  Lawrence Lien (SBN 265851)
    llien@bridgesmav.com

23  BRIDGES & MAVRAKAKIS LLP

24  3000 El Camino Real
    One Palo Alto Square, 2nd Floor

25  Palo Alto, CA 94306
    Telephone:  (650) 804-7800

26  Facsimile: (650) 852-9224

27  James A. Shimota (admitted *pro hac vice*)

28

1

jshimota@bridgesmav.com
Aaron Taggart (SBN 258287)

2

ataggart@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP

3

180 N LaSalle, Suite 2215
Chicago, IL 60601

4

Telephone:  (312) 216-1620
Facsimile: (312) 216-1621

5

6

John J. Steele (SBN 122872)

john.steele@johnsteelelaw.com

7

JOHN STEELE, ATTORNEY AT LAW
2225 East Bayshore Road, Suite 200

8

Palo Alto, CA 94303
Tel: (650) 320-7662

9

10

Attorneys for Defendant Apple Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PROOF OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 28, 2013, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.1(h). Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Michael T. Pieja*

Michael T. Pieja