# EXHIBIT 29



Select 'Print' in your browser menu to print this document.

Copyright 2011. ALM Media Properties, LLC. All rights reserved. *Corporate Counsel* Online

Page printed from: http://www.corpcounsel.com

Back to Article

## Making Their Move at the ITC

Joseph Rosenbloom
The American Lawyer
April 11, 2011

When it comes to patent disputes, last year proved that the International Trade Commission and the booming smartphone sector make for a near-perfect pairing. And, observers say, the connection between the two is unlikely to fade anytime soon.

As of late March, 13 cases related to smartphones were pending before the ITC, according to a report prepared by Covington & Burling, with 12 of them filed in 2010. The cases—known formally as 337 investigations for the section of the Tariff Act of 1930 that addresses the commission's role in policing unfair competition—involve 14 companies and dozens of patents on everything from touch screen technology to camera functionality. Apple Inc., clearly keen on maintaining the iPhone's market share, is a party to eight cases alone, vying with giants like Nokia Corporation and Sony Corporation, as well as obscure companies like Cayman Islands-based S3 Graphics Inc., which holds patents on graphics-visualization technology.

The surge in such cases shows that the ITC is almost tailor-made for the so-called smartphone wars, which are also being waged in federal and international courts. The one-two punch of the agency's speedy docket and its ability to ban the importation of infringing products makes the ITC an obvious stop for those that make high-tech consumer goods outside the United States and seek an edge in a hotly contested domestic market.

The decision about whether to proceed first at the ITC instead of in district court involves many factors, 337 litigators say. Speed is almost always the top priority, as patent infringement claimants aim to either exert swift pressure to settle on alleged infringers or knock a rival's product off the market quickly. Claimants usually end up filing in both forums at the same time, then seek a stay of district court litigation until ITC proceedings conclude. Opting to go the commission route first typically shaves a year or more off the time from start to final decision, compared to the length of a federal court case, litigators say. That tends to be true, they add, even if the court case is in one of the country's fabled "rocket dockets," such as the Eastern District of Texas, where the pace of patent litigation has slowed in recent years.

The prospect of fast action at the ITC is especially attractive to smartphone makers because they are anxious about being "left behind" by competitors, says Charles Schill of Steptoe & Johnson, who represents Motorola Mobility Holdings, Inc., as either complainant or respondent in a total of four 337 cases against Apple and Microsoft Corporation. Speaking generally of the explosion of smartphone suits, Schill says that what happens on the ITC's fast track may ultimately be what "drives the resolution of all of this litigation."

Mark Davis of Weil, Gotshal & Manges, who represents Apple and Microsoft before the ITC, agrees that the agency's quick pace is a draw. The discovery period of eight months or so, he says, shortens the time for an accused infringer to mount a defense: "You can maintain a lot of pressure as a complainant in an ITC case."

Maintaining that pressure is critical, given the multibillion-dollar market at issue and the race among handset makers to introduce ever more sophisticated gadgets in which many complex, patented technologies converge, says Michael McKeon of Fish & Richardson. "Traditionally, two companies may not have been locking horns," says McKeon, who does not represent clients in any pending smartphone cases at the ITC. "But now they are, because of this conversion issue."

The second factor that has tilted smartphone makers toward the ITC, of course, is a series of federal rulings in recent years—including the U.S. Supreme Court's 2006 decision in *eBay Inc.* v. *MercExchange, LLC*, that have either raised the bar for obtaining an injunction in patent cases or restricted the size of recoverable damages. As a result, more patent complainants now turn to the ITC, which can't grant damages but can issue exclusion orders when it finds that infringement has occurred.

The rise in smartphone litigation at the ITC ties in to a broader decadelong shift that has seen patent plaintiffs from various industries migrating to the commission. For lawyers like Sturgis Sobin, an ITC specialist in Covington's Washington, D.C., office with 30 years of experience, it has been, "without a question, a really favorable trend." Sobin notes that the forum "has emerged as extremely popular to handle the highest, most significant patent litigation that's going on in the country."

All told, the ITC saw a record 51 new unfair competition cases last year—eight more than the previous high of 43 in 2008 and a sharp increase from the 11 filed in 2000. And the agency is "on track" to set a new record of about 60 cases this year, says Lynn Levine, director of the ITC's Office of Unfair Import Investigations.

Potential ITC work has firms with major patent practices in D.C. but without enough 337 specialists scrambling to recruit them. Unfortunately, the supply falls well short of demand, says Dan Binstock, a partner in attorney search firm Garrison & Sisson. To entice seasoned 337 practi-tioners to move laterally, Binstock says, firms are offering salaries ranging from "mid-seven figures" to more than $2 million. "It's a type of litigation that's pretty compressed within a tight time frame," he says. "For that reason, it's very lucrative."

Larry Shatzer, who departed Foley & Lardner last June with two associates to create a 337 practice in the D.C. office of Wilson Sonsini Goodrich & Rosati, says that clients value having them close to the ITC headquarters. "We're sort of boots on the ground," Shatzer says.

MLB_F0000327

Meanwhile, as the 337 caseload increases, so does the strain on the ITC. The average duration of a case is up by almost 40 percent since the early 1990s—from 13.5 months to 18.5 months. And though the commission has doubled its complement of judges to six over the past decade, the ITC's Levine says that it's "increasingly more difficult" for them to limit the time that litigation takes because of the greater complexity of the products at issue, plus a lack of courtrooms (there are just two) and the often larger number of respondents, patents, and claims involved in each case. All of which suggests that the more that plaintiffs turn to the agency for its quick brand of relief, the slower that relief may be in coming.