Jeff D. Friedman (173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
Mark S. Carlson (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue
Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com

*Attorneys for Plaintiff*
FlatWorld Interactives LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FLATWORLD INTERACTIVES LLC, a Pennsylvania limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | No. C 12-01956 JSW<br><br>**FLATWORLD'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO APPLE INC.'S MOTION TO DISQUALIFY HAGENS BERMAN SOBOL SHAPIRO LLP**<br><br>**Noticed hearing date and time:**<br>July 26, 2013, 9:00 AM, Courtroom 11 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ......................................................1

II.     FACTS ...........................................................................................................................4

     A.      Mr. McAleese's only relationship to FlatWorld arises from his marriage
          to the minority shareholder, Jennifer McAleese. ...........................................................4

     B.      Hagens Berman has had no communications with Mr. McAleese concerning
          the substance or merits of FlatWorld's litigation against Apple. ...............................4

     C.      As an environmental lawyer at MLB, Mr. McAleese never acquired any
          confidential information concerning Apple. .................................................................7

III.    AUTHORITIES AND ARGUMENT .............................................................................9

     A.      Disqualification is a drastic measure, and the moving party bears a
          heavy burden. .............................................................................................................9

     B.      Apple's effort to impute Mr. McAleese's alleged taint to Hagens Berman
          fails because Mr. McAleese has never acted as Hagens Berman's co-counsel. ........10

     C.      There is no automatic disqualification based on the presumption that a
          tainted lawyer shared client confidences when the tainted lawyer never
          possessed client confidences. .....................................................................................13

          1.      California courts generally apply a case-by-case analysis to motions
               to disqualify co-counsel on the basis of an imputed taint. ...........................14

          2.      The *Pound* rule does not apply because Mr. McAleese never
               possessed confidential client communications arising from
               MLB's work for Apple. ................................................................................17

     D.      Apple has not met its heavy burden to establish that the circumstances
          and competing interests of this case make disqualification a matter of
          absolute necessity. .....................................................................................................19

          1.      Mr. McAleese never had any involvement in any Apple matters,
               and never accessed any confidential information through his
               employment at MLB. ....................................................................................19

          2.      Apple has not met its heavy burden to establish that Hagens Berman
               received any privileged information from Mr. McAleese. .............................20

          3.      Hagens Berman did not "associate" with Mr. McAleese because
               of MLB's relationship with Apple .............................................................23

     E.      FlatWorld would be severely prejudiced if Hagens Berman were disqualified,
          and its disqualification would derail the efficient progress of this litigation ...........23

     F.      Hagens Berman has not intentionally withheld documents without logging
          them, and certainly has not destroyed any documents. .............................................24

1  IV.     CONCLUSION ..................................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Advanced Messaging Techs., Inc. v. Easylink Servs. Int'l Corp.*,
  2012 U.S. Dist. LEXIS 179698 (C.D. Cal. Dec. 19, 2012).................................................18, 19

5

6

*In re Airport Car Rental Antitrust Litig.*,
  470 F. Supp. 495 (N.D. Cal. 1979).......................................................................... 16, 17

7

*Beltran v. Avon Prods.*,
  867 F. Supp. 2d 1068 (C.D. Cal. 2012).....................................................................18, 23

8

9

*Canatella v. Krieg, Keller, Slan, Reilley & Roman LLP*,
  2012 U.S. Dist. LEXIS 33606 (N.D. Cal. Mar. 13, 2012) ...........................................*passim*

10

*Canatella v. Stovitz*,
  2004 U.S. Dist. LEXIS 24266 (N.D. Cal. Sept. 13, 2004) .......................................................10

11

12

*Employers Ins. of Wausau v. Albert D. Seeno Constr. Co.*,
  692 F. Supp. 1150 (N.D. Cal. 1988).........................................................................23

13

*Faughn v. Perez*,
  145 Cal. App. 4th 592 (2006) ........................................................................................22

14

15

*Kelly v. Roker*,
  2012 U.S. Dist. LEXIS 33604 (N.D. Cal. Mar. 13, 2012) ........................................................10

16

17

*Kirk v. First Am. Title Ins. Co.*,
  183 Cal. App. 4th 776 (2010) ...............................................................................17, 18

18

*Openwave Sys. Inc. v. Myriad France S.A.S.*,
  2011 U.S. Dist. LEXIS 35526 (N.D. Cal. Mar. 31, 2011) ........................................................3

19

20

*Oracle Am., Inc. v. Innovative Tech. Distribs., LLC*,
  2011 U.S. Dist. LEXIS 78786 (N.D. Cal. July 20, 2011) ............................................12, 15, 16

21

*People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*,
  20 Cal. 4th 1135 (1999)................................................................................................10

22

23

*Pound v. DeMera DeMera Cameron*,
  135 Cal. App. 4th 70 (2005) ...................................................................11, 14, 17, 18

24

25

*SEC v. Tang*,
  831 F. Supp. 2d 1130 (N.D. Cal. 2011)..................................................................10

26

*Synergy Tech & Design, Inc. v. Terry*,
  2007 U.S. Dist. LEXIS 34463 (N.D. Cal. May 2, 2007).......................................................3, 10

27

28

1

*Trabakoolas v. Watts Water Techs., Inc.*,
   2013 U.S. Dist. LEXIS 53224 (N.D. Cal. Apr. 12, 2013)...................................................20, 21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

In an exhaustive narrative laced with innuendo, Apple details activity by Morgan Lewis & Bockius ("MLB") environmental law partner John McAleese over a six-year period from 2007 through March 2013.  Yet this is not a motion to disqualify John McAleese or MLB (neither of whom are parties or attorneys in this case).  Any alleged taint attaching to Mr. McAleese can only be attributed to Hagens Berman *if* Mr. McAleese acted as co-counsel in this litigation with a "close" and "intimate" working relationship with Hagens Berman[1] – and there is absolutely no evidence that he did.  And even if he had, the "automatic disqualification rule" touted by Apple could only apply to Hagens Berman *if* Mr. McAleese himself had actual confidential information concerning Apple.  The parties agree that Mr. McAleese could not represent FlatWorld in litigation against Apple.  For *that purpose,* MLB's knowledge of client confidences is effectively imputed to Mr. McAleese.  But the issue here (*if* Mr. McAleese had acted as Hagens Berman's co-counsel) is whether Mr. McAleese's imputed knowledge of Apple confidences should be vicariously imputed to Hagens Berman – and California courts have never done so where, as here, Mr. McAleese had no *actual* knowledge of any Apple confidences.  Dispelling any possible doubt, *FlatWorld today moves for in camera review of all of the emails that Apple relies on as "proof" that Mr. McAleese was co-counsel and/or revealed confidential Apple communications to Hagens Berman.[2]*  Despite Apple's effort to create smoke, there is no fire and its motion must be denied.

A careful review of the facts shorn of Apple's innuendo and invective shows Hagens Berman *never* acted as co-counsel with Mr. McAleese in this case.  Instead, the "smoking gun" evidence Apple points to is quickly dispelled. While it is true that Jennifer McAleese (the minority shareholder of FlatWorld) forwarded to Mr. McAleese thirteen email strings that she had received from Hagens Berman, Hagens Berman did not know she had done so, and Mr. McAleese never communicated about those emails (or this litigation) with Hagens Berman.  The second "smoking gun" Apple points to is a phone call between Mr. McAleese and Hagens Berman concerning the

---

[1] *Canatella v. Krieg, Keller, Slan, Reilley & Roman LLP,* 2012 U.S. Dist. LEXIS 33606, at *4-5 (N.D. Cal. Mar. 13, 2012).

[2] *See FlatWorld's Administrative Motion for In Camera Review of Certain Privileged Documents* ("Motion for *In Camera* Review"), filed on this same day.

FLATWORLD'S OPPOSITION TO APPLE INC.'S
MOTION TO DISQUALIFY HAGENS BERMAN  - 1
Case No.: C 12-01956 JSW
005012-11  616685 V1

terms of FlatWorld's engagement of Hagens Berman.  Far from acting as co-counsel in this

litigation, Mr. McAleese was on the ***other side*** of the transaction negotiating against Hagens

Berman on its engagement agreement.  Finally, Apple claims that – by informing Hagens Berman

that Apple had complained that Mr. McAleese's name showed up on a privilege log – Mr.

