Kenneth H. Bridges (SBN 243541)
kbridges@bridgesmav.com
Michael T. Pieja (SBN 250351)
mpieja@bridgesmav.com
Lawrence Lien (SBN 265851)
llien@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
Telephone: (650) 804-7800
Facsimile: (650) 852-9224

James A. Shimota (admitted *pro hac vice*)
jshimota@bridgesmav.com
Aaron Taggart (SBN 258287)
ataggart@bridgesmav.com
Adam R. Brausa (admitted *pro hac vice*)
abrausa@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
180 N LaSalle, Suite 2215
Chicago, IL 60601
Telephone: (312) 216-1620
Facsimile: (312) 216-1621

John J. Steele (SBN 122872)
john.steele@johnsteelelaw.com
JOHN STEELE, ATTORNEY AT LAW
2225 East Bayshore Road, Suite 200
Palo Alto, CA 94303
Tel: (650) 320-7662

ATTORNEYS FOR DEFENDANT
APPLE INC.

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FLATWORLD INTERACTIVES LLC<br><br>        Plaintiff,<br><br>v.<br><br>APPLE INC.<br><br>        Defendant. | Case No. 3:12-01956-JSW (EDL)<br><br><br>**APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISQUALIFY HAGENS BERMAN SOBOL SHAPIRO LLP OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS, AND FOR REFERRAL TO A SPECIAL MASTER**<br><br>**Noticed Hearing Date and Time:**<br>July 26, 2013, 9:00 am, Courtroom 11 |

**TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................................1

II.   ARGUMENT ................................................................................................................2

    A.   FlatWorld Admits Facts Sufficient to Require Disqualification Because Hagens Berman Improperly Acquired an Apple Privileged Communication from John McAleese And Used It Without Notifying Apple. ................................2

        1.   John McAleese's February 26 Call to Mark Carlson Disclosed the Substance of an Apple Communication Regarding Apple's Analysis of FlatWorld's Privilege Claims..................................................................2

        2.   The February 25 Email Between Apple's In-House Counsel, Jeff Risher, and Apple Outside Counsel, Scott Garner, Was Privileged, and Apple Will Provide It to the Court for *In Camera* Review. ...........................3

    B.   The Undisputed Facts Show that Mr. McAleese and Hagens Berman Were Co-counsel, Much as In-house and Outside Counsel Are.....................................6

        1.   California Law Does Not Require An "Intimate" Relationship Between Lawyers to Treat Them as Co-counsel; the Relationship Between Hagens Berman and John McAleese More Than Suffices.....................6

        2.   Jennifer McAleese's Statements Regarding the Contents of the Communications Between Herself and her Husband, and Between Herself and Hagens Berman, Impermissibly Use the Privilege As a Sword and a Shield, and Should be Stricken or Ignored.....................................8

        3.   FlatWorld's Assertions That John McAleese Did Not Misappropriate Other Apple Confidences Are Irrelevant..............................................9

    C.   FlatWorld Cannot Credibly Claim Prejudice if Hagens Berman is Disqualified. ....................................................................................................10

    D.   FlatWorld's Opposition Brief Raises Numerous Further Questions That Support Staying the Case and Referring These Issues to a Special Master. ...................10

        1.   The Declarations Submitted By FlatWorld Include Numerous Carefully Worded or Implausible Statements That Would Benefit From Discovery In Front of a Special Master.......................................11

        2.   FlatWorld's Opposition Raises Numerous Questions Regarding Hagens Berman's Discovery Conduct. .................................................13

III.  CONCLUSION............................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Advanced Messaging Techs., Inc. v. Easylink Servs. Int'l,*
2012 U.S. Dist. LEXIS 179698 (N.D. Cal. Dec. 19, 2012)................................. 8

*Canatella v. Krieg, Keller, Sloan, Reilly, & Roman LLP,*
2012 U.S. Dist. LEXIS 33606 (N.D. Cal. Mar. 13, 2013)........................... 7, 8

*Chevron Corp. v. Pennzoil Co.,*
974 F.2d 1156 (9th Cir. 1992) ....................................................... 10

*Costco Wholesale Co. v. Superior Ct. of Los Angeles,*
47 Cal. 4th 725 (Cal. 2009)........................................................... 4

*In Re County of Los Angeles,*
223 F.3d 990 (9th Cir. 2000) ......................................................... 7

*Miller v. Metzinger,*
154 Cal. Rptr. 22 (Cal. Ct. App. 1979) .......................................... 7

*Pound v. DeMera DeMera Cameron,*
135 Cal. App.4th 70 (Cal. App. 2005)........................................... 7

*Rico v. Mitsubishi Motors Corp.,*
171 P.3d 1092 (Cal. 2007) ............................................................ 3

*Tuttle v. Combined Ins. Co.,*
222 F.R.D. 424 (E.D. Cal. 2004) ................................................... 7

## SUMMARY OF ARGUMENT

The now-undisputed facts show that Hagens Berman should be disqualified as FlatWorld's counsel for two reasons.  First, Hagens Berman should be disqualified under *Rico v. Mitsubishi Motors Corp.*, 171 P.3d 1092, 1099 (Cal. 2007). FlatWorld's initial privilege log claimed the attorney-client privilege over many of its communications with John McAleese, a then-partner at Morgan Lewis, one of Apple's outside law firms.  When Apple's in-house counsel sent a confidential communication to Morgan Lewis about FlatWorld's log, this was forwarded to Mr. McAleese.  FlatWorld concedes that Mr. McAleese then called Hagens Berman and stated that "Apple had taken issue with" parts of FlatWorld's log.  The next day, Hagens Berman changed FlatWorld's log to remove most claims of privilege over FlatWorld's communications with Mr. McAleese.  The information Hagens Berman received from Mr. McAleese was privileged, and their decision to change FlatWorld's log after receiving it, without notifying Apple it had spoken to Mr. McAleese, violates *Rico* and warrants disqualification.

