Kenneth H. Bridges (SBN 243541)
kbridges@bridgesmav.com
Michael T. Pieja (SBN 250351)
mpieja@bridgesmav.com
Lawrence Lien (SBN 265851)
llien@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
Telephone: (650) 804-7800
Facsimile: (650) 852-9224

James Shimota (Admitted *pro hac vice*)
jshimota@bridgesmav.com
Aaron Taggart (SBN 258287)
ataggart@bridgesmav.com
Adam R. Brausa (Admitted *pro hac vice*)
abrausa@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
180 N LaSalle, Suite 2215
Chicago, IL 60601
Telephone: (312) 216-1620
Facsimile: (312) 216-1621

John Steele (SBN 122872)
john.steele@johnsteelelaw.com
JOHN STEELE, ATTORNEYS AT LAW
2225 E. Bayshore Rd., Suite 200
Palo Alto, CA 94303
Telephone: (650) 320-7662

ATTORNEYS FOR DEFENDANT
APPLE INC.

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FLATWORLD INTERACTIVES LLC<br><br>Plaintiff,<br>v.<br><br>APPLE INC.<br><br>Defendant. | Case No. 3:12-01956-WHO (EDL)<br><br>**APPLE INC.'S AMENDED RESPONSIVE CLAIM CONSTRUCTION BRIEF** |

1

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. LEGAL BACKGROUND .................................................................................1

III. DISPUTED CLAIM TERMS ...........................................................................3

    A. The Claims and Specification of the '318 Patent Use the Term "Image" to Refer to the Object That Is Manipulated in Response to User Inputs. ................3

    B. The Plain Meaning of "Continually Moved" and a "Continuing Touch," As Evidenced by the File History and Dictionary Definitions, Requires a Touch That is Moving or Existing Without Interruption. ................................................6

    C. The File History And Specification Confirm That a Threshold Velocity is a Level or Value of Velocity Sufficient to Cause the Dragged/Moved Image to Be Removed from the Display..........................................................................8

        1. The Claims, Specification, and File History Confirm that A Motion that Exceeds the Velocity Threshold Is Sufficient to Cause an Image to Be Removed Without Considering Other "Conditions."........................9

        2. FlatWorld's Construction Improperly Rewrites The Term "Velocity Threshold" as Neither a Threshold Nor Relating to Velocity, and Is Contrary to the Specification, File History, and Inventor Testimony...................11

    D. The File History Confirms That The Term "Representative" Should be Given its Plain and Ordinary Meaning: "A Portrayal or Symbol." .............................15

    E. Apple's Proposed Construction For the "When" Clauses Should be Adopted Because It Tracks the Specific Meaning Given to These Phrases in the File History to Overcome Repeated Prior Art Rejections.............................................19

    F. As Used in the '318 Patent "Manipulating" Requires the Operations of Selecting, Moving, Removing, and Modifying. ...............................................23

    G. The Terms "Image is Being Dragged," And "Image Was Dragged" Mean "The Touched Point is or Was Moved Within a Selected Image, Causing the Image to Move with the Touched Point."..........................................................25

IV. CONCLUSION ...............................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Accent Packaging Inc. v. Leggett & Platt, Inc*
    707 F.3d. 1318 (Fed. Cir. 2013) ................................................................................. 13, 14

*Bicon, Inc. v. Straumann Co.*
    441 F.3d 945 (Fed. Cir. 2006) ............................................................................................ 24

*Deere & Co. v. Bush Hog, LLC*
    703 F.3d 1349 (Fed. Cir. 2012) ..................................................................................... 2, 24

*eBay Inc. v. Kelora Sys., LLC*
    2012 U.S. Dist. LEXIS 70636 (N.D. Cal. May 21, 2012) ..................................................... 2

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l*
    214 F.3d 1302 (Fed. Cir. 2000) ......................................................................................... 13

*Genentech, Inc. v. Chiron Corp.*
    112 F.3d 495 (Fed. Cir. 1997) ........................................................................................... 15

*Graham v. John Deere Co.*
    383 U.S. 1 (1966) .................................................................................................................. 2

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*
    381 F.3d 1111 (Fed. Cir. 2004) ....................................................................................... 1, 3

*Markman v. Westview*
    52 F.3d 967 (Fed. Cir. 1995) ........................................................................................... 1, 2

*Merck & Co. v. Teva Pharms*
    395 F.3d 1364 (Fed. Cir. 2005) ........................................................................................... 7

*Microsoft Corp. v. Multi-Tech Sys.*
    357 F.3d 1340 (Fed. Cir. 2004) ..................................................................................... 4, 24

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.*
    415 F.3d 1335 (Fed. Cir. 2005) ......................................................................................... 12

*Negotiated Data Solutions, Inc. v. Apple, Inc.*
    2012 U.S. Dist. LEXIS 176841 (E.D. Tex. Dec. 13, 2012)..................................................... 2

*Omega Eng'g, Inc. v. Raytek Corp.*
    334 F.3d 1314 (Fed. Cir. 2003) ........................................................................................... 2

*Pagemelding, Inc. v. ESPN, Inc.*
    2013 U.S. Dist. LEXIS 31048 (N.D. Cal. March 5, 2013).................................................... 2

*Phillips v. AWH Corp.*
   415 F.3d 1303 (Fed. Cir. 2005) ........................................................................ passim

*Toro Co. v. White Consol. Indus.*
   199 F.3d 1295 (Fed.  Cir. 1999) ............................................................................... 23

*Vitronics Corp. v. Conceptronic*
   90 F.3d 1576 (Fed. Cir. 1996) ................................................................................... 21

*Wavetronix v. EIS Electronic Integrated Sys.*
   573 F.3d 1343 (Fed. Cir. 2009) ................................................................................. 12

**STATUTES**

35 U.S.C. § 112 ................................................................................................................ 1

## I.   INTRODUCTION

The story of the '318 patent is the familiar tale of a narrow patent in a crowded field.  As the Examiner noted during prosecution, the field the patent entered – using gestures to interact with a computer – was hardly new at the time of FlatWorld's alleged invention.  Even the specific gesture FlatWorld claimed – dragging an image to remove it from a screen – was well known.  Indeed, the Examiner identified prior art including a touchscreen-based tablet that displayed the pages of a book and used swiping gestures to remove images of these pages from the screen.  Faced with this, FlatWorld eked out a small niche for its patent by representing to the Patent Office that its claims applied only in narrow circumstances: where dragging an image faster than a particular velocity causes it to vanish without leaving ***any*** visual representative of that image – even a line – on the screen.

Apple's constructions are faithful to the language of the claims and the key intrinsic evidence, particularly the prosecution history. FlatWorld's proposed constructions, in contrast, strain to stretch its narrow claims into the supposedly ground-breaking invention described in its brief, and to contort them to read on Apple's products.  The strain shows: for many terms, FlatWorld has had to dramatically change the positions it has previously presented to this Court in an effort to dance along the fine line between invalidity and non-infringement.  In the end, the result of FlatWorld's *Markman* acrobatics is inconsistent with the language of the claims, the file history, and even with the testimony of FlatWorld's owner and sole inventor.