McAleese was somehow "working together" with Hagens Berman "on behalf of FlatWorld." To

the contrary, by asking Hagens Berman to turn over FlatWorld's privileged documents, Mr.

McAleese took a position that was ***adverse*** to FlatWorld on its privilege log entries.  These facts,

and Apple's unfounded speculation that there is a "pipeline" between Mr. McAleese, his wife and

Hagens Berman, do not come close to demonstrating that Mr. McAleese acted as Hagens Berman's

co-counsel in this litigation.  Apple's motion must be denied for this reason alone.  As FlatWorld's

expert, Geoffry Hazard, concludes after reviewing all of the relevant evidence, "John McAleese

and Hagens Berman could not be regarded as co-counsel in this case because they did not

communicate at all for nearly a year after Hagens Berman was engaged, and there is no evidence

that Mr. McAleese rendered any legal advice or services to FlatWorld in this case except one

phone call to Hagens Berman to discuss terms of the engagement agreement."[3]

Even if Mr. McAleese ***were*** Hagens Berman's co-counsel, Apple still would not prevail.

While Apple paints a picture of a "conflict" in California law, the presumption of taint that Apple

seeks to apply vicariously to Hagens Berman has only been vicariously imposed on co-counsel

when the tainted lawyer ***actually*** possesses confidential client information.  That rule is eminently

reasonable, as it defies fairness and logic to ***presume*** that client confidences were shared without a

finding that there were any client confidences ***to*** share in the first place.

Here, once again, the facts do not support Apple's claims.  While Apple insinuates that Mr.

McAleese accessed Apple's privileged patent prosecution information from MLB files, Apple fails

to disclose that MLB conducted a forensic investigation of its network and files and determined

that Mr. McAleese never accessed any Apple files, and never sent or received any emails

containing Apple confidential or privileged information.  *See infra* at Section II.C.  As FlatWorld's

[3] Declaration of Geoffrey C. Hazard, Jr. in Opposition to Apple's Motion to Disqualify Hagens Berman Sobol Shapiro LLP ("*Hazard Decl.*") at ¶ 6(a).

experts (Professors Geoffrey Hazard and John Strait) state in opinions submitted with this opposition, Apple has provided no basis for the Court to disqualify Hagens Berman as lead counsel.  Under the proper inquiry, which considers all the facts of this case, Apple's motion fails.

This Court has observed that "[a] motion for disqualification of counsel is a drastic measure which courts should hesitate to impose except in circumstances of absolute necessity," and that "[t]he moving party, therefore carries a heavy burden and must satisfy a high standard of proof."[4] The facts Apple relies upon in its motion cannot meet Apple's heavy burden here, and the critical facts that Apple refused to disclose suggest that it is not being fully candid with the Court.

In the end, Apple's motion serves as vivid illustration of the concern that "[t]oo much money is being wasted these days on tactical motions to disqualify."  *Openwave Sys. Inc. v. Myriad France S.A.S.*, 2011 U.S. Dist. LEXIS 35526, at *15 (N.D. Cal. Mar. 31, 2011).  While asserting unfounded fears that unspecified confidential information will be revealed, Apple has used the disqualification proceedings to create trumped-up claims of "privilege" arising from its communications ***in connection with the very disqualification motion that it brings***.  It has also ginned up baseless claims that Hagens Berman has improperly withheld or even destroyed documents – which allegations required additional work and response (*see infra* at § II.F).  All the while, it has achieved significant delay, and caused the parties and the Court to expend significant resources in response.  As a reward for its questionable tactics, Apple now seeks to derail this litigation by disqualifying Hagens Berman (and casting a pall over any other counsel that may take over the case, against whom it will presumably make the same arguments concerning the alleged taint that attaches to Mr. McAleese and is transported to co-counsel across an imaginary pipeline).  Considering all the facts and circumstances of this case, Apple's motion must be denied.

---

[4] *Synergy Tech & Design, Inc. v. Terry*, 2007 U.S. Dist. LEXIS 34463, at *18 (N.D. Cal. May 2, 2007) (White, J.) (denying motion to disqualify counsel).

## II.    FACTS

**A.    Mr. McAleese's only relationship to FlatWorld arises from his marriage to the minority shareholder, Jennifer McAleese.**

FlatWorld is a limited liability company with only two shareholders – Slavoljub Milekic, Ph.D., the inventor of the patent-in-suit, and Jennifer McAleese, who holds 35% of the company. *McAleese Decl.* at ¶¶ 1-2.  Jennifer McAleese's shares are issued in her name, alone.  *Id.* at ¶ 2. FlatWorld has always engaged and compensated its own attorneys, including separate attorneys, for its incorporation and business activities, the prosecution of its patent as RE43,318 (the "'318 Patent"), and the notice letters it sent to various companies during the reissue patent prosecution. *Id.* at ¶ 3.

Jennifer McAleese is married to John J. McAleese, III.  *Id.* at ¶ 4.  ██████████████
████████████████████████████████████████████████  *Carlson Decl.* at ¶ 22, Ex. 4 (May 28, 2013 Deposition Transcript of Michael Ossip, general counsel for MLB ("*MLB Tr.*")) at 65:3-16.  Mr. McAleese's only relationship with FlatWorld is through his marriage to Ms. McAleese.  *McAleese Decl.* at ¶ 4.  After FlatWorld's formation, Ms. McAleese occasionally sought her husband's advice on various matters relating to the affairs of FlatWorld.  *Id.* at ¶ 5.  But Ms. McAleese has never requested her husband's assistance or advice in this case.  *Id.* at ¶ 8.

**B.    Hagens Berman has had no communications with Mr. McAleese concerning the substance or merits of FlatWorld's litigation against Apple.**

In January 2012, Jennifer McAleese contacted Hagens Berman regarding representation in patent infringement litigation asserting the '318 Patent.  *Carlson Decl.* at ¶ 2.  All communications were between Jennifer McAleese and/or Dr. Milekic for FlatWorld, and Mark Carlson for Hagens Berman, until February 27, 2012.  *Id.*

On February 27, at his wife's request, John McAleese called Mark Carlson to discuss certain terms in the Hagens Berman engagement agreement.  *Carlson Decl.* at ¶ 3.  The only subject was the disputed terms.  *Id.*  There was no discussion of any possible defendant in the suit, no discussion of Apple, and no discussion of any legal advice, tactics or strategy.  *Id.*  After further negotiation with Ms. McAleese, FlatWorld engaged Hagens Berman on March 5.  *Id.*

For the next year, between February 27, 2012 and February 13, 2013, there were no communications of any kind – oral, written, or electronic, direct or indirect – between Hagens Berman and Mr. McAleese. *Id.* at ¶ 4.  During that interval, ***and unbeknownst to Hagens Berman***, Ms. McAleese forwarded 26 email strings relating to this case to her husband, including thirteen email strings between herself and Hagens Berman  (*Id.*; *McAleese Decl.* at ¶ 8);[5] some of them attached copies of non-confidential pleadings and papers after they had been served or filed.  Mr. McAleese replied to these forwarded emails only twice, directly to his wife, not to Hagens Berman. *McAleese Decl.* at ¶ 8.[6]  Neither Hagens Berman nor Dr. Milekic ever sent any email related to the FlatWorld case against Apple to Mr. McAleese, and Hagens Berman never received any email related to the FlatWorld case against Apple from Mr. McAleese.  *Id.* at ¶¶ 12-13; *Berman Decl.* at ¶ 3; *Carlson Decl.* at ¶ 21; *Meyer Decl.* at ¶¶ 8-9.   Neither Jennifer McAleese nor Dr. Milekic ever discussed FlatWorld litigation advice, tactics or strategy with Mr. McAleese, nor did they ever transmit any information, advice, comments, or instructions from Mr. McAleese to any Hagens Berman attorney.  *McAleese Decl.* at ¶ 9; *Berman Decl.* at ¶¶ 2-3, 6, 8; *Carlson Decl.* at ¶ 18; *Meyer Decl.* at ¶¶ 8-9.