Second, the undisputed facts now show that even FlatWorld's own litigation counsel at Hagens Berman believed that Mr. McAleese was "either rendering legal advice or being asked to render legal advice" to FlatWorld about the patent-in-suit and claims against Apple for six years before this case was filed.  Mr. McAleese thus acted as *de facto* in-house counsel to FlatWorld, and in that role stands as co-counsel to Hagens Berman.  His admitted conflict in working against Apple at the time taints Hagens Berman, and warrants disqualification.

Regardless of whether the Court immediately disqualifies Hagens Berman, Apple's alternative relief – referral to a special master – should be granted.  FlatWorld does not even mention, or oppose, this relief.  And the declarations it submits in support of its opposition illustrate why this is appropriate: Jennifer McAleese' assertions that her husband has no interest in FlatWorld and gave her no advice relating to this case are contradicted by the evidence. FlatWorld's document production, and the privilege logs submitted by Hagens Berman, also still contain numerous irregularities relating to this motion, including missing and misdescribed documents relating to Mr. McAleese's involvement.  Referral to a special master is appropriate.

## I.  INTRODUCTION

FlatWorld's opposition underscores why the Court should grant the relief Apple seeks – disqualification of Hagens Berman and referral to a special master.  FlatWorld now either admits, or does not dispute, the following dispositive facts:

- Hagens Berman concluded that Mr. McAleese was, in dozens of emails with FlatWorld, "either rendering legal advice or being asked to render legal advice." (Meyer Decl. ¶ 11);

- FlatWorld sent Mr. McAleese more than 13 emails from Hagens Berman relating to this case, and Mr. McAleese responded at least twice (D.E. 147 at 5; Jennifer McAleese Decl. ¶ 8);

- On February 22, FlatWorld served its first privilege log in this matter (Ex. 9[1]);

- On February 25, Apple in-house counsel Jeff Risher communicated with Apple's outside counsel at Morgan Lewis about Mr. McAleese's appearance on that log (Risher Decl. ¶ 5);

- On February 26, after Mr. Risher's email was forwarded to him, Mr. McAleese called Hagens Berman to tell them that "Apple had taken issue with the appearance of [his] name on FlatWorld's privilege log" (Carlson Decl. ¶ 7); and

- On February 27, FlatWorld amended its privilege log to remove the claim that John McAleese was its attorney.  (Ex. 13.)

Regardless of what the Court makes of FlatWorld's claims about who said what to whom and what John McAleese did or did not do, these now-undisputed facts alone require disqualification.  ***First***, after talking with John McAleese on February 26, Hagens Berman knew or should have known that it had acquired the substance of a facially privileged communication from Apple.  Hagens Berman then did the opposite of what the law requires: they did not inform Apple and instead changed FlatWorld's positions on the exact issue being discussed.  ***Second***, because FlatWorld now effectively admits that John McAleese provided it with legal advice prior to this litigation and helped negotiate Hagens Berman's retainer, his relationship with Hagens Berman parallels that of in-house with outside counsel – a recognized co-counsel relationship.  Mr. McAleese's conflict that precludes him from working against Apple thus taints Hagens Berman.

---

[1] Exhibits 1 to 39 refer to the Exhibits to the Declaration of Michael Pieja, Docket No. 135, filed May 28, 2013.  Exhibits 40-51 refer to the Exhibits to the Declaration of Aaron Taggart, dated June 25, 2013, filed concurrently herewith.

FlatWorld's opposition also confirms that even now, FlatWorld has not provided the whole truth to the Court.  The man at the center of the controversy is John McAleese – a lawyer with twenty years of experience who knew full well his ethical duties to his then-client, Apple, and ignored them during six years of counseling FlatWorld against Apple.  But Mr. McAleese is conspicuously silent.  Instead, FlatWorld provides a carefully crafted declaration from his wife – who knew about her husband's conflict no later than 2012, but continued to provide him case pleadings, while concealing her actions from FlatWorld's trial counsel.  This declaration makes substantive assertions about conversations over which FlatWorld has asserted privilege.  It also contradicts the documentary record.  And FlatWorld's opposition identifies still more serious irregularities in Hagens Berman's handling of the evidence underlying this motion.  Appointment of a special master to get to the bottom of these issues – relief FlatWorld's opposition does not address – is even more appropriate now than when Apple's motion was filed.

## II. ARGUMENT

### A.  FlatWorld Admits Facts Sufficient to Require Disqualification Because Hagens Berman Improperly Acquired an Apple Privileged Communication from John McAleese And Used It Without Notifying Apple.