## II.  LEGAL BACKGROUND

The scope of a patented invention is defined by its claims.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995); 35 U.S.C. § 112 ¶ 2.  Accordingly, the "claim construction analysis must begin and remain centered on the claim language itself, for that is the language that the patentee has chosen to particularly point out and distinctly claim the subject matter which the patentee regards as his invention." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.,* 381 F.3d 1111, 1116 (Fed. Cir. 2004); *see also Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed. Cir. 2005).  In construing the claims of a patent, terms are typically given

their plain and ordinary meaning as understood by a person of ordinary skill in the relevant art at the time of the alleged invention. *Phillips,* 415 F.3d at 1312-13.  Moreover, an important object of claim construction is to crystallize the meaning of the claims for the trier of fact.  Claim constructions that do not clarify the claims' meaning, or would likely confuse the trier of fact, are inappropriate. *See, e.g.*, *Pagemelding, Inc. v. ESPN, Inc.*, 2013 U.S. Dist. LEXIS 31048, at *16 (N.D. Cal. March 5, 2013) (rejecting a construction because of its "potential to confuse a jury"); *Negotiated Data Solutions, Inc. v. Apple, Inc.*, 2012 U.S. Dist. LEXIS 176841, at *31-32 (E.D. Tex. Dec. 13, 2012) (same).

In addition to the claims themselves, the specification and prosecution history are of primary importance in claim construction. *Markman*, 52 F.3d at 979.  Although the specification is a primary source evidencing the meaning of the claims, "a claim construction must not import limitations from the specification into the claims." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012) (*citing Phillips,* 415 F.3d at 1323).  Moreover, "claims that have been narrowed [during prosecution of the patent] in order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent." *Graham v. John Deere Co.*, 383 U.S. 1, 33 (1966).  An applicant may disclaim coverage during prosecution even without amending the language of its claims, by "disavowing a certain meaning" of his claims, for instance to distinguish the prior art cited during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).

Apart from the intrinsic record, extrinsic evidence, such as dictionaries, treatises, and inventor testimony, may be helpful in construing the language of the claims. *Philips*, 415 F.3d at 1317-18.  A court may look to such evidence, for example, to assist the court in ascertaining the meaning a person of ordinary skill in the art would ascribe to the claims. *Id.*  For example, in *eBay Inc. v. Kelora Sys., LLC*, 2012 U.S. Dist. LEXIS 70636, at *28-29 (N.D. Cal. May 21, 2012), this Court relied in part on the fact that a patent inventor's testimony supported the construction proposed by the accused infringer in deciding to adopt that construction.

III. DISPUTED CLAIM TERMS

A.   **The Claims and Specification of the '318 Patent Use the Term "Image" to Refer to the Object That Is Manipulated in Response to User Inputs.**

| Apple's Proposed Construction | FlatWorld's Proposed Construction (July 2013 Brief) | FlatWorld's Proposed Construction (March 2013 Brief) |
|---|---|---|
| Image: The object that is manipulated in response to touch or location inputs. | Image: A displayed or drawn representation on the screen, capable of being manipulated as a unit by dragging and removal | Image: A displayed or drawn representation on the screen of the system or apparatus, which representation is treated as a unit with respect to being dragged, moved, and removed. |

Apple's proposed construction of the term "image" is drawn directly from the context of the claims and the specification.  In contrast, FlatWorld's "manipulated as a unit" limitation is a litigation-inspired attempt to rewrite the claims so that any arbitrary collection of pixels comprises an "image."  FlatWorld's construction would allow it to argue, illogically, that if a part of an image is scrolled off-screen while the rest remains visible, the missing part of the picture has been "treated as a unit" with respect to being removed, and thus suddenly qualifies as a separate "image."

Apple's construction flows from the claims themselves, which confirm that "image" refers to the graphical object is being manipulated on the screen or display.  As the Federal Circuit has made clear, the language of the claims is the primary source of evidence for any claim construction.  *See, e.g.*, *Philips*, 415 F.3d at 1314; *Innova,* 381 F.3d at 1116.  Here, the preambles of the claims recite "a system for manipulating images" or "a system for manipulating a moveable image," indicating that in the claimed system, the images are what is manipulated.  (Ex. A, '318 patent at 15:2, 15:36).  Similarly, the body of the claims recites "the computer causing the images to be manipulated," confirming that the image is what is being manipulated.

The specification confirms that "images" are the graphical objects that are manipulated.  Within the specification, the Summary of the Invention is particularly relevant to claim

construction because it can "broadly describe the overall invention." *Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1348 (Fed. Cir. 2004). Here, the Summary of the Invention of the '318 patent explains that the invention "is based on manipulating an image on the touch-sensitive screen." (Ex. A, '318 patent at 2:19-20.) The remainder of the Summary of the Invention describes selecting, moving, removing and modifying an "image," further clarifying that the "image" referred to in the claims is the graphical object that is manipulated by being selected, moved, removed and modified. (*Id.* at 2:20-40; *see also* 6:28-45, 6:56-62, 7:39-66.)

FlatWorld agrees that "the term 'image' refers to *something* 'that is manipulated'." (D.E. 168 at 10.) Its purported concern with Apple's construction – that the word "object" could be misinterpreted as "a self-contained module of data and its associated processing" rather than an on-screen graphic – is unfounded. (*Id.*) Every claim of the '318 patent requires that the manipulated image appear on a "screen" or "display." (*See, e.g.*, Ex. A, '318 patent at 15:3, 15:37, 16:17.) In this context, there is no reasonable concern that the jury would understand an "object" that is "manipulated" to refer to "something imperceptible." (D.E. 168 at 10.) Furthermore, Apple is not conjuring the word "object" from nowhere: the specification repeatedly uses this word to refer to a graphical image that is manipulated. (*See, e.g.*, *id.* at 6:28-7:7, 14:36-38.)

FlatWorld's own construction is inconsistent with the specification and should be rejected. FlatWorld would require that an image must be "capable of being manipulated as a unit by dragging and removal." According to Flatworld, this means that "the image cannot be partially removed from the screen." (D.E. 168 at 9, 10.) Tellingly, neither the specification nor the claims describe treating an image "as a unit" nor do they state that an image may not be "partially removed." In fact, the phrases "as a unit" and "partially removed" do not even appear anywhere in the specification. To the contrary, the specification appears to specifically allow for the possibility of an image being "partially removed." First, the Figures – which comprise part of the specification – include an image that appears to have been "partially removed." For instance, as shown below, item 711 of Figure 7 is an image of a basket where the top part of the



Fig. 7

longer, black, arc-shaped handle has been removed from view off the top of the screen.  Second, in describing the dragging operation, the specification states that "the target [image] is moved to the current location of the touch" without any check to see if this movement results a part of the image falling outside the visible area of the screen.  (Ex. A, '318 Patent at 12:3.)  Indeed, FlatWorld admits that in the source code of Figure 13 (which it contends is "in language any non-programmer can understand") "portion 1301 implements dragging." (D.E. 168 at 14.)  Figure 13 shows that, as the location of the mouse ("MouseLoc()") changes, the current position of the image ("CurrPosition") is immediately set to the new mouse location, without any check to determine whether or not this new placement would result in the image being "partially removed" from the screen.  (Ex. A, '318 Patent at Fig. 13, item 1301, D.E. 168 at 14.)