On February 13, 2013, Apple deposed Dr. Milekic in Philadelphia.  *Carlson Decl.* at ¶ 5. Dr. Milekic, Ms. McAleese, and Mr. Carlson went to lunch after the deposition.  *Id.*  Toward the end of the lunch hour, a man appeared unexpectedly and introduced himself as John McAleese.  *Id.* He asked how the deposition had gone, and Mr. Carlson said that Dr. Milekic had done well.  *Id.* Mr. McAleese then sat down with Dr. Milekic and they discussed their respective boats, in a conversation in which neither Mr. Carlson nor Ms. McAleese participated.  *Id.*  There was no discussion of legal advice, litigation tactics or strategy with Mr. McAleese.  *Id.*

Two weeks later, on February 26, Mr. McAleese called Mr. Carlson.  *Carlson Decl.* at ¶ 7. Mr. McAleese said that he was a partner of MLB, and that MLB performs legal work for Apple.

---

[5] *See* JMPriv004A, JMPriv005A, JMPriv007A, JMPriv009, JMPriv010, JMPriv011A, JMPriv013A, JMPriv014A, JMPriv017A, JMPriv018A.  These documents will be filed *in camera* if the Court grants FlatWorld's Motion for *In Camera* Review.

[6] *See* JMPriv226, which will also be filed *in camera* if the Court grants FlatWorld's Motion for *In Camera* Review.

1   *Id.  This was the first time that any Hagens Berman attorney knew of any relationship between*

2   *MLB and Apple.  Berman Decl.* at ¶ 5; *Carlson Decl.* at ¶ 7; *Meyer Decl.* at ¶ 5.  Mr. McAleese

3   said Apple had raised concerns about FlatWorld's claims of privilege for documents for which he

4   was shown as a recipient or author.  *Carlson Decl.* at ¶ 7.  Mr. McAleese said his name should not

5   be on a privilege log because he did not regard himself as FlatWorld's attorney, and he asked Mr.

6   Carlson to produce all of the emails between himself and his wife so that he could show MLB and

7   Apple that he was not FlatWorld's attorney.  *Id.*  Mr. Carlson replied that he thought the

8   communications between Mr. McAleese and his wife would be subject to the spousal privilege, and

9   that any included attorney-client privileged communications would therefore not be waived.  *Id.*

10  Mr. Carlson volunteered to check the privilege log, and if the descriptions were not correct, either

11  amend them or produce the documents.  *Id.*

12       FlatWorld's original privilege log included only documents created before Hagens Berman

13  was engaged.  *Meyer Decl.* ¶ 11.  Upon checking the privilege log and the logged documents, Mr.

14  Carlson learned that only the attorney-client privilege had been asserted with respect to the

15  McAleese inter-spousal documents.  *Carlson Decl.* at ¶ 9.  If Mr. McAleese did not regard himself

16  as FlatWorld's attorney, then FlatWorld's assertion of attorney-client privilege for the McAleese

17  documents was inaccurate and the documents should be produced unless subject to some other

18  privilege.  *Id.*  Upon research and review of the McAleese inter-spousal documents, however, Mr.

19  Carlson concluded that they should properly be withheld subject to the spousal privilege.  *Id.*

20  Hence, FlatWorld amended the privilege log, and served it on Apple on February 27.  *Id.* at ¶ 10.

21       On February 28, Mr. McAleese called Mr. Carlson again.  *Carlson Decl.* at ¶ 11.  He said

22  that the amended privilege log had not resolved the issue, and he again asked Mr. Carlson to

23  produce the email communications with his wife so that he could show MLB and Apple that he

24  was not FlatWorld's attorney.  *Id.*  Mr. Carlson refused, because production of the spousal

25  communications to MLB and Apple could waive valid privilege claims that did not belong solely

26  to Mr. McAleese.  *Id.*  Mr. Carlson offered to discuss with FlatWorld whether it would agree to

27  produce the documents to Apple subject to an agreement that no privilege was waived.  *Id.*

28

1        On March 1, Mr. Carlson informed Mr. McAleese that FlatWorld would produce the

2   McAleese inter-spousal documents provided that Apple would agree that production does not

3   constitute a waiver.  *Id*. at ¶ 12.  By email later that evening, Mr. McAleese informed Mr. Carlson

4   that subject to agreement on specific language, Apple was willing to agree that production of the

5   McAleese inter-spousal documents to Apple would not constitute a waiver of any privilege,

6   provided Apple could challenge the privilege on any grounds that would have been available

7   absent production of the emails to Apple.  *Id*. at ¶ 13.  He requested that Mr. Carlson draft an

8   agreement and forward it to MLB for discussion with Apple.  *Id*.  On March 3, Mr. Carlson drafted

9   the terms, and forwarded them as the body of an email to Mr. McAleese for Apple to consider.  *Id*.

10  at ¶ 14, Ex. 1.  But Apple never responded.

11       Apple subpoenaed all documents reflecting communications between John McAleese and

12  MLB on March 1.  *Carlson Decl.* at ¶ 15.  By agreement, the documents were provided to

13  FlatWorld pre-production, so FlatWorld could assert privileges.  *Id*.  In preparing the John

14  McAleese and MLB privilege logs, Hagens Berman learned for the first time that Ms. McAleese

15  had forwarded emails between Hagens Berman and FlatWorld to her husband.  *Id*.

16       On April 4, 2013, Steve Berman had one telephone call and exchanged email with Mr.

17  McAleese regarding an employment law issue, but advice, tactics, strategy, and management of the

18  present case were not discussed.  *Berman Decl.* at ¶ 3.

19       From February 27, 2012 through the present, there have been no communications – oral,

20  written or electronic – between Hagens Berman and John McAleese other than those described

21  above.

22  **C.    As an environmental lawyer at MLB, Mr. McAleese never acquired any confidential
        information concerning Apple.**

23

24                                                                    *MLB Tr*. at 47:17-24.

25

26

27          *MLB Tr*. at 65:3-24.

28

1   *Id.* at 48:1-9; 17:14-18:18. ████████████████████████████████████

2   ████████████████████████████████████████████████████ *Id.* at

3   65:3-66:7. ████████████████████████████. *Id.* at 48:11-23.

4   ████████████████████████████████████████

5   ████████████████████████████████████████████████████████

6   ████████    *MLB Tr.* at 74:3 – 77:17.  Before FlatWorld filed its complaint against Apple, Mr.

7   McAleese notified MLB in an email to General Counsel Michael Bloom, an MLB partner, that his

8   spouse was a principal in FlatWorld, that FlatWorld believed several Apple products infringed the

9   '318 Patent, and that FlatWorld planned to file a patent infringement suit against Apple.  *Carlson*

10  *Decl.* at ¶ 23, Ex. 5.  On April 21, 2012, Mr. McAleese notified Mr. Bloom that the complaint

11  against Apple had been filed.  *Id.* at ¶ 24, Ex. 6.  Mr. Bloom asked if he could notify Gary

12  Williams, presumably the MLB relationship partner for Apple.  *Id.* at ¶ 25, Ex. 7.  Mr. McAleese

13  agreed that Mr. Bloom could notify Mr. Williams, and even offered to speak to Mr. Williams

14  directly regarding the matter.  *Id.* at ¶ 26, Ex. 8.  Mr. Williams was informed of FlatWorld's

15  complaint and Mr. McAleese's relationship to the plaintiff by marriage to Jennifer McAleese.  *Id.*

16       Prior to Apple's filing of the instant motion, MLB undertook a forensic examination of all

17  its computer systems to determine whether Mr. McAleese had ever accessed Apple confidential

18  information. ████████████████████████████████████████

19  ████████████████████████████████████████. *MLB Tr.* at 9:15-24; 10:3-12.

20  ████████████████████████████████████████████████

21  ████████████████████████████████████████ *Id.* at 16:14-22. █

22  ████████████████████████████████████████████████

23  ████████████████████████████████ *Id.* at 119:23-120:6. ████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████ *Id.* at

26  117:12-118:3; 118:15-119:1. ████████████████████████████

27  ████████████████████████████████████████ *Id.* at 122:21-25.

28

The *only* disclosure of allegedly confidential Apple information to Mr. McAleese occurred when MLB partner Scott Garner forwarded Mr. McAleese an email from Apple's Jeff Risher "regarding FlatWorld's claims of privilege over communications with Mr. McAleese." *Risher Decl.* at ¶ 5. ███████████████████████ *MLB Tr.* 119:7-14. Thus the *only* alleged disclosure of any Apple information to Hagens Berman by Mr. McAleese was his oral communication in a telephone call to Mr. Carlson that "he had learned that the privilege log submitted by FlatWorld indicated that communications between him and his wife were covered by the attorney-client privilege" and "that he had not been acting as an attorney in his communications with his wife." *Ossip Decl.* at ¶ 6.