FlatWorld has all but admitted that – as Apple explained in its opening brief – Mr. McAleese passed Hagens Berman Apple's privileged information regarding Apple's concerns about FlatWorld's privilege log.  (*See* D.E. 134 at 7, 22.)  Hagens Berman's failure to notify Apple about this event, and its own use of this information, require disqualification.

#### 1.  John McAleese's February 26 Call to Mark Carlson Disclosed the Substance of an Apple Communication Regarding Apple's Analysis of FlatWorld's Privilege Claims.

The basic timeline is undisputed.  FlatWorld's served its privilege log, listing Mr. McAleese as providing it "attorney-client" advice, on Friday, February 22.  (Ex. 9.) Apple's in-house counsel sent its outside counsel at Morgan Lewis, Scott Garner, an email about these claims the next Monday.  (Risher Decl. ¶ 5.)  That email was sent to Mr. McAleese who, the same day, called Hagens Berman.

FlatWorld now admits that, during the ensuing conversation, Mr. McAleese told Hagens

Berman that his firm did work for Apple and that "Apple had taken issue with the appearance of [his] name" on the log.  (Carlson Decl. ¶ 7.)  This was more than sufficient to put Hagens Berman on notice that the information Mr. McAleese had provided was likely privileged.  Mr. McAleese told Mark Carlson what "***Apple*** had" said, indicating that the information came from Apple.  (*Id.* (emphasis added).)  He explained how Apple had "taken issue with" privilege assertions on FlatWorld's log – revealing Apple's thoughts on a legal issue in this case.  (*Id.*) And he revealed that he was an attorney whose firm did work from Apple, indicating that he was almost certainly disclosing an attorney-client communication from Apple to its lawyers at Morgan Lewis.  (*Id.*)

Hagens Berman's duty at this point was clear: when a lawyer receives what might plausibly be his adversary's privileged information, he must "refrain from examining the materials any more closely than is necessary to ascertain if the materials are privileged, and shall immediately notify the sender."  *Rico v. Mitsubishi Motors Corp.*, 171 P.3d 1092, 1099 (Cal. 2007).  Hagens Berman did the opposite.  They made no effort to determine if Mr. McAleese's statement was privileged or authorized.  They undisputedly never notified Apple.  After Mr. McAleese's call, they changed FlatWorld's positions asserted on its privilege log – saying nothing as to why.  And they continued to discuss the issue with Mr. McAleese, when they "returned [Mr. McAleese's] call" on February 28.  (Carlson Decl. ¶ 11.)

By the time Mark Carlson spoke with John McAleese on February 26, at least one Hagens Berman attorney had concluded that Mr. McAleese was a lawyer rendering legal advice on behalf of FlatWorld.  (Meyer Decl. ¶ 11.)  Hagens Berman could not reasonably have believed that an individual in that position was authorized to reveal information that he had acquired via an attorney-client communication from FlatWorld's adversary, Apple, to its counsel, Morgan Lewis.  Hagens did exactly what *Rico* forbids, and should be disqualified.

### 2. The February 25 Email Between Apple's In-House Counsel, Jeff Risher, and Apple Outside Counsel, Scott Garner, Was Privileged, and Apple Will Provide It to the Court for *In Camera* Review.

FlatWorld's claim that the February 25 email from Jeff Risher was not privileged is

wrong.  (*E.g.*, D.E. 147 at 20-23.)  "[A] communication in the course of an attorney-client relationship" is "presumed to have been made in confidence" and is thus presumptively privileged.  *Costco Wholesale Co. v. Superior Ct. of Los Angeles*, 47 Cal. 4th 725, 733 (Cal. 2009).  Here, it is undisputed that the February 25 email was between Mr. Risher, an Apple in-house attorney, and Scott Garner, an attorney at Morgan Lewis, one of Apple's outside counsel, who personally represented Apple.  (Risher Decl. ¶ 5.)  Mr. Risher has confirmed that the communication related to the FlatWorld litigation and FlatWorld's privilege claims and that it related to the merits of a privilege claim asserted by FlatWorld – a topic that inherently implicates legal advice and judgment.  (*Id.*)  The Risher-to-Garner email is thus privileged. Moreover, Mr. Risher's email reflected the mental impressions of litigation counsel in this case and was provided to Apple's counsel at Morgan Lewis to seek their assistance, and is thus protected under the work product doctrine.  To dispel any doubt about the privileged status of the February 25 email, Apple invited the Court to review the document *in camera*, (*see* D.E. 134 at 15, n. 5), and today filed a motion for leave to submit the document for such review.

FlatWorld is also incorrect in asserting that later discussions between the parties' litigation counsel affect whether the Risher-to-Garner email was privileged.  (D.E. 147 at 21.) Apple's litigation counsel raised the issue of Mr. McAleese's status only ***after***, and in response to, Hagens Berman's changes to FlatWorld's log.  FlatWorld cannot use events that occurred as a direct result of Hagens Berman's improper acquisition of Apple's privileged information to shield it from the consequences of that conduct.  Moreover, Apple's questioning of FlatWorld regarding Mr. McAleese's appearance on the privilege log did not reveal the substance of Mr. Risher's February 25 communication – they revealed nothing about what Apple thought, knew, or suspected ***prior to*** Mr McAleese's disclosure.  Many privileged attorney-client communications relate to advice regarding later interactions with the opposing party.  For instance, an email from Apple to its counsel about questions for a trial examination is undeniably privileged, even though Apple's counsel later "openly" asks the questions in court.