Even if it were not inconsistent with the specification, FlatWorld's "as a unit" requirement is wrong because it admittedly reads a limitation from a single embodiment into the claims. FlatWorld argues that "[a] *preferred embodiment* . . . indicates that the image is moved on the screen, and later removed from the screen, as a unit." (D.E. 168 at 9 (emphasis added).) It also asserts that "[i]n the preferred embodiment, the image cannot be partially removed from the screen." (*Id.* at 10.)  Even if this were true – which, as noted above, it is not – it is black-letter law that limitations may not be read from any embodiment – even the preferred one – into the claims. *See Phillips,* 415 F.3d at 1323.  Nothing in the **claims** prohibits an image from being "partially removed."  Apple's construction, not FlatWorld's, is supported by the intrinsic record, and should be adopted.

**B.   The Plain Meaning of "Continually Moved" and a "Continuing Touch," As Evidenced by the File History and Dictionary Definitions, Requires a Touch That is Moving or Existing Without Interruption.**

| Apple's Proposed Construction | FlatWorld's Proposed Construction (July 2013 Brief) | FlatWorld's Proposed Construction (March 2013 Brief) |
|---|---|---|
| When the point being touched is being continually moved: When the point being touched is moving without interruption<br><br>Continuing touch: A touch remaining in existence without interruption | When the point being touched is being continually moved: Moving the touched point within a selected image causes the image to move with the touched point, thus permitting the image to be dragged<br><br>Continuing touch: a touch that permits the image to be dragged | When the point being touched is being continually moved: When the system and apparatus performs processing that supports moving the image with the determined location of the touch in a fashion that imitates the dragging of a real object |

The parties' dispute here is simple: Apple proposes that a "continuing touch" must be continuing – that is, it has not yet ended or been interrupted – whereas FlatWorld argues that a "continuing touch" need not be continuing as long as it "permits the image to be dragged."

Apple's constructions reflect the ordinary meaning of the terms "continually" and "continuing" – something that continues and thus has not been interrupted.   Dictionary definitions from the time of the alleged '318 invention confirm Apple's position.   For instance, Webster's New World Dictionary defined "continual" to mean "going on uninterruptedly," and Merriam-Webster's Collegiate Dictionary defined "continue" as "[t]o maintain without interruption a condition, course, or action."  (Exs. B and C.)  Nothing in the claims, specification, or file history suggests that this common word is being used in a way that is at all inconsistent with its everyday usage.

FlatWorld's construction, in contrast, has no relation to the term's plain meaning.   According to FlatWorld, a "continuing touch" is any "touch that permits the image to be dragged."  (D.E. 168 at 23.)  FlatWorld does not contend that the plain meaning of "continuing" relates in any way to dragging – nor could it.   Nor does the specification redefine the term as

1   FlatWorld suggests: to "redefine the meaning of particular claim terms away from their ordinary

2   meaning, [the patentee] must clearly express that intent in the written description." *Merck & Co.*

3   *v. Teva Pharms*, 395 F.3d 1364, 1370 (Fed. Cir. 2005).  Here, none of the portions of the

4   specification that FlatWorld cites even use the word "continuing" or "continual," much less

5   redefine it in terms of dragging.  (Ex. A at 6:40-43, 6:50-55, Fig. 13.)

6        Indeed, the true goal of FlatWorld's construction appears to be to avoid having

7   "continuing" construed to actually mean continuing.  Thus, in explaining its "dragging"

8   limitation, FlatWorld argues that in one embodiment, when "the touch **is interrupted** . . . [the

9   device] runs through a series of algorithms to identify whether a drag or a throw or some other

10  gesture is intended." (D.E. 168 at 24.)  According to FlatWorld, "interruption of the touch is one

11  of the necessary steps" in permitting the image to be dragged.  (*Id.*)  In its prior brief to the

12  Court, FlatWorld candidly admitted what it was trying to do with its references to

13  "interruptions," claiming that the term "continual" "*must be construed to encompass at least*

14  *systems in which* the processing occurs after *the touch* is released – *viz.* after the touch has been

15  interrupted and *is no longer continuous*." (D.E. 81 at 12 (emphasis added).)  This position –

16  that "continual" must mean "no longer continuous" – is truly Alice-in-Wonderland material.

17  "No longer continuous" is not the plain and ordinary meaning of "continual" any more than "no

18  longer correct" is the plain and ordinary meaning of "correct."

19       Moreover, FlatWorld's claim that the specification – which it never actually quotes –

20  shows that "interruption of the touch is one of the necessary steps" to dragging an image is

21  simply wrong.  The specification actually describes "a loop which is executed from the time the

22  user touches the component until the time the user ceases to touch the component." (Ex. A at

23  11:64-66.)  Within this loop – that is, while the touch is continuing – the system determines that

24  the gesture is, for instance, a drag, after which "the target [image] is moved to the current

25  location of the touch," and the loop is "repeated" until "the user is no longer touching [the]

26  screen." (*Id.* at 12:3, 12:7-8.)  The specification thus explains that the image is dragged while

27  the touch remains uninterrupted. FlatWorld is simply wrong to claim that "interruption of the

28

touch is one of the necessary steps" to recognizing a drag gesture.  (D.E. 168 at 24.)

FlatWorld's sole criticism of Apple's construction is that "[a]ll touches . . . must eventually be interrupted, in the sense that none are perpetual."  (D.E. 168 at 23.)  This, while true, is irrelevant.  The claims, and Apple's construction, do not require that the touch be "continuing" for perpetuity.  Rather, they require only that it be "continuing" at the time the claimed steps allegedly take place – when the image is removed from the screen.  Whether the touch is interrupted at some later time is irrelevant.

> **C.     The File History And Specification Confirm That a Threshold Velocity is a Level or Value of Velocity Sufficient to Cause the Dragged/Moved Image to Be Removed from the Display.**

| Apple's Proposed Construction | FlatWorld's Proposed Construction (July 2013 Brief) | FlatWorld's Proposed Construction (March 2013 Brief) |
|---|---|---|
| <u>Threshold Velocity</u>: A level or value of velocity sufficient to cause the dragged/moved image to be removed from the display.<br><br><u>Velocity</u>: Velocity or, in the alternative, speed | <u>Threshold Velocity</u>: A velocity that, if exceed, is a necessary condition to change the semantics of a dragging gesture<br><br><u>Velocity</u>: the speed of at least one directional component of motion | <u>Threshold Velocity</u>: A value, which when exceeded by the speed of at least one directional component of a motion, such exceeding comprises at least one factor in producing a change in the semantics of the dragging operation. |

The parties' dispute for this term centers on two issues: whether a "velocity" refers to a velocity or to "at least one directional component of motion," and whether exceeding a velocity threshold results in an image being removed from the display or is merely one "necessary condition" in that decision.  Apple's proposed construction should be adopted because:

- The claims require that when the velocity threshold is exceeded, an image will be removed, without reference to any other "conditions"

- Every reference in the intrinsic record to a "velocity threshold" describes it as a value that, if exceeded, ***necessarily*** results in an image being removed; and

- Every reference in the intrinsic record to a "velocity threshold" describes it as a value of velocity, rather than of "at least one directional component of a motion."