Between February 27 and April 8, 2013, Apple's litigation counsel Bridges & Mavrakakis openly expressed both orally and in writing to Hagens Berman that Apple objected to Mr. McAleese's name appearing on FlatWorld's privilege log because of MLB's representation of Apple in certain patent prosecution matters. *Carlson Decl.* at ¶ 16. Apple did not reverse course and take the position that this very same information was intended by Apple to be confidential and privileged until April 8, 2013, when Apple attorney Michael Pieja asserted that possession of this information required the withdrawal of Hagens Berman. *Id.* at ¶ 17.

### III.   AUTHORITIES AND ARGUMENT

**A.   Disqualification is a drastic measure, and the moving party bears a heavy burden.**

As this Court has repeatedly recognized, motions to disqualify counsel is a drastic measure. Because such motions are often abusive and tactically-motivated, they are subject to particularly strict judicial scrutiny and the moving party bears a heavy burden:

> A motion for disqualification of counsel is a drastic measure which courts should hesitate to impose except in circumstances of absolute necessity. *In re Marvel*, 251 B.R. 869, 871 (N.D. Cal. 2000), *citing Schiessle v. Stephens*, 717 F.2d 417 (7th Cir. 1983). Such motions are often tactically motivated and they tend to derail the efficient progress of litigation. *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983). The moving party therefore carries a heavy burden and must satisfy a high standard of proof. *Id.* Because of the potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny. *Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1049 (9th Cir. 1985), citing *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721-22 (7th Cir. 1982). Further, the cost and

> inconvenience to clients and the judicial system from misuse of the rules for tactical purposes is significant. *Optyl Eyewear*, 760 F.2d at 1049, citing Brown & Brown, *Disqualification of the Testifying Advocate-A Firm Rule?* 57 N.C.L. Rev. 595, 619-621 (1979). Because of this potential for abuse, disqualification motions should be subjected to "particularly strict judicial scrutiny." *Id.*, citing *Rice v. Baron*, 456 F. Supp. 1361, 1370 (S.D.N.Y. 1978); *see also Freeman*, 689 F.2d at 721-22.

*Synergy Tech & Design*, 2007 U.S. Dist. LEXIS 34463, at *18-19 (White, J.) (denying motion to disqualify counsel).[7]

Apple bears the burden of establishing the existence of a disqualifying conflict of interest by a preponderance of the evidence. *Canatella,* 2012 U.S. Dist. LEXIS 33606, at *3.  The district court must make factual findings supported by substantial evidence. *People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1143 (1999).

**B.      Apple's effort to impute Mr. McAleese's alleged taint to Hagens Berman fails because Mr. McAleese has never acted as Hagens Berman's co-counsel.**

Apple's motion depends entirely upon the claim that "Hagens Berman is co-counsel with John McAleese." *See* Apple Br. at 13-20.  In fact, this district has recognized that disqualification will not ordinarily be imputed from one lawyer to another; rather, vicarious disqualification of co-counsel requires proof of an intimate working relationship between the firms:

> [W]here two independent lawyers or law firms perform work for a common client on the same matter, one lawyer's or law firm's conflict of interest ordinarily will not be imputed to the other lawyer or firm.  [citation omitted]  However, where the two lawyers or firms had an intimate relationship, working together very closely and sharing confidential client information, one lawyer's or firm's conflict may result in disqualification of the other lawyer or firm.

*Canatella*, 2012 U.S. Dist. LEXIS 33606, at *4-5.  Apple's motion must fail, as there is no basis for a finding that Mr. McAleese has *ever* acted as Hagens Berman's co-counsel in this litigation.

All the evidence is that Mr. McAleese was *never* co-counsel with Hagens Berman in this case.  FlatWorld's shareholders Dr. Milekic and Ms. McAleese do not regard him as co-counsel for FlatWorld in this litigation. *Milekic Decl.* at ¶¶ 2-3; *McAleese Decl.* at ¶ 10.  Mr. McAleese has

---

[7] *See also Kelly v. Roker*, 2012 U.S. Dist. LEXIS 33604, at *5 (N.D. Cal. Mar. 13, 2012) (White, J.) (same, denying motion to disqualify); *SEC v. Tang*, 831 F. Supp. 2d 1130, 1142 (N.D. Cal. 2011) (White, J.) (same, denying motion to disqualify); *Canatella v. Stovitz*, 2004 U.S. Dist. LEXIS 24266, at *5-6 (N.D. Cal. Sept. 13, 2004) (White, J.) (same, denying motion to disqualify).

1    stated that he did not regard himself as counsel to FlatWorld.  *Carlson Decl.* at ¶ 7.  No Hagens

2    Berman attorneys regard Mr. McAleese as their co-counsel.  *Berman Decl.* at ¶ 2; *Carlson Decl.* at

3    ¶ 20; *Meyer Decl.* at ¶ 3.  Nor has Mr. McAleese behaved as co-counsel.  From Hagens Berman's

4    engagement on March 5, 2012, until February 13, 2013, he had no communication with ***any***

5    Hagens Berman attorney.  *Berman Decl.* at ¶¶ 2-3; *Carlson Decl.* at ¶ 4; *Meyer Decl.* at ¶ 3.  His

6    first post-engagement communication with Hagens Berman was nearly a year after it was engaged,

7    and only to ask how Dr. Milekic had done in his deposition towards the end of a social lunch at

8    which no litigation tactics or strategy was discussed.  *Carlson Decl.* at ¶ 5.  Finally, FlatWorld has

9    no reason to engage Mr. McAleese as co-counsel in this case:  ███████████████████

10   ██████████████████████   *MLB Tr.* at 65:3-66:7.  Here, the requisite "intimate

11   relationship, working together very closely and sharing confidential client information" is not

12   present between Mr. McAleese and Hagens Berman.  *Canatella*, 2012 U.S. Dist. LEXIS 33606, at

13   *4-5.  Mr. McAleese's minimal contacts with Hagens Berman – negotiating on the ***other side*** of

14   the engagement agreement and taking a ***contrary position*** to Hagens Berman and FlatWorld on

15   producing privileged documents – does not show that Mr. McAleese was working together with

16   Hagens Berman in this litigation.

17        Apple cites no authority as to what level of engagement is sufficient to make lawyers in

18   different firms co-counsel.  It cites dictum from *Pound v. DeMera DeMera Cameron*, 135 Cal.

19   App. 4th 70, 78-79 (2005) for the proposition that "[i]n California, attorneys may be treated as co-

20   counsel, 'even if [they] never associated into the case.'"  Apple Br. at 13:17-18.  But in *Pound* the

21   attorney from whom disqualification was imputed *was* hired for the purpose of assisting in the trial,

22   so there was no question that he *had* associated into the case.  135 Cal. App. 4th at 77.

23        Here, in contrast to *Pound,* Apple has no evidence that Mr. McAleese acted as co-counsel.

24   Instead, Apple speculates that John McAleese "via his wife, carved out a 'pipeline' through which

25   [he] guided FlatWorld's actions" and that "[a]dvice continued to flow freely through that pipeline

26   to Hagens Berman."  Apple Br. at 14:4-6.  But Apple relies on thirteen emails that Jennifer

27   McAleese forwarded *to her husband* containing FlatWorld confidences and non-confidential

28   papers and pleadings.  *None* of these emails "flow freely through that pipeline" *from Mr. McAleese*,

FLATWORLD'S OPPOSITION TO APPLE INC.'S
MOTION TO DISQUALIFY HAGENS BERMAN  - 11
Case No.: C 12-01956 JSW
005012-11  616685 V1

1    and *none* of these emails "flow freely through that pipeline" *to Hagens Berman*.  There is no

2    evidence that Mr. McAleese "guided FlatWorld's actions" in this case or provided ***any*** advice to

3    Hagens Berman.  Rather, Apple invites the Court to join in speculation, arguing that "it is

4    overwhelmingly likely" that Mr. McAleese "guide[d] FlatWorld's own interactions with Hagens

5    Berman" and that "unlogged talks" occurred.  Yet Messrs. Berman, Carlson and Meyer, Dr.

6    Milekic and Ms. McAleese have all provided sworn declarations that Mr. McAleese was not

7    involved in this litigation in any way.  *Berman Decl.* at ¶¶ 2-3, 6, 8; *Carlson Decl.* at ¶¶ 18, 20-21;

8    *Meyer Decl.* at ¶¶ 3, 8-9.