Finally, FlatWorld cannot pass off Mr. McAleese's transmittal of Apple's confidences to

Hagens Berman as harmless.  At a minimum, Apple lost irretrievably the opportunity to take depositions and receive open, unscripted responses regarding John McAleese's role and actions with regard to FlatWorld and Hagens Berman.  Instead, FlatWorld's counsel have had months to evaluate the issue and their clients have produced carefully-worded, conclusory declarations, no doubt guided by that analysis.  Moreover, FlatWorld's response to Mr. McAleese's conversation with Hagens Berman has also impeded Apple's preparation of its defenses, including its unclean hands defense, for instance by attempting to whitewash FlatWorld's initial admission that the case against Apple was aided by the work of one of Apple's own attorneys.[2]

Indeed, this Court ordered disqualification on similar facts in *Terraphase Eng'g Inc. et al v. Arcadis, U.S., Inc.*, which involved a plaintiff Terraphase, whose founders all previously worked for the defendant, Arcadis.  Case No. C:10-4647-JSW (N.D. Cal. Dec. 17, 2010, Hearing Tr.) (Ex. 40.)   Terraphase's outside counsel accidentally sent certain emails to his clients' old Arcadis email addresses, revealing, among other things, the date of Terraphase's incorporation. (*Id.* at 7-8, 10-14.)  Unbeknownst to Terraphase, these emails were automatically forwarded to Arcadis' in-house counsel, who passed the incorporation date to outside counsel for use in Arcadis' pleadings.  (*Id.*)  Although the information would have been available in discovery, the Court disqualified Terraphase's in-house and outside counsel.  (*Id.* at 7, 39-41.)  The situation here is similar to *Terraphase*, but the violations more egregious.  While the outside counsel in *Terraphase* may have been unaware of the source of their information, (*id.* at 5.)  Hagens Berman has admitted it knew the information from Mr. McAleese came from Apple.  In addition, the information at issue here – the recognition by Apple of a strategic issue in the case – is far

---

[2] In a declaration, FlatWorld's counsel also suggests that FlatWorld's amendments to its log were prompted by Mr. McAleese's statement "that he did not regard himself as FlatWorld's attorney," rather than by learning of Apple's concerns.  (Carlson Decl. ¶ 19.)  This argument is not presented in FlatWorld's brief and should be deemed waived.  Moreover, because Mr. McAleese's call to Hagens Berman was prompted by his learning of Apple's concerns, all the information obtained from Mr. McAleese was tainted by the Apple confidence that prodded Mr. McAleese into motion.  Finally, Mr. Carlson's statement is entitled to little weight, given the near-impossibility of identifying which specific words prompted FlatWorld's response.

more important than the date of incorporation that was revealed in *Terraphase*.  Disqualification is more than warranted.

**B.   The Undisputed Facts Show that Mr. McAleese and Hagens Berman Were Co-counsel, Much as In-house and Outside Counsel Are.**

With respect to Mr. McAleese's role as Hagens Berman's effective co-counsel, FlatWorld's brief spends much time disputing a claim Apple does not make: that Mr. McAleese acted as a traditional co-counsel to Hagens Berman, like two concurrently engaged outside firms. The undisputed facts reveal that Mr. McAleese was more akin to an in-house counsel who is co-counsel to his company's outside lawyers, and his conflict now taints Hagens Berman.

**1.   California Law Does Not Require An "Intimate" Relationship Between Lawyers to Treat Them as Co-counsel; the Relationship Between Hagens Berman and John McAleese More Than Suffices.**

As an initial matter, FlatWorld essentially admits that Mr. McAleese acted as its legal counsel.  Jennifer McAleese concedes that FlatWorld consulted her husband to "request[] his assistance on certain issues relating to the business or affairs of FlatWorld."  (McAleese Decl. ¶ 5.)  FlatWorld's privilege log shows that these "request[s]" related to legal issues such as non-disclosure agreements and were often for the purpose of "litigation."  (Ex. 36.)  Indeed, the Hagens Berman attorney who reviewed FlatWorld's communications with Mr. McAleese concluded that Mr. McAleese was "either rendering legal advice or being asked to render legal advice in these documents." (Meyer Decl. ¶ 11.)

Set against this, FlatWorld offers only a hearsay statement from its attorney Mark Carlson that John McAleese told him that "he did not regard himself as FlatWorld's attorney." (D.E. 147 at 6; Carlson Decl. ¶¶ 7, 9.)  The fact that Mr. McAleese did not submit a declaration of his own to make this claim casts grave doubt on its credibility.  Moreover, what Mr. McAleese "regarded" his role to be is beside the point.  A lawyer's subjective intent is irrelevant to whether an attorney-client relationship has been formed.  *See Tuttle v. Combined Ins. Co.*, 222 F.R.D. 424, 430 (E.D. Cal. 2004).  Rather, the facts and circumstances regarding the parties' interactions govern, and compel the conclusion that Mr. McAleese acted as FlatWorld's attorney. *See Miller v. Metzinger*, 154 Cal. Rptr. 22, 27-28 (Cal. Ct. App. 1979).