1.   **The Claims, Specification, and File History Confirm that A Motion that Exceeds the Velocity Threshold Is Sufficient to Cause an Image to Be Removed Without Considering Other "Conditions."**

The claims, specification, and file history consistently describe a velocity threshold as a level of velocity that, when exceeded, is sufficient to cause the image to be removed, thus supporting Apple's construction.[1]   As an initial matter, the claims themselves require this relationship.  For instance, claim 1 requires that "*when* . . . the velocity with which the image is being dragged exceeds a threshold velocity, ***the system responds by removing the image*** from the display."  (Ex. A, '318 Patent at 15:8-12.)  Claim 7 recites the same relationship: "*when* . . . the system detects that the velocity at which the point is moving exceeds a predetermined threshold velocity, the image being continually moved ***is removed*** from the screen."  (*Id.* at 15:43-47.)  In both cases, the use of "when" signifies an if-then relationship: ***when*** the threshold is crossed, the image ***is*** removed – it is not removed if the threshold is crossed and some other "conditions" are met.

Similarly, every discussion of a "threshold" in the specification and file history indicates that removal of an image follows once the threshold is exceeded, so that exceeding the threshold is a sufficient condition for causing the removal to occur:

- "***If*** the image is dragged at a speed above a threshold velocity, the image ***is 'thrown away'*** from the display. . ." (Ex. A, '318 Patent at 2:29-32 (emphasis added).)

- "***When*** the threshold is exceeded, the 'thrown' object ***will continue to move*** in the same direction . . ." (*Id.* at 6:59-61 (emphasis added).)

- "In this embodiment, the velocity threshold is a distance of 2 of the distance units established by SuperCard.  ***If*** the distance between the position variables is greater than that, a throw ***has occurred***." (*Id.* at 12:18-20 (emphasis added).)

- "Standard 'drag' operations do not have the property recited in the claim, namely that an object ***is removed*** from the display ***when*** it is dragged at a

---

[1] Apple submits that the term "velocity" is a common, well-understood English term that requires no further construction and, accordingly, the Court should construe it to mean "velocity" or, if the Court believes the term "velocity" is too technical, to mean "speed."

velocity which is above a threshold velocity."  (Ex. D, ʹ619 File History[2], 4/6/01 Amendment and Response at 9 (emphasis added).)

- "The particular semantic of the operation is that **when** the speed is above a threshold, the image being dragged **is removed**."  (Ex. E, ʹ619 File History, 9/26/01 Response at 3; *see id.* at 4; Ex. F, ʹ619 File History, 5/17/02 Appeal Brief at 9, Ex. G, 12/18/02 Response at 2 (emphasis added).)

The Notice of Allowance hammers this point home, stating that an image is removed "in response to" the velocity threshold being crossed, with no mention of any other conditions:

> Furthermore, any issues regarding a possible 103 rejection involving Brewer et al are rendered moot by the Examiner's Amendment in that the claims now clearly recite that the removal of the image is done **in response to** the system detecting that the **velocity exceeds a threshold**.

(Ex. I, ʹ619 File History, Notice of Allowance at 7.)  Thus, the Examiner allowed the asserted claims because he understood that there was a clear if-then relationship between exceeding the threshold and the image disappearing.  The phrase "in response to the system detecting that the velocity exceeds a threshold" in the Notice of Allowance leaves no doubt – when the threshold is crossed, an image is removed, period.  Exceeding the threshold is **sufficient** to cause the removal of the image, not merely necessary.

Apple's position also comports with the plain meaning of the word "threshold."  For instance, dictionaries at the time of the alleged invention defined "threshold" as "a level, point, or value above which something is true or will take place and below which it is not or will not" and "a limit below which a stimulus causes no reaction."  (Ex. C at 1225, Ex. H at 1593.)  In these definitions, crossing the "threshold" is itself sufficient to cause a change in behavior – either an action "will take place [above the limit] and below [it] will not," or crossing below the limit means that a stimulus "causes no reaction."  Neither definition mentions the possibility that a "threshold" refers to only one "condition" among many for mediating behavior.

---

[2] The term "ʹ619 File History" refers to the file history of U.S. Patent No. 6,920,619; the patent-in-suit, U.S. Patent No. RE 43,318, is a reissue of the ʹ619 patent.

### 2. FlatWorld's Construction Improperly Rewrites The Term "Velocity Threshold" as Neither a Threshold Nor Relating to Velocity, and Is Contrary to the Specification, File History, and Inventor Testimony.

Under FlatWorld's proposed construction, a "velocity threshold" is neither related to "velocity" nor a "threshold." First, FlatWorld attempts to redraft the term "velocity" into "the speed of at least one directional component of a motion." (D.E. 81 at 13.) This is inconsistent with the language of the claims themselves, which refer to a "threshold velocity" or a "predetermined threshold velocity," and make no mention of breaking the velocity into "components." In other words, the claimed threshold is applied to the velocity as a whole, rather than to just one component of it. (*See* Ex. A, '318 patent at 15:8-11, 15:44-46.)

Moreover, FlatWorld's construction is inconsistent with the specification. As shown in the examples above, each mention of a "threshold" in the specification or file history refers to a "threshold" that is of "velocity" or "speed" – rather than some subset of those quantities. In particular, under the heading, "DETAILS OF A PREFERRED EMBODIMENT," the specification describes a single velocity threshold, stating that "the velocity threshold is a distance of 2 of the distance units established by SuperCard. If the distance between the position variables is greater than that, a throw has occurred." (Ex. A, '318 Patent at 9:46, 12:18-20.) In other words, the specification describes the "velocity threshold" as an absolute number reflecting change in position over a period of time, as reflected in Apple's construction, rather than a "directional component" of that change, as FlatWorld claims. (*Id.* at 12:18-20.) Indeed, in a different context, the patent talks about a "y component" of position or velocity in describing how position information is *stored*. (*Id.* at 12:9-12.) The fact that the patentee used "components" in describing how position information is stored, but not in describing, or claiming, how a velocity is calculated from that information, confirms that he did not intend to refer to "components" in the latter context.

While FlatWorld claims that the code shown in Figure 13 breaks velocity into components because it calculates the velocity only in the directions of straight up, down, left, and right, (D.E. 168 at 16), it is clear from the specification that the code was not intended to do any such thing. According to the specification, the velocity threshold is calculated based on the

distance between two position variables, not between components of those variables: "[i]f the distance between the position variables is greater than [2 distance units], a throw has occurred." (Ex. A, '318 Patent at 9:46, 12:18-20.)   Thus, even if FlatWorld's extended discussion of the Figure 13 code in its brief were correct, it would show only that the source code in Figure 13 has a "bug" – it does not actually work to implement what the inventor described in the specification.[3]  FlatWorld identifies – and Apple is aware of – no authority holding that errors in the implementation of an invention disclosed in a patent can trump the language of the written description for claim construction purposes.