9            There is no reason here for the Court to disbelieve the sworn declarations stating that Mr.

10   McAleese is not participating, and has not participated, in this litigation.  *See Oracle Am., Inc. v.*

11   *Innovative Tech. Distribs., LLC*, 2011 U.S. Dist. LEXIS 78786, at *15 (N.D. Cal. July 20, 2011)

12   (finding "there is simply no reason for the Court to disbelieve Dal Molin's sworn declaration that

13   she is not (and has not) participated [sic] in this litigation," the district court denied the motion to

14   disqualify co-counsel Lowenstein).  Like the court in *Oracle,* this Court should reject Apple's

15   invitation to speculate that Mr. McAleese participated with Hagens Berman in this case based upon

16   the emails that were forwarded to him by his wife – and any doubts will be fully resolved by

17   reading the emails that Hagens Berman now moves to present for *in camera* review.

18           Apple similarly invites the Court to infer that Ms. McAleese communicated legal advice

19   from her husband to Hagens Berman based on her status as one of two client representatives.

20   Apple notes that she was a client representative at a settlement conference and at Dr. Melikic's

21   deposition, then argues that "her discussions with Hagens Berman must reflect whatever John

22   McAleese is telling her in response to the Hagens Berman emails was being [sic] forwarded."

23   Apple Br. at 14:21-23.  But there is no evidence of any such communication from Mr. McAleese

24   through his wife to Hagens Berman, and Messrs. Berman, Carlson and Meyer, Dr. Milekic and Ms.

25   McAleese have all provided sworn declarations stating that there was ***no*** such communication.

26           Finally, Apple argues that Mr. McAleese's telephone call to Mr. Carlson, in which he "told

27   him that Apple had raised concerns regarding FlatWorld's privilege log, specifically

28   Mr. McAleese's status as a lawyer and FlatWorld's associated claims of privilege," is proof that

FLATWORLD'S OPPOSITION TO APPLE INC.'S
MOTION TO DISQUALIFY HAGENS BERMAN  - 12
Case No.: C 12-01956 JSW
005012-11  616685 V1

Mr. McAleese is co-counsel with Hagens Berman.  Apple Br. at 15:2-4.  It argues that "John

McAleese and Hagens Berman worked together to craft a strategy to thwart Apple's interests"

"[b]y injecting a 'spousal privilege' into the case."  *Id.* at 15:9-14.[8]  But Apple's characterizations

of McAleese's phone calls with Hagens Berman are patently incorrect.  Mr. McAleese did not

"seek[] to make it more difficult for Apple to discover the contents of those [privileged]

communications" and "salvage FlatWorld's privilege strategy"; to the contrary, ***he asked Mr.***

***Carlson to produce them to Apple***.  *Carlson Decl.* at ¶¶ 7, 11.  And Mr. Carlson did not "work

together" with Mr. McAleese, ***he refused his request due to concerns about waiving FlatWorld's***

***privilege***.  *Id.*  These conversations with Mr. McAleese cannot plausibly be read as evidencing that

Mr. McAleese was Hagens Berman's co-counsel.  After an exhaustive review of all of Mr.

McAleese's interactions with Hagens Berman, FlatWorld's expert, Professor Strait, states

unequivocally that "Mr. McAleese is not part of the litigation team, nor has he been involved in

any aspect of Hagens Berman's representation and is not an affiliated lawyer with Hagens

Berman."  *See* Declaration of John A. Strait in Opposition to Apple's Motion to Disqualify Hagens

Berman Sobol Shapiro LLP ("*Strait Decl.*") at 4, ¶ 2.

It is not surprising that Apple can find no authority that would support the imposition of co-

counsel status on Mr. McAleese here. With the myriad and significant consequences that flow from

being co-counsel – duties to clients and the potential liability for malpractice among them – that

label cannot be so lightly attributed.  And, because Mr. McAleese never acted as co-counsel in this

litigation, Apple's effort to vicariously taint Hagens Berman cannot succeed.

**C.      There is no automatic disqualification based on the presumption that a tainted lawyer
         shared client confidences when the tainted lawyer never possessed client confidences.**

Assuming that it will prevail on its flimsy argument that Mr. McAleese acted as co-counsel

for FlatWorld in this litigation, Apple asks this Court to "presume" that McAleese had and shared

confidential information, and automatically disqualify Hagens Berman.  Yet Apple concedes that

there are two lines of cases on disqualification of co-counsel, one applying an irrebuttable

---

[8] Significantly, Apple does not question that FlatWorld's assertion of the spousal privilege on
these facts is proper.

presumption of shared client confidences and automatic vicarious disqualification, and the other

applying a more nuanced examination of the particular facts and interests in each case.  Without

trying to harmonize them, Apple urges the Court to pick one line of cases and apply it to all

disqualification motions targeting co-counsel.  Relying primarily on *Pound*, 135 Cal. App. 4th 70,

Apple argues that in all cases where attorney A and firm B are co-counsel and represent clients

with adverse interests, the firms are irrebuttably presumed to have shared client confidences, and

disqualification of firm B is automatic.  But Apple ignores the fundamental fact that in *Pound*, as in

***all*** of its authorities, the tainted attorney ***actually*** possessed relevant confidential client

information; in that circumstance, some courts have presumed the confidential information was

shared with co-counsel and disqualified co-counsel.[9]  In contrast, where, as here, the allegedly

tainted attorney had no confidential information, courts have not applied a presumption and a case-

by-case inquiry determines whether any taint will be vicariously imputed to co-counsel.  Such a

rule is fair and reasonable given that it simply defies logic to "presume" that an attorney shared

confidential information ***when that attorney had no such information to share.***

> **1.  California courts generally apply a case-by-case analysis to motions to disqualify co-counsel on the basis of an imputed taint.**

Even when the requisite close working relationship between the tainted lawyer and the co-

counsel firm is established, California courts generally do not presume sharing of confidential

information between them and impose vicarious disqualification.  Instead, they consider all of the

facts of each case to determine whether disqualification is warranted:

> The particular facts of each case must be considered in order to
> determine whether disqualification is warranted.  *In re Airport Car
> Rental* outlined several factors to weigh in determining whether to
> disqualify co-counsel:  (1) the extent of the initial contact between
> counsel and client; (2) evidence that the attorney shared any of the
> client's confidential information with co-counsel; and (3) evidence
> that co-counsel associated with the disqualified counsel because of
> the disqualified counsel's prior relationship with the client.

---

[9] Some courts do not apply the presumption that confidential information was shared even ***if*** the tainted attorney actually possesses confidential information.  However, across all the cases, the possession of actual confidential information is a ***necessary prerequisite*** for applying the presumption and the resultant automatic disqualification of co-counsel.

1   *Canatella*, 2012 U.S. Dist. Lexis 33606, at *5 (citing *In re Airport Car Rental Antitrust Litig.*, 470

2   F. Supp. 495, 505 (N.D. Cal. 1979)).

3          In *Canatella,* attorney Canatella hired Kerr & Wagstaffe ("Kerr") to represent him in a

4   monetary sanctions hearing in 1999.  2012 U.S. Dist. LEXIS 33606, at *5.  He later learned of

5   possible California state bar charges against him based in part on monetary sanctions in a different

6   proceeding.  Canatella brought a Section 1983 action against several California attorneys.

7   Defendants were represented by the California Office of General Counsel ("OGC").  Kerr assisted

8   the OGC in drafting a motion to dismiss the complaint.  Canatella moved to disqualify OGC.

9   Because Kerr acted as co-counsel, Canatella argued that it should be presumed that co-counsel

10  shared Canatella's confidential information.

11         The district court ruled that Kerr would be disqualified if it had not already withdrawn.  *Id.*

12  at *5-6.  But applying the *Airport Car Rental* test for disqualification of co-counsel, the district

13  court found first that Kerr's prior services for Canatella in an unrelated sanctions proceeding "were

14  brief and circumscribed."  *Id.* at *6.  Second, the court found that there was no evidence that Kerr

15  shared any confidential information with its co-counsel the OGC.  *Id.*  The court refused to find

16  such sharing based on Canatella's assumption that it occurred.  *Id.*  Finally, the court found that

17  there was no evidence that the OGC associated with Kerr because of its relationship with Canatella.