Beyond this, the crux of FlatWorld's argument on co-counsel disqualification is a series of self-serving declarations from Hagens Berman asserting that they had few direct interactions with Mr. McAleese and did not "consider" or "regard" him as their co-counsel. (*E.g.*, Carlson Decl. ¶ 3.) This allegedly supports FlatWorld's argument that "disqualification of co-counsel requires proof of an intimate working relationship." (D.E. 147 at 10.) That premise is wrong as a matter of law. Attorney disqualification is an issue of California state law. *In Re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). But FlatWorld cites no California state law – likely because this law is to the contrary. For instance, the Court in *Pound v. DeMera DeMera Cameron* imputed disqualification to co-counsel even where they met only "a few times" with the conflicted attorney. *Pound*, 135 Cal. App.4th 70, 73-75 (Cal. App. 2005).

Indeed, the case that FlatWorld relies on for the "intimate working relationship" test, *Canatella v. Krieg, Keller, Sloan, Reilly, & Roman LLP*, uses that language only in describing a 1977 Second Circuit case. 2012 U.S. Dist. LEXIS 33606 at *4-5 (N.D. Cal. Mar. 13, 2013). The *Canatella* Court actually noted that "[t]he particular facts of each case must be considered in order to determine whether disqualification is warranted." *Id.* at *5. It considered three factors – the extent of contact between counsel and the client, evidence of sharing of the adverse party's confidential information, and evidence that co-counsel was chosen because of its affiliation with the opponent. *Id.* at *5-7. Of these factors, two – the sharing of Apple confidences between John McAleese and Hagens Berman, and Mr. McAleese's extensive involvement with FlatWorld – strongly support disqualification. None requires an "intimate" relationship between co-counsel.

In any case, the relationship between Mr. McAleese and Hagens Berman is similar to a co-counsel relationship that **has** been found to be sufficiently close to warrant disqualification: that of in-house with outside counsel. *See Advanced Messaging Techs.*, *Inc. v. Easylink Servs. Int'l*, 2012 U.S. Dist. LEXIS 179698, *25-27 (N.D. Cal. Dec. 19, 2012). Apple's opening brief detailed dozens of emails between Mr. McAleese and FlatWorld or its other attorneys relating to "litigation" or other topics that are common parts of in-house counsel's jobs – reviewing

operating or non-disclosure agreements, documents relating to patent prosecution and enforcement, and the like.  (D.E. 134 at 9-11.)  Even the events that FlatWorld claims as exculpatory support this view of Mr. McAleese's role.  FlatWorld admits, for instance, that when Hagens Berman was being retained, Mark Carlson "received a telephone call from John McAleese . . . to discuss certain disputed terms in the engagement agreement."  (*See* Carlson Decl. ¶ 3.)  FlatWorld claims that this shows Mr. McAleese "negotiat[ed] on the other side of the engagement agreement."   But ***all*** in-house counsel "negotiate[e] on the other side of the engagement agreement" with outside counsel.  They are no less co-counsel with their outside lawyers because they drove a hard bargain in hiring them.

Similarly, FlatWorld admitted that once litigation began, Mr. McAleese was "forwarded 26 email strings relating to this case, . . . including thirteen email strings between [Mrs. McAleese] and Hagens Berman."  (D.E. 147 at 5.)  Mr. McAleese responded in writing at least twice.  (D.E. 147 at 5.)  He also had at least one – and possibly more – oral communication with FlatWorld regarding the progress of the Milekic deposition, as evidenced by his ability to "unexpectedly approach[]" FlatWorld's counsel at the restaurant they had gone to after the deposition.  (See Carlson Decl. ¶ 5.)  This role – being copied on certain pleadings, but having limited day-to-day interaction with the case after filing – is quite normal for in-house counsel.

Finally, Mr. McAleese's handling of Jeff Risher's February 25 email is telling.  After hearing that his name appeared on FlatWorld's privilege log, Mr. McAleese did not ask his wife (or FlatWorld) to raise the issue with Hagens Berman, as one would expect if he were acting as Jennifer McAleese's spouse.  He didn't ask Morgan Lewis to do so, as one would expect if he were acting as a Morgan Lewis partner.  And he certainly didn't ask Apple's litigation counsel to do so, as one would expect if he were acting as Apple's fiduciary.  Rather, he directly asked Hagens Berman – which makes sense only if the two were acting as co-counsel.

## 2.   Jennifer McAleese's Statements Regarding the Contents of the Communications Between Herself and her Husband, and Between Herself and Hagens Berman, Impermissibly Use the Privilege As a Sword and a Shield, and Should be Stricken or Ignored.

As described in Apple's opening brief, Mr. McAleese's history of involvement with FlatWorld, and his wife's role as FlatWorld's principal in this suit, creates an impermissible risk of a "pipeline" of advice flowing from John McAleese, through his wife, to Hagens Berman. (D.E. 134 at 13-14.)   FlatWorld's response relies on an assertion that "[n]either Jennifer McAleese nor Dr. Milekic ever discussed FlatWorld litigation advice, tactics, and strategy with Mr. McAleese, nor did they ever transmit any information, advice, comments, or instructions from Mr. McAleese to any Hagens attorney."  (D.E. 147 at 5; McAleese Decl. ¶ 9, Berman Decl. ¶¶ 2-3, Carlson Decl. ¶ 18, Meyer Decl. ¶¶ 8-9.)