Moreover, even if the pseudo-code of Figures 12 and 13 did use "components" and that usage were not simply a code bug, that would establish at most that, as is sometimes the case, the patent describes multiple implementations of the preferred embodiment – one in the written description, and one in the code example of Figure 13.  *See*, *e.g.*, *Wavetronix v. EIS Electronic Integrated Sys.*, 573 F.3d 1343, 1347 (Fed. Cir. 2009) ("[T]he specification discloses several preferred embodiments.")  Here, FlatWorld chose to direct its claims to the implementation using a "velocity threshold," not a "directional components of a velocity" threshold, and to describe the invention in those terms when discussing the newly-added "threshold" limitation with the Patent Office.  (Ex. D, '619 File History at 4/6/01 Amendment and Response at 9, Ex. E, 9/26/01 Amendment and Response at 3-4, Ex. F, 5/17/02 Appeal Brief at 9, Ex. G, 12/18/02 Response at 2, Ex. I, Notice of Allowance at 7.)   Apple's construction reflects the implementation the applicant chose to claim, while FlatWorld's does not.

After attempting to redefine "velocity," FlatWorld turns its redrafting efforts to the term "threshold."  Here, it asks the Court to transform the claimed "threshold" – which, when crossed,

---

[3] FlatWorld's description of how the code described in the '318 patent is particularly likely to be a bug because it would produce unintuitive and unusual behavior that undermined the inventor's claimed purpose. Under FlatWorld's interpretation, an object is thrown if it is moving at a speed of 2 directly up, down, left or right, but is not if it is moving at the same speed but its path deviates even a hair from those cardinal directions. (*Id.*)  This would hardly serve the goals FlatWorld claims for the invention of "decreas[ing] the cognitive load of the user interface" by making "the manipulated image behave[] like a similarly manipulated object in the real world."  (D.E. 168 at 4.)

*results in* an image being removed – to merely "a necessary condition to change the semantics of a dragging gesture." This is wrong.  As an initial matter, under FlatWorld's construction, the ***only time*** that the "semantics of a dragging gesture" could change is if a threshold velocity is exceeded.  But the specification says no such thing, and actively contradicts FlatWorld's construction.  For instance, the specification explains that, when a user "touches the part [an image] twice" and then "touches the part again after a period of 20 ticks has passed" and drags it, the dragging will result in a change in size of the image.  (Ex. A at 13:9-14, 13:20-33.)  Thus, by tapping an image twice and waiting 20 ticks, the semantics of the drag operation have changed: an operation that previously moved an image on the screen now causes it to change size.  That this change in semantics occurs even though no "threshold velocity" is exceeded (or considered) proves that exceeding the threshold is not a "necessary" condition for a change in semantics.

Moreover, FlatWorld's construction is wrong because it eliminates the causal if/then relationship where exceeding the velocity threshold is sufficient to remove an image, as described above at pages 9-10.  In support of its position, FlatWorld claims that the '318 patent discloses "a preferred embodiment in which the system must first detect that the user's touch has ended, then second process both velocity and direction" and argues that Apple's construction would "read out" this embodiment.  (D.E. 168 at 14.)  This is wrong for two reasons.

First, where, as here, the patentee amended claims during prosecution to overcome prior art and made specific statements regarding their scope, those statements trump arguments about "reading out" the preferred embodiment.  *See Elekta Instrument S.A. v. O.U.R. Scientific Int'l*, 214 F.3d 1302, 1308 (Fed. Cir. 2000).  Here, as set forth above, the direct, if-then relationship between exceeding the velocity threshold and removing an image from the screen was not only introduced in prosecution, but cited by the Examiner in his Notice of Allowance.  Tellingly, although FlatWorld spends almost a page of its brief discussing a single case – *Accent Packaging Inc. v. Leggett & Platt*, *Inc.* – that did not even involve arguments or statements made during prosecution.  707 F.3d. 1318 (Fed. Cir. 2013).  Rather, the Federal Circuit in *Accent Packaging* specifically noted that the "prosecution history . . . impart[s] no special meaning to the phrases"

at issue.  *Id.* at 1325.  Accordingly, *Accent Packaging* is inapposite.

Second, FlatWorld's characterization of the preferred embodiment is wrong – or at best, a description of merely one of multiple preferred embodiments. As noted above, the actual description of the preferred embodiment states that if the velocity exceeds 2 units, the image is thrown, without reference to direction and without requiring a touch to have ended:

> In this embodiment, the velocity threshold is a distance of 2 of the distance units established by SuperCard.  If the distance between the position variables is greater than that, a throw has occurred."  (Ex. A, '318 Patent at 12:18-20.)

Again, FlatWorld's insistence that the "code" in Figures 12-13 would work differently shows at most that either the Figure 13 code did not actually implement the invention as described in the written description, or that there were several implementations of the preferred embodiment.  In the former case, the code is irrelevant; in the latter, the claims confirm that FlatWorld chose to claim the embodiment in which – per their plain language – velocity was the sole relevant factor.

The testimony of FlatWorld's own inventor, Dr. Milekic, supports Apple's position that the only factor relevant to determining whether an image was removed is velocity.  In describing his work on the "Veggie Face" software that led to the '318 patent, Dr. Milekic stated as much:

> Q: And in your Veggie Face user interface, was there any factors other than velocity that were used to determine whether to carry out a throwing gesture?
> A: No.
> Q: Velocity was the only factor?
> A: Yes.

(Ex. J, Milekic Tr. at 64:25 – 65:6.) Similarly, Dr. Milekic rejected FlatWorld's idea that his system needed to take into account whether a touch had ended in order to remove an image, testifying that "what will happen is that the moment the speed of movement of the image exceeded a certain pretty fine threshold, the image would fly away regardless of whether the user lifted her finger."  (Ex. J, Milekic Tr. at 25:18-22, *see id.* at 21:3-20, 117:18-118:1.) [4]

---

[4] FlatWorld's attempt to get Dr. Milekic to retract his testimony on redirect was unsuccessful: his redirect testimony states only that there are "several different routines that are activated [to perform a throw] based on the direction of the movement" – not that "direction," or anything besides velocity is a factor in determining whether a throw occurs.  (Ex. J, Milekic Tr. at 128:20 (Continued…)

Finally, FlatWorld's argument that since the '318 patent uses "the open transition 'comprising,' the change in semantics of the gesture may be due to additional factors [beyond velocity]" is without merit.  (D.E. 168 at 12.)  The cases FlatWorld cites regarding "comprising" claims stand for the unremarkable proposition that a claim "comprising" certain elements may cover systems that also include other elements.  But the covered systems must include ***at least*** the recited elements.  *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' … means the named elements are essential, but other elements may be added").  Here, one of the enumerated elements that ***must*** be present is "a threshold velocity" (to use the language of claim 1) such that, when the threshold is crossed, "the system responds by removing the image from the display."  (Ex. A, '318 Patent at 15:8-12.)  FlatWorld's construction reads this element out of the claims, and thus must be rejected.