18  *Id.* at *7.  Accordingly, the court refused to presume sharing of confidences between Kerr &

19  Wagstaffe and the OGC, and therefore denied the motion to disqualify co-counsel.

20         Similarly, in *Oracle*, 2011 U.S. Dist. LEXIS 78786, Dal Molin served as in-house counsel

21  to Sun Microsystems at the time it was acquired by Oracle.  While so employed, Ms. Molin worked

22  on a dispute between Sun/Oracle and a reseller, ITD, and would have been disqualified from

23  representing ITD in the case at bar.  *Id.* at *5-6, *13-14.  After Oracle bought Sun, Ms. Molin left

24  Oracle, joined ITD as its general counsel, and attended a pre-litigation meeting of executives and

25  attorneys for Oracle and ITD.  *Id.* at *8.  Oracle objected, and moved to disqualify both Ms. Molin

26  and ITD's outside counsel (its co-counsel) Lowenstein & Sandler.  Ms. Molin submitted a

27  declaration in opposition saying that she has "never disclosed any confidential information or

28

1    attorney-client privileged information" and that she has had "absolutely no involvement in the

2    litigation between ITD and Oracle in any manner." *Id.* at *9.

3          The district court denied the motion to disqualify Ms. Molin as moot.  It ruled that "there is

4    simply no reason for the Court to disbelieve Dal Molin's sworn declaration that she is not (and has

5    not) participated [sic] in this litigation." *Id*. at *15.  And the district court denied the motion to

6    disqualify co-counsel Lowenstein.  *Id.* at *16.  The court noted there were "few cases where courts

7    have imputed confidential knowledge to co-counsel as the basis for disqualification.  Indeed, the

8    general rule seems to be the contrary:  'disqualification of one firm does not automatically compel

9    disqualification of the firm's co-counsel …. Rather, the particular facts of each case must be

10   considered in order to determine whether disqualification is warranted.'" *Id.* (quoting *In re Airport

11   Car Rental Antitrust Litig.*, 470 F. Supp. at 501-02).  The court ruled "[t]here is no evidence that

12   Lowenstein worked with Dal Molin in this litigation," and it rejected Oracle's invitation to

13   speculate that Ms. Molin provided confidential information to ITD.  *Id.* at *17.

14         Finally, in *In re Airport Car Rental Antitrust Litig.*, 470 F. Supp. 495, Budget Rent A Car

15   Systems engaged the Phillips Nizer firm to represent it.  When Pacific Auto Rental Corporation

16   later sued Budget, Budget engaged Phillips Nizer to defend it, and Phillips Nizer associated the

17   Fujiyama firm as co-counsel.  Pacific Auto moved to disqualify both Fujiyama and Phillips Nizer

18   because Fujiyama received confidential information from Pacific Auto and agreed to represent

19   Pacific Auto in a prior but substantially-related case.  The district court granted the motion to

20   disqualify Fujiyama, but denied the motion to vicariously disqualify Phillips Nizer:

21              The cases state that disqualification of one firm does not
                automatically compel disqualification of the firm's co-counsel.
22              [citation omitted]  Rather, the particular facts of each case must be
                considered in order to determine whether disqualification is
23              warranted.

24   *Id.* at 501-02.  The district court noted that "the disqualified firm's interaction with the former

25   client was extremely limited," "there is no evidence whatsoever that any member of the Fujiyama

26   firm conveyed any confidential information concerning Pacific Auto to Phillips Nizer," and there

27   was no suggestion "that Phillips Nizer associated the Fujiyama firm as co-counsel because of the

28

firm's prior relationship with Pacific Auto.  Rather, … Phillips Nizer had no reason to believe that the Fujiyama firm's representation of Budget would create a conflict of interest." *Id.* at 502.

The court ruled that even if a presumption of shared confidences applied, it would find it had been rebutted on these facts, and rejected automatic disqualification of co-counsel. *Id.* at 506.

> If this Court were to impute the knowledge of Fujiyama to co-counsel, the Court would be very close to adopting a rule of automatic disqualification of co-counsel.  Such a rule would not accord sufficient weight to factors counseling against disqualification.  Although courts must preserve the high standards of the legal profession, courts should also consider the client's right to choose his counsel and the harm to the client caused by an order of disqualification.

*Id.* at 502.

### 2. The *Pound* rule does not apply because Mr. McAleese never possessed confidential client communications arising from MLB's work for Apple.

Apple urges the Court to reject the case-by-case analysis of *Canatella, Oracle* and *In re Airport Car Rental* in favor of the automatic vicarious disqualification rule applied in *Pound*.  But *Pound* imposed an irrebuttable presumption of shared confidences and automatic disqualification when an attorney with ***actual*** confidential information affiliates with co-counsel adverse to the attorney's former client. "We conclude that ***once the trial court determined [the tainted attorney] received confidential information from [the client], the disqualification of [co-counsel] also was required***."  135 Cal. App. 4th at 73 (emphasis added).[10]  On its face, *Pound* does not apply here.

In *Pound*, plaintiffs sued their former employer.  Defense counsel Smith interviewed attorney Bradley and "discussed the case in specific terms, including issues, personalities, vulner-abilities, and other topics properly described as attorney work product."  *Id.* at 74.  Defendants did not engage Bradley.  However, three years later plaintiff's counsel associated Bradley for the purpose of assisting in the trial of the very case that he had previously discussed with Smith.  *Id.*

---

[10] As the court stated, "The issue is whether the firm representing one party must be disqualified when it associates as counsel ***an attorney who previously obtained confidential information from the opposing party***, even in the absence of any evidence that confidential information was shared between the firm and the associated counsel."  *Id.* at 73 (emphasis added).

As the court noted, the case was "identical to those cases involving attorneys changing law firms, from one side (plaintiffs) to the other (defendants), during the pendency of a case."  *Id.* at 76.[11]

The *Pound* rule does not apply here, as Mr. McAleese did not possess any actual Apple confidential information about any matter that Apple engaged MLB to handle.  It cannot be seriously disputed that ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ *Supra* at Section II.C.

Apple also relies upon *Beltran v. Avon Prods.*, 867 F. Supp. 2d 1068 (C.D. Cal. 2012).  There, attorney Frank **himself** had represented Avon on numerous matters involving hundreds of hours of billable time, and acquired actual confidential information that was substantially related to the issues in the case in which disqualification was sought.  *Id.* at 1079-81.  The court found that Frank was disqualified, his disqualification was imputed vicariously to his firm, and extended to co-counsel, who had "collaborated with [Frank's firm] in the filing of the complaint against Avon in *Estee Lauder* and this case."  *Id.* at 1084.  Significantly, in determining whether the presumption applied, the Court focused ***on the tainted attorney's work for Avon – and not on the work that his firm did for Avon.***  *Id.* at 1078-83. Here, in stark contrast, Mr. McAleese never did any work for Apple and never possessed any Apple confidential information.

Finally, Apple relies upon *Advanced Messaging Techs., Inc. v. Easylink Servs. Int'l Corp.*, 2012 U.S. Dist. LEXIS 179698 (C.D. Cal. Dec. 19, 2012), but that case is inapposite too.  In *Advanced Messaging*, an attorney represented the plaintiff company J2, and acquired confidential and privileged information about subject matters that were substantially related to the issues and defenses in the cases in which his disqualification was sought.  *Id.* at *6-7.[12]  The tainted attorney

---

[11] In *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776 (2010), the court discussed the split authority in disqualification cases arising when a tainted lawyer leaves firm A and joins firm B where firm B represents a client with interests adverse to a client of firm A.  The court harmonized those cases by noting that California courts generally apply "a case-by-case analysis" to determine whether vicarious disqualification of firm B is warranted, except that "vicarious disqualification should be automatic in cases of a tainted attorney possessing actual confidential information from a representation, who switches sides in the same case."  *Id.* at 800.

[12] The *Advanced Messaging* court states that it had to decide "whether the court should presume that Attorney learned confidential information about j2 that is relevant to the …Current Cases." *Id.* at *12.  But the court did so by determining first that "there was a direct relationship between [the] attorney and the former client," and noted that "[d]uring the Attorney's time repres-

then became "outside in-house counsel" to defendant Open Text and, in that role, worked on substantially-related cases. *Id.* at *10-12. The district court held that on these facts, the presumption of shared confidences with the tainted attorney's co-counsel is not rebuttable.