These statements, however, should be stricken or disregarded.[3]  FlatWorld has claimed privilege over all communications between John and Jennifer McAleese and between Jennifer McAleese and Hagens Berman.  It has thus used the privileges as a shield, barring Apple from exploring the contents of these communications.  It is black-letter law that FlatWorld may not then also use the privilege as a sword, by "making a claim which in fairness requires disclosure of the protected communications."  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992).  Here, FlatWorld's claim that Mr. McAleese's communications with his wife never contained advice regarding this lawsuit, despite her forwards of litigation pleadings to Mr. McAleese, is "a claim which in fairness" cannot be made because FlatWorld's privilege assertions insulate this claim from all testing.

### 3.    FlatWorld's Assertions That John McAleese Did Not Misappropriate Other Apple Confidences Are Irrelevant.

Although FlatWorld asserts that Mr. McAleese was "never engaged [] to work on any matters for Apple" and that he "never attempted to access Apple's confidential information on MLB's network," that is irrelevant.  (D.E. 147 at 8.)  First, FlatWorld has offered no competent evidence to support its assertion about what Mr. McAleese did or did not know or access.  Moreover, even if FlatWorld were correct that disqualification of co-counsel requires "an

---

[3]  While Apple believes FlatWorld has clearly opted to claim the privilege over these communications, and should be held to that choice, in the event the Court disagrees, Apple submits that the Court should find the privilege over these communications has been waived.

attorney with actual confidential information [who] affiliates with co-counsel adverse to the attorney's [] client," that standard is met here, because Mr. McAleese admittedly possessed Jeff Risher's February 25 email (which he promptly disclosed to Hagens Berman).  (D.E. 147 at 17.)  Whether Mr. McAleese did or did not misappropriate *other* Apple confidences is irrelevant.

### C.   FlatWorld Cannot Credibly Claim Prejudice if Hagens Berman is Disqualified.

FlatWorld's claim that it would be "severely prejudiced" if Hagens Berman were disqualified is dubious at best.  First, any prejudice to FlatWorld would be entirely self-inflicted.  It was FlatWorld's decision to "request[] his [John McAleese's] assistance on certain issues relating to the business or affairs of FlatWorld."  (McAleese Decl. ¶ 5.)  It was Mr. McAleese's choice – despite being an experienced lawyer and knowing his firm represented Apple – to work secretly for FlatWorld against Apple for six years.  And, though it admittedly knew about Mr. McAleese's Apple conflict in March 2012 and must have known the import of such a conflict, it was FlatWorld who chose to forge ahead while withholding that information from its outside litigation counsel.  (Ex. 41, 42, 43; Carlson Decl. ¶ 7.)

Moreover, FlatWorld's opposition confuses prejudice to FlatWorld with prejudice to Hagens Berman.  Even if "Hagens Berman has invested nearly 3,000 attorney hours in the FlatWorld case, and hundreds of thousands of dollars in expert witness time," FlatWorld does not allege that *it* has paid a single cent.  Likewise, while it complains that "[t]he case management order would have to be revised and due dates continued," FlatWorld can hardly be heard to complain of delay, given that it waited five years from the time it allegedly put Apple on notice of the patent to sue.  (D.E. 147 at 23; D.E. 1 at ¶ 20.)  Finally, FlatWorld cannot credibly argue that it could not readily find replacement counsel – it touted that other "legal counsel" have advised it that it "ha[s] an excellent position against Apple."  (Ex. 22 at MLB_A0000013.)

### D.   FlatWorld's Opposition Brief Raises Numerous Further Questions That Support Staying the Case and Referring These Issues to a Special Master.

FlatWorld's opposition illustrates why Apple's request for referral to a special master should be granted, whether the Court immediately disqualifies Hagens Berman or not.  First,

FlatWorld has requested an *in camera* review, but offered up only a limited set of emails between Jennifer and John McAleese.  (D.E. 145.)  But given FlatWorld's decision in its opposition to affirmatively rely on the content of these communications, while continuing to claim privilege to shield them from Apple, it is an open issue whether these communications are privileged, whether any privilege has been waived, or whether they should be reviewed *in camera* and for what purpose.  And anyone conducting an *in camera* review should have access to all the relevant communications, including those discussing Mr. McAleese's assistance to FlatWorld in planning this litigation during the years **before** Hagens Berman was hired, and the impact of that assistance on FlatWorld's later decisions and interactions with Hagens Berman – a total of over 100 emails.  Apple submits that this is ideally suited for a special master.

Beyond that, FlatWorld's opposition raises more questions than it answers – both with respect to the declarations it provides, whose careful, narrow wording, lack of personal knowledge, and tension with the documentary evidence warrant very close scrutiny, and with respect to Apple's concerns about discovery irregularities. The sheer number and complexity of open issues counsel in favor of a stay and referral to a special master.

### 1.   The Declarations Submitted By FlatWorld Include Numerous Carefully Worded or Implausible Statements That Would Benefit From Discovery In Front of a Special Master.

The declarations submitted by FlatWorld in support of its opposition raise (or leave unanswered) numerous relevant credibility and other questions that are well-suited to resolution before a special master.[4]  First, FlatWorld's argument that Jennifer McAleese could not have provided Hagens Berman advice influenced by her husband depends on Mrs. McAleese's credibility.  It also depends on her assertion that she offered Hagens Berman no advice at all and "ha[s] never made any substantive decisions, directions, or suggestions regarding strategy, tactics, or management of this case."  (McAleese Decl. ¶ 9.)  But this statement is difficult to

---

[4] Apple submits that FlatWorld's expert declarations are opinions on an issue of law, and thus should be disregarded. In any case, the declarations do not address California law and are based on a limited set of facts provided by Hagens Berman – the extent and accuracy of which Apple should be permitted to explore in discovery before a special master.