**D.    The File History Confirms That The Term "Representative" Should be Given its Plain and Ordinary Meaning: "A Portrayal or Symbol."**

| Apple's Proposed Construction | FlatWorld's Proposed Construction |
|---|---|
| <u>Representative</u>: A portrayal or symbol [thereof / of the removed image]. | <u>Representative:</u> A depiction of at least a portion of the removed image |

With respect to the term "representative," FlatWorld is again squirming to avoid the effect of representations it made during prosecution.  This squirming leads to the parties' dispute: whether (as Apple proposes) a "representative" of an image includes any portrayal or symbol of the image, such as a line or dot, or whether (as FlatWorld insists) it must be a "depiction" of that image.  Apple's proposed construction should be adopted for two reasons:

- The file history uses "representative" to refer to content – such as a line – that is not a "depiction of at least a portion" of an image, but rather a symbol; and;

---

– 129:1.) In essence, Dr. Milekic testified only that throwing left causes the object to move in a different direction, by calling a different routine, than throwing right – an unsurprising result.

- Apple's construction is consistent with the relevant extrinsic evidence, including dictionary definitions.

The term "representative" is and was a common English word that had a well understood meaning at the time of the claimed invention. For instance, contemporaneous dictionaries defined "representative" as Apple does: "a portrayal or symbol of." (Ex. H, Oxford Dictionary.) Thus, consistent with common usage, a "representative" need not be a literal picture of the thing it represents, but can equally well be a symbol that stands for it.

Moreover, the file history uses the term "representative" in just this way. Although FlatWorld refers to the prosecution history in its brief, it glosses over the critical fact: the "representative" that it referred to in the file history was a stylized broken line that provided a symbolic, rather than literal, representation of a page of a book that included text and images. As FlatWorld admits, the patent-in-suit was repeatedly rejected over a reference ("Henckel") that, as shown below, disclosed a tablet-like computer with a touchscreen that displayed electronic images of a book or magazine. (Ex. L, U.S. Patent 5,463,725 at Abstract, Figs. 1-2.)



(Ex. L, Henckel Figs. 1, 2.)

As the Examiner explained, Henckel used a swipe gesture to turn pages on its display, resulting in the turned page disappearing from the screen. (Ex. M, '619 File History, 10/3/02 Office Action at 2-3.) Perhaps because of the significant limits it would place on the claims' scope, FlatWorld fought hard to overcome Henckel without introducing a limitation that this removal must occur without leaving any "representative" of the page behind. After trying and failing to do this on three separate occasions, however, FlatWorld finally gave in. (Ex. G, '619 File History at 12/18/02 Amendment and Response at 2-3, Ex. N, 6/18/03 Amendment and

Response at 2, 5, Ex. O, 11/7/03 Response at 2-3, Ex. P, 3/12/03 Office Action at 8, Ex. Q, 8/29/03 Office Action at 3, Ex. R, 1/28/04 Office Action at 7.)   On March 22, 2004, it amended the claims to include essentially the same "representative" language that appears in the patent:

> 19.  (currently amended) A system for manipulating images, comprising:
>
> . . .
>
> when the image is being dragged ~~an image is removed from the set~~ in response to the location inputs and the velocity with which the image is being dragged exceeds a threshold velocity, the system responds by removing the image form the display **without leaving any representative therefor in the display** ~~that drag the image at a velocity which is above a threshold velocity~~.

(Ex. K, '619 File History, 3/22/04 Amendment and Response at 2 (emphasis added).)

FlatWorld then specifically provided an example of a "representative," stating that a "line" in Henckel was a representative of a page of text and images:

> [A] given page always has ***one of three representations*** in Henckel's display: it can be a displayed page, as shown at 20 in FIG. 1, a turning page, as shown at 28 in Fig. 2, or ***a line representing an undisplayed page***, as shown at 24 and 26 in FIG. 1.  Since ***a page in Henckel's display is always represented in Henckel's display by*** either a displayed page 20, a turning page 28, or ***a line 24 or 26***, Henkel [sic] does not disclose the limitation of Applicant's independent claims that Applicant's thrown image is removed "without leaving any representative thereof in the display."

(Ex. K, '619 File History, 3/22/04 Amendment and Response at 7 (emphasis added).)  Although the Examiner initially declined, in an Advisory Action, to enter the amendment, it was later entered via Examiner's Amendment and specifically cited in the Notice of Allowance as a basis for allowing the claims:

> The Examiner's Amendment [entering a slight variant of the 3/22 amendment discussed above] renders moot any issues about Henckel et al, because ***Henckel still leaves a representative of the image (such as a line) representing the page even after the page is 'removed'*** and the present invention is now amended to show that no representative remains.

(Ex. I, '619 File History, Notice of Allowance at 6-7 (emphasis added).)  A "representative" must thus include the type of representative identified in Henckel – a line.

FlatWorld pays lip service to the prosecution history, but incorrectly claims that the lines in Henckel are "literal depictions" of pages within Henckel's book.  (D.E. 168 at 19.)  This

cannot be correct.  First, as shown in its figures, Henckel's lines 24 and 26 are stylized, broken vertical lines that are in no way "depictions" of the text (20) and images (22) that make up the pages they "represent."  Indeed, the fact that these lines are broken or dashed confirms that they are symbolic, not literal, depictions of the edge of the page – the edge of a real piece of paper is a continuous, not a dashed, line.  Moreover, Henckel's lines do not have a one-to-one relationship with any one individual page, as a "literal depiction" would.  The pages displayed in Henckel's Figure 1 are numbered 102 and 103; if each page had a literal "depiction" in Henckel, there would have been at least 50 lines on the left-hand side of Figure 1.  But there are not.  Rather, there are a few lines that together represent or symbolize all the undisplayed pages but are not a "depiction" of any one page.  Moreover – as a comparison of Henckel's Figures 1 and 2 illustrates – turning a page in Henckel results in no change in the display of the lines on the side of the book the turned page was lifted from.  If there were a literal "depiction" of each page – rather than a "symbol" representing several pages – that depiction would be removed as the page is turned, and it is not.[5]

Consistent with Apple's position, the '318 patent's inventor conceded that the lines that the Applicant described as "representatives" in the file history were "symbolic" of the pages they represented:

> Q: How would the user perceive those pages [in Henckel] as you put it?
>
> A: As a bulk.  As a symbolic representation of number of pages.
>
> Q: So the – the bulk as you referred to it, it would be a symbolic representation of all the pages beneath page 104?
>
> A: Yes, however, the page 104 when it was turned like would have a definite edge to it that's discernible…

(Ex. J, Milekic Tr. at 106:2-7.)

FlatWorld's construction is simply an attempt to undo what the Applicant did during

---

[5] FlatWorld's reliance on extrinsic evidence in support of its construction is also flawed – by its own admission, its chosen dictionary defines "representative" as "representing, depicting, or portraying or able to do so."  (D.E. 81 at 16.)  FlatWorld's construction cherry-picks one of the words from this definition – "depicting" – and simply ignores the other, broader, terms.

prosecution and redefine "representative" to serve yet another litigation-inspired position – as FlatWorld has surely noticed, many of the Apple applications it accuses of infringement use shapes, such as dots, to represent content that has been moved offscreen.   FlatWorld's construction should be rejected, and Apple's adopted.[6]

### E.   Apple's Proposed Construction For the "When" Clauses Should Be Adopted Because It Tracks the Specific Meaning Given to These Phrases in the File History to Overcome Repeated Prior Art Rejections.