As Professor Hazard concludes based on a review of the relevant evidence: "Apple has presented no factual or legal basis to impute Mr. McAleese's conduct, knowledge, or duties to Hagens Berman." *Hazard Decl.* at ¶ 6(f).

**D.     Apple has not met its heavy burden to establish that the circumstances and competing interests of this case make disqualification a matter of absolute necessity.**

FlatWorld's clear interests are in preserving its counsel of choice, and in the swift and efficient administration of justice in this case. Apple's professed interest is in the preservation of its confidential privileged information given to MLB. If Apple's motion is granted, FlatWorld's interests are defeated. Apple's interest in confidentiality, however, is not affected either way under the particular circumstances of this case.

**1.     Mr. McAleese never had any involvement in any Apple matters, and never accessed any confidential information through his employment at MLB.**

Apple submits the declaration of in-house counsel Cyndi Wheeler for the proposition that MLB "has prosecuted hundreds of patent applications relating to, among other things, the touch-based user interface of Apple's iPhone and other iOS devices, including numerous patent applications filed before the iPhone was publicly demonstrated." *Wheeler Decl.* at ¶ 4. Although the priority date of the patent-in-suit predates these patent applications by *ten years*, Apple asserts that FlatWorld accuses this belatedly patented technology of infringement. Apple Br. at 3:11-12. Apple insinuates that privileged information in these patent prosecution files was or could have been accessed and disclosed by Mr. McAleese.

Yet Apple's motion and supporting declaration are devoid of any evidence that Mr. McAleese ever accessed Apple's privileged information. The reason for this is that Apple knows he did not, given that ████████████████████████████████████████████

██████████████████████████████████████████████████████████████

---

enting j2, … he and j2's General Counsel were parties to over 120 emails," including emails that were relevant to the current cases for which his co-counsel was then disqualified. *Id.* at *16-17.

1     ███ *See supra* at Section II.C.  Nor is it plausible that Mr. McAleese could have acquired Apple

2     privileged information orally from MLB's patent attorneys, given ███████████████

3     ████████████████████████████████████████████████████ *Id.*

4     So Mr. McAleese would have had little opportunity to informally cajole his colleagues for Apple

5     privileged information.  The record demonstrates that Mr. McAleese did not access Apple

6     privileged information.

> **2.     Apple has not met its heavy burden to establish that Hagens Berman received any privileged information from Mr. McAleese.**

7
8          The attorney-client privilege arises when: (1) a client (2) transmits confidential

9     communications (3) to a lawyer (4) for the purpose of retaining the lawyer or securing legal service

10    or advice from him in his professional capacity.  *Trabakoolas v. Watts Water Techs., Inc.*, 2013

11    U.S. Dist. LEXIS 53224, at *4-5 (N.D. Cal. Apr. 12, 2013) (citing *Mitchell v. Superior Court*, 37

12    Cal. 3d 591, 600 (Cal. 1984)).  The privilege "does not attach to a communication the client does

13    not intend to be confidential."  *Id.* (quoting *Benge v. Superior Court*, 131 Cal. App. 3d 336, 346

14    (1982)).  Here, Apple cannot show that Mr. McAleese possessed any Apple privileged information

15    that he disclosed to FlatWorld.

16         The only allegedly privileged information that Apple claims Mr. McAleese ever actually

17    possessed is the February 25, 2013 email that Apple's Jeff Risher claims he sent to MLB's Scott

18    Garner "regarding FlatWorld's claims of privilege over communications with Mr. McAleese."

19    *Risher Decl.* at ¶ 5.  Mr. Garner forwarded it to Mr. McAleese on February 26.  *Carlson Decl.* at

20    ¶ 27, Ex. 9.  The email in question was provided to the Court by Apple, but redacted in its entirety.

21    *Id.*  Apple has not provided this document to the Court for *in camera* review, nor did Mr. Pieja

22    attach it to his declaration's over 500 pages of exhibits, so we have only Mr. Risher's

23    representation that it regards FlatWorld's claims of privilege.  Apple asserts that this is "a

24    confidential, attorney-client privileged communication," and argues that Mr. McAleese disclosed it

25    to Hagens Berman.  Apple Br. at 7:11-13; 14:24-15:4.

26         On this record, Apple has failed to demonstrate that the email from Risher to Garner was

27    "for the purpose of retaining [Mr. Garner] or securing legal service or advice from him in his

28

FLATWORLD'S OPPOSITION TO APPLE INC.'S
MOTION TO DISQUALIFY HAGENS BERMAN  - 20
Case No.: C 12-01956 JSW
005012-11  616685 V1

professional capacity." *Trabakoolas*, 2013 U.S. Dist. LEXIS 53224, at *4. Apple discloses only that it regards "FlatWorld's claims of privilege over communications with Mr. McAleese." *Risher Decl.* at ¶ 5. Apple does not state that Mr. Risher requested legal service or advice from Mr. Garner, and nothing may be discerned from the fully redacted email itself. Apple has not demonstrated a request for legal service or advice.

Nor has Apple established that Mr. Risher's email concerns a subject matter that was intended to be confidential, notwithstanding Mr. Risher's statement that it was. That Apple objected to MLB about Mr. McAleese appearing as an author or recipient of documents on FlatWorld's privilege log cannot have been intended by Apple to be kept confidential. Apple's counsel raised this very objection in discovery conferences with FlatWorld's counsel between February 28 and April 8, 2013. *Carlson Decl.* at ¶ 16. Furthermore, Apple's counsel asserted this objection openly in correspondence to FlatWorld's counsel on April 8, and to Magistrate Judge Spero on April 11, 2013. *Id.* at Exs. 2, 3. And Apple's objection is the basis for this very motion to disqualify Hagens Berman. Apple cannot have it both ways. The *only* way this objection could have remained confidential was if Apple did not intend to assert it. Clearly, it intended all along to move to disqualify Hagens Berman because an MLB partner appeared as an author or recipient of documents on FlatWorld's privilege log, regardless of whether FlatWorld had amended the logs to correct them. So the fact that Apple objected to the McAleese privilege log entries cannot be re-characterized retroactively as a confidential communication.

This record is also insufficient to show that Mr. McAleese disclosed any privileged matter to Hagens Berman. The declaration of Michael Ossip, MLB's general counsel, states that Mr. McAleese said he told Hagens Berman "that the privilege log submitted by FlatWorld indicated that communications between him and his wife were covered by the attorney-client privilege," and that "he had not been acting as an attorney in his communications with his wife." *Ossip Decl.* at ¶¶ 5-6. But these subject matters are not privileged. Hagens Berman created the privilege logs, so Mr. McAleese's disclosure that he was shown as an author or recipient cannot be a confidential and privileged *Apple* communication. Similarly, Mr. McAleese's disclosure that he had not acted as an

attorney in his communications with his wife did not come from *Apple*.  Mr. Ossip's declaration

does not identify any disclosure of privileged or confidential Apple information.

Apple cannot rely on conjecture and inferences while failing to provide direct evidence that

is within its control, such as the February 25 email that allegedly includes confidential and

privileged communications:

> The question about which inferences should be drawn from the
> undisputed facts is significant in cases where the moving party relies
> on inferences rather than submitting direct evidence of facts that are
> within its control.  Sometimes, omitted facts become conspicuous by
> their omission [citation omitted], particularly where the motion
> involved, like a motion to disqualify counsel, has the potential for
> tactical abuse.

*Faughn v. Perez*, 145 Cal. App. 4th 592, 601 (2006).  While presenting direct evidence of facts to

support a motion to disqualify arising from disclosure of confidential privileged information is

challenging, "[o]ne method of presenting evidence and protecting its confidential nature is to file

the documents with the court under seal for *in camera* review."  *Id.* at 602.