1
2
3
4
5
6
7
8
9
10
11

square with the record.  For example, Hagens Berman attorney Mark Carlson states that John McAleese wanted to produce certain emails between himself and his wife, but FlatWorld refused, supposedly because production would "waive valid [spousal] privilege claims that did not belong solely to Mr. McAleese."  (D.E. 147 at 6.)  The only person who could assert a spousal privilege in the face of her husband's request would be Jennifer McAleese.  The decision to claim that privilege – a matter of litigation strategy – must have been made by or in consultation with her.  In addition, Mr. Carlson now states that he had a "conference with Jennifer McAleese . . . regarding production of the privileged documents to Apple subject to a non-waiver agreement" – another example of Mrs. McAleese's apparent involvement in litigation decisions.  (Carlson Decl. ¶ 11.)  Similarly, FlatWorld told Apple that it was "awaiting a response from its client" on several occasions during this case.  (Ex. 50.)

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Second, FlatWorld's attempts to convince the Court not to apply *Pound* and presume the transmission of further Apple confidences from John McAleese to Hagens Berman rest heavily on questionable inferences that John McAleese could not have accessed Apple confidential information.  Since Mr. McAleese has absented himself, FlatWorld is left with Jennifer McAleese, who declared that to the "best of [her] knowledge, John has never accessed or received any confidential Apple information."  (McAleese Decl. ¶ 11.)  No basis is offered, or on this record exists, for that statement.  Indeed, if Ms. McAleese has any basis at all, it likely flows from a conversation with her husband, the undisclosed timing and contents of which are directly relevant to this motion.  Similarly, FlatWorld claims that Morgan Lewis' general counsel, Michael Ossip, testified during his deposition "that Mr. McAleese neither sought nor received any Apple information from [Morgan Lewis'] patent counsel."  (D.E. 147 at 8.)  But Mr. Ossip said no such thing.  Indeed, Mr. Ossip specifically testified that he did ***not*** interview Apple timekeepers to determine if they had spoken with Mr. McAleese regarding Apple confidences, including the one Morgan Lewis attorney, Dan Golub, with whom Mr. McAleese admittedly discussed potential enforcement options.  (Ex. 51, Ossip Tr. 130:20-131:7.)

27
28

Third, relying on Jennifer McAleese's declaration, FlatWorld declares that "John's only

relationship with FlatWorld is through his marriage" to Jennifer McAleese.  (D.E. 147 at 4; McAleese Decl. ¶ 4.)  This statement implies that John McAleese had no interest in FlatWorld of his own.  Yet Mr. McAleese himself admitted to his Morgan Lewis partners that he himself had a financial interest in FlatWorld, stating that "we [my wife and I] contributed capital" to it.  (Ex. 16.)  Consistent with this, other emails show Jennifer requesting that the company postpone an expense until "the first quarter of 2012 . . . John should be seeing an inflow of cash then."  (Ex. 44.)  Similarly, on another occasion, FlatWorld's other principal, Dr. Milekic, urged John's involvement.  (*See* Ex. 45.)  While Mrs. McAleese states carefully that she did not request or receive advice from her husband "about this litigation" and did not discuss "litigation tactics or strategy for this case" with her husband, the limitations "about this litigation" and "for this case" beg the question of exactly what Mrs. McAleese did that falls outside these carefully chosen qualifiers.  (McAleese Decl. ¶ 9.)

Even more striking, FlatWorld now admits that Mr. McAleese has an attorney-client relationship with their trial counsel.  Hagens Berman attorney Steve Berman admitted that he "communicated with John McAleese . . . on April 4, 2013, regarding an employment law issue and [] also exchanged emails."  (Berman Decl. ¶ 3.)  Hagens Berman later stated to Apple that these communications were "privileged."  (Ex. 46.)  This strongly suggests some sort of association between John McAleese and FlatWorld: why would someone who has no affiliation with FlatWorld would call FlatWorld's lead trial counsel – whose practice does not appear to relate to employment law – out of the blue to discuss an "employment law" issue, much less enter an attorney-client relationship with them?[5]

### 2. FlatWorld's Opposition Raises Numerous Questions Regarding Hagens Berman's Discovery Conduct.

Although FlatWorld indulges in considerable rhetoric about the discovery issues Apple

---

[5] Apple is now also faced with the potential existence not only of a pipeline from John McAleese though his wife to Hagens Berman, but of direct communication from John McAleese to Hagens Berman, cloaked under a privilege claim.  This exacerbates the risk of inappropriate information transfer, and heightens the need for immediate and detailed investigation or supervision.

raised in its motion, its opposition only raises more questions regarding Hagens Berman's discovery conduct.  ***First***, the issue of document PRIV0473 is wholly unresolved.  This document was initially described as "discussing legal advice (of John McAleese)."  As noted in Apple's opening brief, however, Hagens Berman later removed the words "of John McAleese" without replacement or explanation, in an apparent attempt to obscure Mr. McAleese's relation to FlatWorld.  FlatWorld's opposition makes no effort to explain this.