The phrases at issue here cover language in each of the asserted independent claims that was discussed in detail and as a unit by FlatWorld during prosecution of the patent, and that describes what must happen in the claimed system when a user's movement exceeds the claimed velocity threshold.  The clauses at issue are:

- When the image is being dragged in response to the location inputs and the system detects that the velocity with which the image is being dragged exceeds a threshold velocity, the system responds by removing the image from the display.  (Claim 1)

- When the point being touched is being continually moved and the system detects that the velocity at which the point is moving exceeds a predetermined threshold velocity, the image being continually moved is removed from the display.  (Claim 7)

- The computer responding to a continuing touch that moves the image across the touch screen such that when the computer detects that the velocity of the touch exceeds a predetermined threshold, the computer responds by removing the image from the screen.  (Claim 15).

---

[6] FlatWorld's construction is also confusing and should be rejected on that ground alone.  It is unclear (perhaps deliberately) what qualifies as a "depiction" of an image, and thus FlatWorld's construction would inject unnecessary ambiguity into the jury's efforts to apply the claims.

| Apple's Proposed Construction | FlatWorld's Proposed Construction (July 2013 Brief) | FlatWorld's Proposed Construction (March 2013 Brief) |
|---|---|---|
| When the image is dragged faster than the threshold velocity, the semantics of the drag operation change: instead of simply moving faster, the image vanishes. | <u>When</u>: In view of the fact that | The system removes the image from the screen in response to at least two criteria: (1) the image was dragged; and (2) the system detects that the velocity of the drag operation exceeds a threshold velocity. |

Apple's proposed construction should be adopted because it tracks word-for-word the representations made by FlatWorld during prosecution regarding the language at issue. As noted above, during prosecution, the patent-in-suit faced repeated rejections over the electronic book disclosed in Henckel, in which a swipe across the screen resulted the displayed page being dragged and then removed from the screen. (Ex. L, Henckel, Figs. 1-2, 2:60-66.) In response to one of these rejections, FlatWorld amended its claims to include substantially the same language that is at issue here (underlined below):

> 19. (currently amended) A system for manipulating images, comprising:
>
> . . .
>
> when the image is being dragged ~~an image is removed from the set~~ in response to <u>the</u> location inputs <u>and the velocity with which the image is being dragged exceeds a threshold velocity, the system responds by removing the image form the display without leaving any representative therefor in the display</u> ~~that drag the image at a velocity which is above a threshold velocity~~. (Ex. K, '619 File History, 3/22/04 Amendment at 5.)

FlatWorld then provided a specific representation about the effect that it intended the newly-added language to have, stating that simply exceeding the velocity threshold caused the system to switch from moving an image to "throwing" it away:

> Beginning with the [limitation stating "when the image is being dragged"], ***the amended description of the limitation is intended to make it clear that when the image is being dragged faster than the threshold velocity, the semantics of the drag operation change: instead of simply moving faster, the image vanishes.*** *None* of the operations in Henkel changes its semantics when the speed with which it is performed passes a threshold velocity. (Ex. K, '619 File History, 3/22/04 Amendment at 6 (emphasis added).)

FlatWorld's position was crystal clear: its invention was different than Henckel because, in the claims, once an image was moved faster than a certain velocity, it didn't just accelerate or continue to move faster – it vanished. After FlatWorld repeated this argument in an appeal brief (Ex. S, '619 File History, 6/4/04 Appeal Brief at 8), the Examiner withdrew his rejection and issued a Notice of Allowance citing exactly this argument as a reason for allowance:

> The following is an examiner's statement of reasons for allowance: . . . Furthermore, any issues regarding a possible 103 rejection . . . are rendered moot by the Examiner's Amendment in that *the claims now clearly recite that the removal of the image is done in response to the system detecting that the velocity exceeds a threshold*. (Ex. I, '619 File History, 3/8/05 Notice of Allowance at 6-7.) (Emphasis added.)

Apple's proposed construction tracks FlatWorld's representations in the March 22, 2004, filing exactly and is in accord with the Examiner's statement of reasons for allowance.

In contrast, FlatWorld offers no intrinsic support for its construction, choosing instead to rely on dictionary definitions that supposedly defined "when" to mean "in view of the fact that." (D.E. 168 at 24.) This argument is wrong for three reasons. First, it is black-letter law that extrinsic evidence, such as dictionary definitions, cannot be used to overcome statements made in the intrinsic record, including the file history. *See Philips*, 415 F.3d at 1322-23; *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996). Second, FlatWorld's proposed construction is confusing and would not help the jury in applying the claims. Although FlatWorld says that "'when' . . . is used in its conditional sense," it gives no indication of what that "conditional sense" is. (D.E. 168 at 24.) Indeed, it is unclear (perhaps intentionally) if FlatWorld's "in view of the fact that" means "if," "because," "as a result of," or something else entirely. Moreover, saying that an image is removed "in view of the fact that" a condition is met leaves open many questions, including what temporal relationship is required between the condition being met and the removing, whether other conditions must be met, and so forth.

Third, FlatWorld's proposed construction is inconsistent with the ordinary meaning of "when," which signifies a relationship in time, not merely a "conditional" relationship, as

1   FlatWorld claims.  Saying that "*when* the sun came up, my neighbors had left for the beach"

2   means that my neighbors had left *at the time* the sun rose, not that they left *because* (or, as

3   FlatWorld would have it, "in view of" the fact that) the sun rose.  This type of temporal

4   connection is consistent with FlatWorld's statements during the file history and with Apple's

5   construction.  And FlatWorld's own dictionary definitions reinforce this point: FlatWorld's "in

6   view of" construction actually ignores the primary definitions of "when" in each of the

7   dictionaries it cites.  For instance, FlatWorld cites to Webster's Dictionary, (its Exhibit 14), in

8   support of its construction.  That dictionary provides six definitions for "when," in descending

9   order of common usage.  FlatWorld's proposed definition of "when" is dead last out of these six.

10   Among the more common definitions that FlatWorld skipped while burrowing around for its

11   chosen definition are "[a]t the time that," (definition 1) "[a]s soon as" (definition 2),

12   "[w]henever," (definition 3), and "[d]uring the time that" (definition 4).[7]  (D.E. 169, Ex. 14.)  *All*

13   of these definitions require a temporal, not merely conditional, meaning for "when," and are

14   more consistent with Apple's position than with FlatWorld's.

15       Tellingly, FlatWorld offers literally no evidence from the claims, specification, figures,

16   or file history in support of its own construction.  Indeed, it admits that Apple's "proposed

17   construction is a direct quote from FlatWorld's March 22, 2004 amendment in the prosecution

18   history, which explained how the 'when' phrases quoted above distinguish Henckel."  (D.E. 168

19   at 25.)  FlatWorld's complaint that "the quoted language does not say that Henckel is

20   distinguished because its image-removal algorithm includes more factors than threshold

21   velocity" is a red herring.  (D.E. 168 at 25.)  The applicant's statement says clearly what happens

22   "when the velocity threshold is exceeded" – namely, "the image vanishes."  Whether other

23   factors could also cause that result or play some other role in an "image removal algorithm" is

24   irrelevant.  FlatWorld cannot dispute that Apple's construction tracks word-for-word the

---

[7] The only other dictionary FlatWorld cites fares no better.  In the Apple dictionary, cited by
FlatWorld as Exhibit 9, FlatWorld's cherry-picked definition for "when" is the third out of four
definitions presented.  (D.E. 169, Ex. 9.)  The first, most common, definition is "at or during the
time that" –requiring a temporal connection.

language FlatWorld itself used to describe its invention to the Patent Office.  Its argument is nothing more than a complaint that it does not like the consequences of those statements, and should be rejected.