FlatWorld has moved to file all privileged Hagens Berman documents with the Court for *in

camera* review.  But Apple hides behind the privilege, while urging the Court to find that the fully-

redacted content of Mr. Risher's February 25, 2013 email to Mr. Garner is a confidential and

privileged request for legal advice or services based only on the statement of Mr. Risher.  This

Court, like the court in *Faughn*, should refuse.  The Court should consider whether there are "facts

within the control of the moving party that (1) could be disclosed without defeating the purpose of

protecting confidential information [e.g., by *in camera* review] and (2) are conspicuous by their

absence."  *Id.* at 607.  When the moving party in a motion to disqualify counsel fails to proffer evi-

dence in its control, the court should not grant the moving party's request to draw inferences.  *Id.*

As Professor Strait notes after reviewing all of the relevant evidence, "[s]tripping away the

rhetoric and the unwarranted inferences" in Apple's papers, "it is apparent that no [transmission of]

confidential information which disadvantaged Apple or advantaged FlatWorld in this patent

litigation occurred."  *Strait Decl.* at 20, ¶ 1.

FLATWORLD'S OPPOSITION TO APPLE INC.'S
MOTION TO DISQUALIFY HAGENS BERMAN  - 22
Case No.: C 12-01956 JSW
005012-11  616685 V1

1

### 3.  Hagens Berman did not "associate" with Mr. McAleese because of MLB's relationship with Apple

2

3        As detailed *supra* at Section II.B, Hagens Berman never "associated" with Mr. McAleese,

4   as Mr. McAleese has never acted as co-counsel in this case.  But even if it had, there can be no

5   finding that Hagens Berman "associated with [the allegedly tainted lawyer] because of [his] prior

6   relationship with the client."  *Canatella,* 2012 U.S. Dist. Lexis 33606, at *5.  To the contrary, it is

7   undisputed that Hagens Berman first learned that Apple was a client of MLB on February 26, 2013.

8   *See supra* at Section II.B.

9

### E.  FlatWorld would be severely prejudiced if Hagens Berman were disqualified, and its disqualification would derail the efficient progress of this litigation

10       "In a motion to disqualify, it is also proper to consider such factors as whether

11  disqualification would result in prejudice to the nonmoving party."  *Beltran*, 867 F. Supp. 2d at

12  1084.[13]  Over the past fifteen months, Hagens Berman has invested nearly 3,000 attorney hours in

13  the FlatWorld case, and hundreds of thousands of dollars in expert witness time.  *Berman Decl.* at

14  ¶ 9.  Hagens Berman attorneys performed the firm's initial investigation, developed FlatWorld's

15  infringement contentions, and developed FlatWorld's response to Apple's invalidity contentions.

16  *Carlson Decl.* at ¶ 30.  Hagens Berman attorneys interviewed all potential FlatWorld witnesses.  *Id.*

17  Hagens Berman attorneys identified all claim construction issues, developed FlatWorld's claim

18  construction positions, and drafted FlatWorld's opening and reply claim construction briefs.  *Id.*

19  Hagens Berman attorneys have worked with FlatWorld's consulting experts to assist in preparing

20  their technical tutorial.  *Id.*  Hagens Berman attorneys have reviewed and analyzed Apple's

21  massive production of documents and source code.  *Id.*

22       Any firm replacing Hagens Berman would face an enormous and expensive task to come up

23  to speed on this case.  FlatWorld would be at a severe disadvantage while its new counsel struggled

24  to absorb fifteen months of work on all of the most significant issues in the case.  The case

25  management order would have to be revised and due dates continued.

26

27       ────────────────
        [13] *Employers Ins. of Wausau v. Albert D. Seeno Constr. Co.*, 692 F. Supp. 1150, 1165 (N.D.
28  Cal. 1988) (citing *River W., Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1309-10 (1987)).

And in the end, Ms. McAleese will still be married to John McAleese.  FlatWorld's new counsel will know that Apple objected to Mr. McAleese's name having appeared on FlatWorld's original privilege log.  Moreover, Apple could still hypothesize the imaginary "pipeline" between John McAleese, his wife, and FlatWorld's new attorneys and argue again for automatic vicarious disqualification.  As Professor Strait concludes:

> A review of the facts shows that there will be no change in the litigation posture of either FlatWorld or Apple by removing Hagens Berman other than the reasons of delay, increased expense, and interference with the Court's orderly processing of this case.  [*Strait Decl.* at 21, ¶ 1.]

**F.    Hagens Berman has not intentionally withheld documents without logging them, and certainly has not destroyed any documents.**

While accusations that a law firm has withheld responsive documents from production without logging them, or worse destroyed documents, are not relevant to a motion to disqualify counsel, they are serious charges of breaches of professional ethics.  One would expect that such accusations would be made only where they are well supported by evidence.  Here, Apple's accusation that Hagens Berman improperly withheld or destroyed documents is frivolous.

Apple has alleged that certain documents that appear on the privilege logs of John McAleese and MLB do not appear on the privilege log of FlatWorld, and, therefore, these documents must have either been improperly withheld, concealed, or destroyed.  In fact, no documents were intentionally concealed or destroyed.  *Meyer Decl.* at ¶ 6; *Milekic Decl.* at ¶ 7; *McAleese Decl.* at ¶¶ 13, 18.  On the contrary, both FlatWorld and Hagens Berman have gone to great lengths in its attempt to produce to Apple all documents responsive to Apple's discovery requests.  *Meyer Decl.* at ¶ 6; *Milekic Decl.* at ¶ 7; *McAleese Decl.* at ¶ 18.

Hagens Berman has now investigated Apple's allegations that over 100 emails were missing.  *Meyer Decl.* at ¶ 7.  In fact, eighty-four of the emails or email threads[14] appearing on the privilege log of John McAleese or MLB but not on FlatWorld's privilege log do not appear to be responsive to any discovery request served on FlatWorld prior to June 6, 2013.  *Id.* at ¶ 7.a.  Other

---

[14] Each email thread appearing on the privilege logs of John McAleese or MLB was separated into its individual subsections, thus multiplying the number of entries on those logs.

documents either have been listed on FlatWorld's privilege log, or they represent documents that were produced to Apple. Three of the documents listed on the privilege logs of John McAleese or MLB but not on FlatWorld's privilege log were produced. *Id.* at ¶ 7.b. Twelve of the emails or email threads listed on the privilege logs of John McAleese or MLB but allegedly not on FlatWorld's privilege log are listed on FlatWorld's privilege log. *Id.* at ¶ 7.c. (see table).

Other documents were not produced because they were not in FlatWorld's possession. *Id.* at ¶ 7.d. The remaining thirty-six documents were overlooked despite the reasonable and thorough search of paper and electronic documents conducted by FlatWorld to respond to Apple's discovery requests. *Id.* at ¶ 7.e. None of these documents were purposely withheld, concealed, or destroyed. *Id.* All of these documents are privileged and would have been entered on FlatWorld's privilege log had they been located. *Id.*

Hagens Berman also investigated Apple's allegations concerning certain documents appearing on the privilege log of Rembrandt IP but not the privilege log of FlatWorld. Seven of the emails or email threads[15] that appeared on Rembrandt's privilege log but not on FlatWorld's privilege log were simply not in the possession of FlatWorld. *Id.* at ¶ 7.f.; *McAleese Decl.* at ¶ 17. One document was, in fact, produced by FlatWorld. *Meyer Decl.* at ¶ 7.f. Two emails and one letter were inadvertently not listed on the privilege log because they were overlooked, not because they were purposely concealed, withheld, or destroyed. *Id.* These three documents would have been listed on FlatWorld's privilege log had they been located. *Id*

## IV.    CONCLUSION

For the foregoing reasons, FlatWorld respectfully requests that the Court deny Apple's motion to disqualify Hagens Berman as patent litigation counsel to FlatWorld in this case.

---

[15] Each email thread appearing on Rembrandt IP's privilege log was separated into its individual subsections, thus multiplying the number of entries on the log.

DATED:  June 11, 2013                    **HAGENS BERMAN SOBOL SHAPIRO LLP**


By: /s/ *Steve W. Berman*
      Steve W. Berman (*Pro Hac Vice*)
      Mark S. Carlson (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com

Jeff D. Friedman (173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  (510) 725-3000
Facsimile:   (510) 725-3001
jefff@hbsslaw.com

*Attorneys for Plaintiff*
*FlatWorld Interactives LLC*

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on June 11, 2013, I electronically filed the foregoing document using

3   the CM/ECF system which will send notification of such filing to the email addresses registered in

4   the CM/ECF system, as denoted on the Electronic Mail Notice List.  Any non-CM/ECF

5   participants will be served by electronic mail, facsimile and/or overnight delivery.

6

7                                                                /s/ Steve W. Berman
                                                      STEVE W. BERMAN
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28