***Second***, although FlatWorld derides Apple's concerns about document destruction as "frivolous" and "offensive," (D.E. 147 at 24; Berman Decl. ¶ 8), Jennifer McAleese has admitted that destruction of documents did occur.  In particular, she admitted that, between 2006 and 2009, she used two email accounts – a Comcast account and a FlatWorld account, to conduct business relating to FlatWorld.  (McAleese Decl. ¶¶ 15, 17.) Mrs. McAleese admits that these accounts were deleted in November 2008 and July 2009.  (*Id.*)  FlatWorld's privilege log contains over 20 documents dated before November 2008 that list "litigation" as all or part of their purpose.  (Ex. 48.)  FlatWorld thus had contemplated litigation at the time the documents in Ms. McAleese's two email accounts were destroyed.[6]  Mrs. McAleese's vague statement that the destroyed emails were not "material to the claims and defenses at issue" is inadequate, at least without further discovery into what "claims and defenses" she believes to be "at issue."[7]

***Third***, Hagens Berman's attempt to explain the irregularities in its production of emails between FlatWorld and John McAleese only raises additional concerns.  FlatWorld presents a declaration from Hagens Berman purporting to show that "[t]welve of the emails . . . listed on the privilege logs of John McAleese or [Morgan Lewis] but allegedly not on FlatWorld's privilege

---

[6] Ms. McAleese's statement that her FlatWorld account was discontinued "after Dr. Milekic . . . decided that he no longer wished to continue FlatWorld's consulting business."  (McAleese Decl. ¶ 17.)  This reference to Dr. Milekic's business raises the question of whether Dr. Milekic had a similar FlatWorld account that was, like Ms. McAleese's, not preserved.

[7] FlatWorld's revelation that these documents have been lost is particularly troubling given that FlatWorld previously represented to the Court that, with the exception of certain of Dr. Milekic's documents that were destroyed in a flood, it has "preserved documents and electronically-stored information relating to the issues" of this case.  (D.E. 30 at 5.)

log are listed on FlatWorld's privilege log." (Meyer Decl. ¶ 7c.) Far from it. For example, this declaration asserts that the document labeled JMPriv041 on Mr. McAleese's privilege log is the same as the document labeled PRIV0215D on FlatWorld's. (*Id.*) Mr. McAleese's privilege log describes this document as an email from Jennifer McAleese to six recipients, including John McAleese. (Ex. 5 at 4.) The log Hagens Berman prepared for FlatWorld includes the same recipients, ***except Mr. McAleese,*** whose name is deleted, obscuring the key fact for this motion – that the email was forwarded to Mr. McAleese. (Ex. 47 at 1; Ex. 49 at 36.)

Hagens Berman's declaration also claims to find at least five other missing email "strings" from Mr. McAleese's privilege log on FlatWorld's own log. (Meyer Decl. ¶7c.) In each of these "strings," however, Mr. McAleese's log shows the string ending with a forward from Jennifer to John. But the Hagens Berman-prepared log describes the string ending with a forward from Jennifer ***to herself***. For instance, FlatWorld claims that its PRIV0386 corresponds to the document on Mr. McAleese's log at JMPriv052, but the Hagens-supplied description (in addition to having a different date and description) again omits any reference to Mr. McAleese receiving the email. (Ex. 5 at 6; Ex. 47 at 2; Ex. 49 at 96-97.)

***Fourth***, FlatWorld admits that Hagens Berman "overlooked" and did not produce or log almost 40 separate documents relating to communications between itself and John McAleese that appeared on third parties' privilege logs. (Meyer Decl. ¶¶ 7e, 7f.) It would be a remarkable coincidence if the only John McAleese-related documents that Hagens Berman has "overlooked" are the exact 40 that showed up on third-party privilege logs, and no others.

These issues presents fact-intensive discovery questions bearing directly on Hagens Berman's disqualification – issues that are eminently suited for referral to a special master.

## III. CONCLUSION

For the foregoing reasons, and the reasons set forth in Apple's opening brief, Hagens Berman should be disqualified and the case should be stayed and referred to a special master.

Dated: June 25, 2013

 _/s/ Michael T. Pieja_____
Kenneth H. Bridges (SBN 243541)
kbridges@bridgesmav.com
Michael T. Pieja (SBN 250351)
mpieja@bridgesmav.com
Lawrence Lien (SBN 265851)
llien@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
Telephone:  (650) 804-7800
Facsimile: (650) 852-9224

James A. Shimota (admitted *pro hac vice*)
jshimota@bridgesmav.com
Aaron Taggart (SBN 258287)
ataggart@bridgesmav.com
Adam R. Brausa (admitted *pro hac vice*)
abrausa@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
180 N LaSalle, Suite 2215
Chicago, IL 60601
Telephone:  (312) 216-1620
Facsimile: (312) 216-1621

John J. Steele (SBN 122872)
john.steele@johnsteelelaw.com
JOHN STEELE, ATTORNEY AT LAW
2225 East Bayshore Road, Suite 200
Palo Alto, CA 94303
Tel: (650) 320-7662

Attorneys for Defendant Apple Inc.

**PROOF OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 25, 2013, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.1(h). Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

/s/ Michael T. Pieja

Michael T. Pieja