F.    As Used in the '318 Patent "Manipulating"  Requires the Operations of Selecting, Moving, Removing, and Modifying.

| Apple's Proposed Construction | FlatWorld's Proposed Construction |
|---|---|
| Manipulating: A set of operations comprising at least selecting, moving, removing, and modifying. | Manipulating images includes any one or more of the following: selecting an image, dragging the selected image, moving a selected image, removing an image from the screen, or modifying the image: |

With respect to the "manipulating" terms, FlatWorld's proposed construction attempts to read these terms out of the claims by defining them as coextensive with the claims' separate requirement that an image be "removed" from the screen.  Apple's proposal, in contrast, tracks FlatWorld's usage of "manipulating" in the specification.  A patentee may "act as his own lexicographer" by giving a particular usage to a term in the specification, either expressly or implicitly; in either case, that definition governs.  *See Toro Co. v. White Consol. Indus.,* 199 F.3d 1295, 1300 (Fed.  Cir. 1999)  Here, Flatworld used "manipulate" to refer to specific operations that that term must include:

> Manipulations include ***selecting an image*** by touching it, ***"dragging" the selected image*** by moving the finger touching the image across the screen and "dropping" the image by lifting a finger from it, ***moving a selected image*** by touching another location on the screen and thereby causing the selected image to move to the touched location, ***removing an image*** from the screen by "throwing" it, i.e., moving it above a threshold speed, ***and modifying the image*** by tapping it twice and then moving the finger in a horizontal or vertical direction on the screen.

(Ex. A, '318 Patent at Abstract.)  Importantly, the patent — both in the Abstract and the specification — chose to join the list of operations that make up "manipulations" with the conjunctive "and," making clear that "manipulating" required the ability to implement each of selecting, moving, removing ***and*** modifying.  (Ex. A, '318 Patent at Abstract, 14:36-44.)  Each

of these operations is discussed again in the Summary of the Invention, further indicating that each is critical to the patentee's invention.  (Ex. A, '318 Patent at 2:18-40; *see, e.g.*, *Microsoft Corp.*, 357 F.3d at 1348.)

FlatWorld's proposed construction includes many of the same operations as Apple's.  However, rather than follow the specification, FlatWorld inserts the words "one or more of the following" into its definition, effectively reducing manipulating to *any* of the listed operations.  FlatWorld's "one or more of" language is nowhere to be found in the patent, and imparts a meaning that is contrary to the patent's disclosure that manipulating includes selecting, moving, removing, *and* modifying an image.  (*See* Ex. A, '318 Patent at Abstract.)  Indeed, although FlatWorld criticized Apple for "singl[ing] out four of the operations included in the abstract . . ." for inclusion in its construction, it does not – and cannot – identify any other operations that are called out in the Abstract's definition of manipulating.  (D.E. 168 at 22.)  Apple has not "single[d] out" anything – its definition encompasses all the relevant operations.

Moreover, FlatWorld's construction essentially reads the "manipulating" term out of the claims.  "[C]laims are interpreted with an eye toward giving effect to all terms in the claim," and a construction that renders a term superfluous is rarely correct.  *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006).  Under FlatWorld's construction, a system can provide for "manipulating" an image if it allows a user to remove that image from the screen and nothing more.  But the remaining limitations of the claims at issue already require that the system allow a user to remove an image.  *See, e.g.*, (Ex. A, '318 Patent at 15:8-13, 15:43-48.)  FlatWorld was free to claim "a system for *removing* images," but chose not to, instead choosing to claim a system for "*manipulating* images" – a choice that should not be ignored.  *Id.* [8]

---

[8] In a footnote, FlatWorld asserts that the preambles of claims 1 and 7 are not limiting.  (D.E. 168 at 21, n.9.)  This is both irrelevant and wrong.  The "manipulating" terms include the phrase "images to be manipulated" in the body of claims 1 and 7, so this term will require construction regardless of whether the preambles are limiting. Moreover, the preambles of claims 1 and 7 are limiting.  "[A] preamble phrase that provides antecedent basis for a claim limitation generally limits the scope of the claims." *Deere & Co.*, 703 F.3d at 1358.  Here, the use of "manipulating images" in the preambles of claims 1 and 7 provides an antecedent basis for the phrase "the images to be manipulated" in the bodies of those claims, and is therefore necessary (Continued…)

**G.** **The Terms "Image is Being Dragged," And "Image Was Dragged" Mean "The Touched Point is or Was Moved Within a Selected Image, Causing the Image to Move with the Touched Point."**

With respect to the two remaining terms, "image is being dragged," and "image was dragged," the specification makes clear that these phrases refer to a process where an image is selected by touching within it and then moving it. For instance, the specification explains that "[i]f an image is movable, touching the screen at the image selects the image for moving; moving the touched point within a selected image causes the image to move with the touched point." (Ex. A, '318 Patent at 2: 20-24.) Apple's construction, unlike FlatWorld's, captures the specification's requirement that the touched point must be moved "within a selected image" in order to move it. FlatWorld's sole objection to Apple's construction is that Apple's construction "impermissibly reads touch limitations . . . into claims 1, 2, and 18." Although Apple does not believe its construction does this, it would be willing to amend its construction to read "the touched or selected point is or was moved within a selected image, causing the image to move with the point." Apple submits that this resolves any objections FlatWorld has to Apple's construction, which should be adopted.

## IV. CONCLUSION

Apple's proposed constructions are faithful to the intrinsic evidence, including the claims, specification, and file history and should, accordingly, be adopted.

Dated: July 22, 2013

_/s/ Michael T. Pieja_____
Kenneth H. Bridges (SBN 243541)
kbridges@bridgesmav.com
Michael T. Pieja (SBN 250351)
mpieja@bridgesmav.com
Lawrence Lien (SBN 265851)
llien@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real

to understanding the claims and should be treated as a limitation. (Ex. A, '318 Patent at 15:2, 15:5, 15:36, 15:39.)

One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
Telephone:  (650) 804-7800
Facsimile: (650) 852-9224

James Shimota (Admitted *pro hac vice*)
jshimota@bridgesmav.com
Aaron Taggart (SBN 258287)
ataggart@bridgesmav.com
Adam R. Brausa (Admitted *pro hac vice*)
abrausa@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
180 N LaSalle, Suite 2215
Chicago, IL 60601
Telephone:  (312) 216-1620
Facsimile: (312) 216-1621

John Steele (SBN 122872)
john.steele@johnsteelelaw.com
JOHN STEELE, ATTORNEYS AT LAW
2225 E. Bayshore Rd., Suite 200
Palo Alto, CA 94303
Telephone:  (650) 320-7662

Attorneys for Defendant Apple Inc.

**PROOF OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 22, 2013, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.1(h). Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

_/s/ Michael T. Pieja_

Michael T. Pieja