UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLATWORLD INTERACTIVES LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>APPLE INC.,<br><br>　　　　Defendant. | Case No. 12-cv-01956-WHO<br><br>**ORDER DENYING APPLE'S MOTION TO DISQUALIFY HAGENS BERMAN SOBOL SHAPIRO LLP OR TO REFER MATTER TO SPECIAL MASTER**<br><br>Re: Dkt. No. 134 |

# INTRODUCTION

Apple Inc. ("Apple") moves to disqualify Hagens Berman Sobol Shapiro LLP ("Hagens Berman") from representing FlatWorld Interactives LLC ("FlatWorld") in this matter because Hagens Berman is alleged to be tainted as a result of the conduct of John McAleese, an attorney who was a partner in one of Apple's regular outside law firms and the husband of one of FlatWorld's co-founders and directors. In the alternative, Apple moves that the Court refer the disqualification and related discovery issues to a special master.

After considering the parties' submissions and hearing argument on the motion, the Court DENIES Apple's motion to disqualify Hagens Berman. Although John McAleese acted as an attorney for FlatWorld contrary to his legal and professional duty, there is no evidence that he possessed material confidential information about Apple or, for that matter, that he communicated substantively with FlatWorld about this litigation such that Hagens Berman is tainted and should be disqualified as FlatWorld's counsel. The Court also DENIES Apple's alternative motion to refer these issues to a special master.

# BACKGROUND

On April 19, 2012, FlatWorld sued Apple for patent infringement of touch- and gesture-

based user-interface technology used in Apple products, including the iPhone and iPad. Br. at 3. FlatWorld claims that Apple's products infringe upon FlatWorld's "'318 Patent." Compl. ¶ 32. During discovery, Apple's review of FlatWorld's first privilege log led Apple to believe that John McAleese, a then-partner at one of Apple's outside law firms, Morgan, Lewis & Bockius LLP ("Morgan Lewis"), was improperly communicating and sharing confidential information related to this case with FlatWorld and Hagens Berman. Br. at v, 7. Although Morgan Lewis does not represent Apple in this matter, Morgan Lewis frequently counsels Apple in other matters, including patent prosecutions related to the technology at issue here. Br. at 12. Because Morgan Lewis would be barred from being adverse to Apple on matters substantially related to Morgan Lewis's former representations, *see, e.g.*, *Adams et al. v. Aerojet-General Corp.*, 104 Cal. Rptr. 2d 116, 120-21 (Ct. App. 2001), Apple argues that John McAleese would be similarly barred since he was a partner at Morgan Lewis. Br. 12-13. And if John McAleese assisted FlatWorld or Hagens Berman on this matter, Apple argues that Hagens Berman would be "infected with [John McAleese's] conflict" and "must be disqualified." Br. at 15.

I. **JOHN MCALEESE'S RELATIONSHIP WITH APPLE BEFORE THIS CASE BEGAN.**

Since 2003, Morgan Lewis has represented Apple on different matters, including patent prosecutions related to the touch-based user interface of Apple's iPhone and similar devices. Wheeler Decl. ¶¶ 2-4. John McAleese was a partner at Morgan Lewis and co-chair of its environmental practice until May 31, 2013, but never worked on any Apple matters, nor did any attorneys in his group. Carlson Decl. Ex. 4 at 65-66. He has never done intellectual-property work. *Id.* He worked at Morgan Lewis's Philadelphia office, whereas Morgan Lewis's work for Apple was handled in its Palo Alto, San Francisco, and Washington, D.C., offices. *Id.* at 17-18. There is no evidence before the Court that John McAleese personally obtained or even tried to access any material confidential information about Apple while with Morgan Lewis.[1]

---

[1] Apple brought this motion to disqualify without taking John McAleese's deposition, and he did not submit a declaration to explain his conduct. The Court is left to decide these motions based on the evidence provided by the parties.

## II. JOHN MCALEESE'S RELATIONSHIP WITH FLATWORLD BEFORE THIS CASE BEGAN.

FlatWorld was founded in January 2007. Jennifer McAleese Decl. ¶ 2. John McAleese's wife, Jennifer McAleese, was a co-founder, is a principal, and currently owns 35 percent of FlatWorld; the remaining shares belong to Dr. Slavoljub Milekic, a co-founder who filed the patent at issue. Jennifer McAleese Decl. ¶¶ 1-2. At various points since its founding until this case was filed, FlatWorld appears to have been either considering suing Apple for patent infringement or seeking a purchaser for its patent who could itself use it to sue Apple. *See, e.g.*, REM-00000849, Pieja Decl. Ex. 20.

The privilege logs in this case reflect that, over the years, Jennifer McAleese sent her husband numerous emails related to FlatWorld's work, apparently including emails about "potential litigation" as early as January 2007 (when FlatWorld was founded) and about "prelitigation investigation" and "patent prosecution" as early as May 2007. *E.g.*, PRIV0714, PRIV1036, Pieja Decl. Ex. 3. During this period, some of Jennifer McAleese's emails to third parties are described as discussing "potential Rembrandt/FlatWorld litigation theories" and have "iPhone" in their subject field. *See, e.g.*, REM-00000747, REM-00000800, REM-00000822, Pieja Decl. Ex. 20.

While the privilege logs show that most of the emails between John and Jennifer McAleese are from her to him, John McAleese's role with regard to FlatWorld was not passive: he apparently assisted FlatWorld in exploring suing Apple. For example, on June 13, 2007, around the same time Jennifer McAleese wrote emails about "litigation theories" and "iPhone," John McAleese emailed Daniel Golub, a fellow partner at Morgan Lewis, to request the name of "a firm . . . that will purchase patents to enforce against infringers. . . . [M]y wife and her partner would like to talk with them." JM-00000036, Pieja Decl. Ex. 20. Similarly, on February 24, 2008, a draft letter from Jennifer McAleese asking an individual named "Michael" to discuss FlatWorld's business was edited by someone using John McAleese's user credentials at Morgan Lewis. MLB_A0000013-MLB_A0000017, Pieja Decl. Ex. 22. Morgan Lewis's general counsel confirmed that the document came from John McAleese's computer. Pieja Decl. ¶ 24. Among

other things, the letter states that FlatWorld's patent "is being used by Apple" and that FlatWorld has "an excellent position against Apple if [FlatWorld] decide[s] to take that course." *Id.* FlatWorld's own privilege logs contain numerous examples in which Jennifer McAleese sent John McAleese emails discussing "potential litigation" (e.g., PRIV1125), "patent strategy" (e.g., PRIV1172), and "patent prosecution status" "[d]rafted for purpose of prosecution" (e.g., PRIV1036). These emails include Jennifer McAleese's communications with patent attorneys, such as Gordon Nelson (who was hired to prosecute the patent in this case), "discussing patent prosecution status" (e.g., PRIV0789). And in January 2011, John McAleese attended a meeting with Jennifer McAleese at a law firm at which Jennifer McAleese sought legal assistance for FlatWorld. Pieja Decl. Ex. 7.

John McAleese appears to have helped FlatWorld look for a purchaser for its patent at other times. In October 2009, Jennifer McAleese forwarded emails to John McAleese reflecting communications between FlatWorld and Acacia, a company which appears to license or purchase patents to enforce them, though there is no evidence in the privilege logs that John McAleese spoke about or to Acacia himself. *See, e.g.*, MLB_F0000217, Pieja Decl. Ex. 37 at 12-15. In July 2010, according to an email between two third-parties, John McAleese appears to have been "reviewing" documents relating to whether FlatWorld would auction its "IP." ICAP00003367, Pieja Decl. Ex. 27. At one point, on April 4, 2011, Jennifer McAleese emailed an individual at Nokia, stating, "Given your various patent litigations with Apple, I strongly encourage you to take a look at this patent as a potential patent for your portfolio." FWAPP00005248, Pieja Decl. Ex. 38. After Nokia responded and asked for more information, Jennifer McAleese emailed her husband, "Call me when u r driving home so we can discuss response" [sic]. FWAPP00004699, Pieja Decl. Ex. 28. John McAleese responded, "Let's talk before you reply to this, okay?" FWAPP00004777, Pieja Decl. Ex. 1. Jennifer McAleese responded, "Yes, definitely." *Id.*

John McAleese appears to have known that such discussions might raise conflict-of-interest issues. On July 6, 2007, Jennifer McAleese wrote a representative of Rembrandt (a potential purchaser of FlatWorld's patent), saying, "My husband, John McAleese will be contacting you today to further discuss the NDA . . . He is a partner with Morgan Lewis &

4

1    Bockius." REM-00000432, Pieja Decl. Ex. 31.  A few hours later, Jennifer McAleese again wrote

2    the representative, "Given a conflict of interest check this morning, my husband, John McAleese

3    is unable to speak with you as his law firm, Morgan Lewis & Bockius represents Rembrandt."

4    REM-00000370, Pieja Decl. Ex. 32.

5          At times, John McAleese worked on FlatWorld matters while using a Morgan Lewis

6    computer.  In one instance, he apparently used his computer to edit a letter for his wife in which

7    she discussed the "enforcement of our 'throwing mechanism' software patent . . . being used by

8    Apple in the 'swiping' mechanism utilized in its iPhone and iPod touch products."  The letter

9    continues, "According to legal counsel and troll patent companies, we have an excellent position

10   against Apple if we decide to take that course."  MLB_A0000013, Pieja Decl. Ex. 22.  Also,

11   according to Morgan Lewis's privilege log, John McAleese appears to have received emails in his

12   Morgan Lewis account from Jennifer McAleese concerning "potential FlatWorld representation"

13   with Acacia "for purpose of litigation."  *See, e.g.*, MLB_F0000210, Pieja Decl. Ex. 4.  He received

14   numerous other FlatWorld-related emails at his law-firm account.  Pieja Decl. Ex. 4.  However,

15   despite all this questionable conduct, there is no indication that John McAleese ever received

16   material confidential information about Apple through Morgan Lewis.

17   **III.    JOHN MCALEESE'S INVOLVEMENT IN THIS CASE.**

18         John McAleese assisted FlatWorld and his wife in retaining a law firm to sue Apple.  On

19   February 27, 2012, upon his wife's request, he called Mark Carlson of Hagens Berman and spoke

20   with him for 29 minutes.  Pieja Decl. Exs. 11, 12; Jennifer McAleese Decl. ¶ 7.  Carlson claims

21   that they only spoke about disputed terms in FlatWorld's engagement agreement with Hagens

22   Berman, not about the merits of this case.  Carlson Decl. ¶ 3.  FlatWorld retained Hagens Berman

23   on March 5, 2012, Jennifer McAleese Decl. ¶ 7, and filed its complaint against Apple on April 19,

24   2012.

25         From the time of John McAleese's first phone call with Carlson until February 13, 2013,

26   FlatWorld claims that Hagens Berman and John McAleese had no oral, written, electronic, direct,

27   or indirect communication.  Opp'n at 5.  However, Apple notes that during this period, "FlatWorld

28   sent John McAleese at least 10 email chains from Hagens Berman, each described as containing

5

'legal advice pertaining to FlatWorld litigation' or 'legal advice regarding FlatWorld representation for patent litigation.'" Br. at 6. These emails span from February 2012 to December 2012. FlatWorld asserts—and the Court's *in camera* review confirms—that these were email strings that Jennifer McAleese forwarded her husband, Dkt. No. 145 at 1-2. Clearly, Jennifer McAleese wanted to keep her husband informed about FlatWorld's patent litigation, and she admits that he responded to her twice via email after she forwarded other Hagens Berman communications to him. Jennifer McAleese Decl. ¶ 8.

## IV. APPLE LEARNS OF JOHN MCALEESE'S CONFLICT.

Neither Morgan Lewis nor Apple knew about John McAleese's involvement with FlatWorld until February 25, 2013, when Jeff Risher—an Apple director with oversight of legal matters—saw John McAleese's name on FlatWorld's privilege log. Risher Decl. ¶¶ 1, 3. The same day, Risher emailed Scott Garner, a Morgan Lewis partner, about FlatWorld's privilege claims over documents logged with McAleese's name and expressed concern (the "Risher email"). Risher Decl. ¶ 5; Ossip Decl. ¶ 2. Risher expected Morgan Lewis to keep the email confidential. Risher Decl. ¶ 6. Garner forwarded this email to John McAleese on February 26, 2013. Br. at 7.

After receiving the Risher email, John McAleese told Jennifer McAleese about Apple's concerns and called Mark Carlson of Hagens Berman to discuss the same matter on February 26, 2013. Reply at 2; Opp'n at 9; Carlson Decl. ¶ 7. Apple argues that the substance of the email was privileged and that John McAleese violated Apple's confidences by revealing its content to Jennifer McAleese and FlatWorld's counsel; Hagens Berman disputes this characterization. After the parties requested that the Court review the email *in camera* (Dkt. No. 162), the Court determined that the content at issue is indeed protected by the attorney-client privilege (Dkt. No. 182).

According to FlatWorld, when John McAleese spoke with Carlson about the privilege log, he told Carlson that he was an attorney at Morgan Lewis, which works for Apple, and that he was not acting as an attorney in his communications with his wife. Opp'n at 5. FlatWorld and Hagens Berman claim that this was the first time that any attorney at Hagens Berman knew that Morgan Lewis worked for Apple. Opp'n at 6. According to Carlson, John McAleese asked him to

1  produce to Morgan Lewis the emails between him and his wife to show Morgan Lewis and Apple
2  that he was not FlatWorld's attorney. Carlson Decl. ¶ 7. Carlson reviewed the privilege log and
3  concluded that because of John McAleese's representation that he was not FlatWorld's attorney,
4  certain claims of attorney-client privilege may have been incorrect; however, Carlson concluded
5  that the documents were subject to the spousal privilege instead. Opp'n at 6. Thus, Carlson
6  amended the privilege log, changing nearly all the earlier claims of "attorney-client privilege" for
7  communications between John and Jennifer McAleese with assertions of spousal privilege, and
8  served it on Apple on February 27, 2013. Opp'n at 6; Pieja Decl. Ex. 13.

9  On February 28, 2013, John McAleese called Carlson a second time and said that the
10 amended privilege log had not resolved issues with Morgan Lewis and Apple. He again asked
11 Carlson to produce the emails. Carlson Decl. ¶ 11. Carlson refused because he was concerned
12 that producing the documents would waive the spousal privilege, which did not belong solely to
13 John McAleese. Opp'n at 6. However, Carlson offered to discuss the issue with FlatWorld. *Id.*
14 On March 1, 2013, Carlson informed John McAleese that FlatWorld would produce the
15 documents if Apple would agree that their production would not waive privilege. Later that
16 evening, Michael Ossip, Morgan Lewis's general counsel, asked John McAleese via email to
17 reach out to FlatWorld after another Morgan Lewis attorney spoke with Apple's in-house counsel.
18 Carlson Decl. Ex. 1. John McAleese forwarded Carlson the email from Ossip, which reflected the
19 terms on which Apple was willing to agree that privilege would not be waived and asked Carlson
20 to draft an agreement. *Id.* Carlson drafted an agreement and sent it to John McAleese, but never
21 heard from Apple. Carlson Decl. ¶ 14.

22 After receiving the original and amended privilege logs, Apple issued discovery requests to
23 FlatWorld, Hagens Berman, Morgan Lewis, and other third parties that communicated with
24 FlatWorld regarding the patent at issue. Br. at 8. Among others, FlatWorld, John McAleese, and
25 Rembrandt each produced a privilege log. *Id.* Upon reviewing them, Apple claims that a number
26 of documents appearing in one log are missing in another. *Id.* For example, Apple claims that at
27 least 100 "emails between Mr. McAleese and FlatWorld" appear on John McAleese's personal
28 privilege log but not on FlatWorld's privilege log. *Id.* In addition, Apple notes that Hagens

7

Berman produced four different versions of FlatWorld's privilege log. Pieja Decl. Exs. 3, 9, 13, 15. Apple points out that FlatWorld's later logs altered references to the attorney-client privilege in certain entries between FlatWorld (or Jennifer McAleese) and John McAleese. Br. at 8-9.

John McAleese left Morgan Lewis on May 31, 2013. Opp'n at 4. Aside from telling his wife and Mark Carlson about Apple's concerns over FlatWorld's privilege log, there is no evidence that John McAleese ever shared or even possessed confidential information about Apple.

## LEGAL STANDARD

District courts have inherent authority to disqualify counsel. *See United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996). Civil Local Rule 11-4(a)(1) mandates that every attorney who appears before this Court "comply with the standards of professional conduct required of the members of the State Bar of California." Civil L.R. 11-4(a)(1). Accordingly, this Court applies California law to determine whether Hagens Berman should be disqualified. *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). In addition, "[b]ecause of their susceptibility to tactical abuse, [m]otions to disqualify counsel are strongly disfavored" and "should be subjected to particularly strict judicial scrutiny." *Oracle Am., Inc. v. Innovative Tech. Distrib., LLC*, 11-CV-01043-LHK, 2011 WL 2940313, at *4 (N.D. Cal. July 20, 2011) (quotation marks omitted). Courts must be cognizant of the "substantial hardship" and the "monetary and other costs of finding a replacement" on parties whose counsel is disqualified. *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 300 (Ct. App. 1989).

California Rule of Professional Conduct 3-310(E) applies to this matter: "A member shall not, without the informed consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." In applying this rule, California courts have held that attorneys within the same firm are presumed to share access to privileged and confidential information, and "the disqualification of one attorney extends vicariously to the entire firm." *People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*, 980 P.2d 371, 383 (Cal. 1999). However, if an attorney only had "the presumptive taint of imputed knowledge from membership in the former law firm," that taint is eliminated as soon as

the attorney leaves the firm. *Adams*, 104 Cal. Rptr. 2d at 125.

Courts are divided over whether an attorney or a firm that is conflicted due to one representation can also taint that attorney's or firm's co-counsel in a different joint representation. In *Pound v. Cameron*, the court disqualified an attorney because his co-counsel actually had confidential information from their adverse party and was therefore conflicted even though the co-counsel never shared the information with the attorney. 36 Cal. Rptr. 3d 922, 924 (Cal. 2005). Conversely, at least three judges in the Northern District of California refused to disqualify counsel under the same circumstances. *Canatella v. Krieg, Keller, Sloan, Reilley & Roman LLP*, 11-CV-05535-WHA, 2012 WL 847493 (N.D. Cal. March 13, 2012); *Oracle* 2011 WL 2940313; *In re Airport Car Rental Antitrust Litig.*, 470 F. Supp. 495 (N.D. Cal. 1979). Most importantly for present purposes, however, the Court is unaware of any case in which a court disqualified an attorney or a law firm when no attorney had actual knowledge or possession of confidential information about an adverse party but one was conflicted only through imputation.

## DISCUSSION

Apple moves to disqualify Hagens Berman from representing FlatWorld because it argues that John McAleese breached his ethical duties to Apple because he acted as an attorney for its adversary, FlatWorld, and therefore that Hagens Berman is conflicted because it is co-counsel with John McAleese and is tainted by his conflict. Br. at 9, 13. FlatWorld, on the other hand, argues that Hagens Berman should not be disqualified because John McAleese never acted as an attorney for FlatWorld, never acted as Hagens Berman's co-counsel, never possessed confidential information about Apple, and that FlatWorld would be prejudiced if Hagens Berman is disqualified. Opp'n at 1. The Court will address these arguments in turn.

### I. JOHN MCALEESE BREACHED HIS ETHICAL DUTY TO APPLE BY ACTING AS FLATWORLD'S COUNSEL CONTRARY TO THE INTERESTS OF APPLE.

"Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process." *SpeeDee Oil*, 980 P.2d at 379. John McAleese breached that duty. Since 2007, John McAleese has acted as FlatWorld's attorney in a manner contrary to the interests of Morgan Lewis's (and thus McAleese's) client, Apple.

The Supreme Court of California held in *SpeeDee Oil*, "When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm." 980 P.2d at 374. An attorney cannot be adverse to one of his firm's clients even if the attorney never worked on that client's matters. "For attorneys in the same firm to represent adverse parties [] is [] patently improper." *Kirk v. First Am. Title Insur. Co.*, 108 Cal. Rptr. 3d. 620, 635 (Ct. App. 2010) (citations omitted). Most obviously, an attorney cannot "represent[] clients who have conflicting interests." *SpeeDee Oil*, 980 P.2d at 379. The requirement that an attorney act loyally towards his firm's clients also extends to actions that are not "technically legal services." *See Cord v. Smith*, 338 F.2d 516, 524 (9th Cir. 1964).

While at Morgan Lewis, John McAleese acted contrary to his firm's client's interest. "When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established *prima facie*." *SpeeDee Oil*, 980 P.2d at 379-80 (citation omitted). Neither "[t]he absence of an agreement with respect to the fee to be charged" nor "a formal retainer agreement is [] required" for there to be an attorney-client relationship; all that is needed is that "the attorney knowingly obtains material confidential information . . . and renders legal advice or services as a result." *Id.* at 380 (citations and quotation marks omitted). As detailed in Background sections II and III above, John McAleese performed legal functions for FlatWorld. Acting as an attorney for FlatWorld, John McAleese was part of numerous communications clearly adverse to Apple, both before and after suit was filed.

As a partner at Morgan Lewis, John McAleese owed a duty to his firm's client regardless of whether or not he personally worked on that client's matters. Just as a Morgan Lewis attorney working on Apple matters could not act adversely against Apple, so too was John McAleese barred from doing so, whether in a legal capacity or not. He owed a duty of loyalty to his firm's client, and "it is a violation of that duty for him to assume a position adverse or antagonistic to [that] client without the latter's free and intelligent consent." *Flatt v. Superior Court of Sonoma Cnty.*, 9 Cal. 4th 275, 289 (Cal. 1994). Over a period of nearly six years, by assisting FlatWorld and his wife in finding and retaining a law firm that would sue Apple for patent infringement, and by assisting in efforts to find a firm that would buy the patent to sue Apple itself, John McAleese

1  acted contrary to Apple's interests.

2      FlatWorld's tepid argument that "Mr. McAleese's only relationship with FlatWorld is
3  through his marriage to Ms. McAleese" is belied by the ample evidence that he acted in a legal
4  capacity on its behalf. Opp'n at 4. It matters not that she never formally "requested her husband's
5  assistance or advice in this case." *Id*. As the cases discussed above have held, an attorney is
6  barred from acting adversely against his or her law firm's client, and there is substantial evidence
7  that John McAleese did precisely that.

### II.  HAGENS BERMAN IS NOT DISQUALIFIED.

    Apple argues that Hagens Berman should be disqualified because John McAleese, who is conflicted, "is acting as Hagens Berman's co-counsel," and Hagens Berman is therefore tainted. Br. at 13. But there is no evidence that John McAleese ever received material confidential information about Apple during his time at Morgan Lewis, let alone passed it on to Hagens Berman, except for the Risher email. Further, John McAleese's role in this litigation has been minimal at best. Hagens Berman was not aware of his potential ethical issues until Apple raised them in February 2013. Disqualification would prejudice FlatWorld and is not appropriate under the circumstances.

#### A.  Conduct With Respect To The Risher Email Does Not Mandate Disqualification.

    Apple argues that *Rico v. Mitsubishi Motors Corp.*, 68 Cal. Rptr. 3d 758 (Cal. 2007), and *Terraphase Engineering Inc. v. Arcadis, U.S., Inc.*, No. 10-cv-04647-JSW (N.D. Cal. filed Oct. 10, 2010), mandate disqualifying Hagens Berman because of the way it handled the Risher email. Not so. Both cases are distinguishable from the facts here.

    In *Rico*, the Supreme Court of California affirmed that "mere exposure to an adversary's confidences is insufficient, standing alone, to warrant an attorney's disqualification." *Rico*, 68 Cal. Rptr. 3d at 767. There, the court disqualified an attorney who came upon the notes of his opposing counsel's paralegal (written at opposing counsel's direction), knew that the notes would be a "powerful impeachment document" against opposing counsel's witness, distributed copies of it to his co-counsel and experts, and then used it in a deposition. *Id.* at 762. Apple correctly notes

11

that the court did not inquire into the content of the document; instead, the court focused heavily on counsel's conduct. The court found that the attorney "acted unethically in making full use of the confidential document," which "undermined the defense experts' opinions and placed defendants at a great disadvantage," and that the "damage caused" was "irreversible." *Id.* at 767. Nothing of the sort happened in this case. Hagens Berman did nothing rising to the level of the actions of the disqualified attorney in *Rico*. It gained no advantage from learning of the potential conflict issue from John McAleese as opposed to Apple's litigation counsel or Morgan Lewis's general counsel. Indeed, Mr. McAleese informed Hagens Berman (incorrectly) that he had not acted as FlatWorld's lawyer. Hagens Berman had not hidden John McAleese's name or the documents he reviewed on the privilege log—it promptly worked through the privilege issues raised by Apple and ultimately produced the documents in question. *Rico* noted, "disqualification *might* be justified if an attorney inadvertently receives confidential materials and [does not 'immediately notify' its owner], *assuming other factors compel disqualification.*" *Id.* (emphases added). No other factors compel disqualification here.

In *Terraphase Engineering*, Terraphase's counsel inadvertently sent about a dozen emails containing legal advice and work product to Arcadis's in-house counsel. Arcadis's in-house counsel read the materials, analyzed them, used information from the emails to send "threatening" letters to Terraphase's clients, and provided the information from the emails to outside counsel, who used the information in Arcadis's counterclaims. Terraphase Br. at 1. Terraphase learned about the disclosure due to an allegation in the counterclaims about a Terraphase meeting that took place on a certain date that Arcadis could not have known about. *Id.* at 4. It was unclear whether Arcadis's outside counsel knew that the information came from confidential material. Nonetheless, the court disqualified Arcadis's outside counsel, but did not issue an opinion explaining its decision. Apple argues that because the court in *Terraphase* disqualified counsel over the use of a single date, Hagens Berman should be disqualified due to its knowledge that Apple was concerned about FlatWorld's privilege log. However, in *Terraphase*, in-house counsel clearly had a significant amount of confidential information relevant to the case's merits and passed that information on to outside counsel, thereby tainting outside counsel. Here, there is no

1  evidence that John McAleese had confidential information from Apple that was relevant to the
2  merits of the litigation itself, and Hagens Berman never received any. Like *Rico*, *Terraphase* does
3  not mandate disqualification here.

### B. John McAleese Had No Confidential Information About Apple Relevant To The Merits Or Strategy In This Case.

To succeed on its disqualification motion, Apple must make a threshold showing that John McAleese had confidential information about Apple. As the Supreme Court of California stated in *SpeeDee Oil*, "The primary concern [in disqualification motions] is whether and to what extent the attorney acquired confidential information." 86 Cal. Rptr. 2d at 825. The California Rules of Professional Conduct are "designed to protect a client's confidences" and to "prohibit[] attorneys from accepting employment adverse to a client . . . [if] the attorney obtained confidential information." *Pound*, 36 Cal. Rptr. at 929.

Here, Apple has not established that John McAleese had any confidential information about it at all aside from the fact that Apple was concerned about FlatWorld's privilege log on February 25, 2013. His conflict with Apple was *imputed* due to his association with Morgan Lewis. He never "obtained confidential information" or "received confidential information." *Id.* at 924. John McAleese never worked on any Apple matters during his years at Morgan Lewis. Carlson Decl. Ex. 4 at 66. He is not an intellectual-property attorney, but is focused primarily on environmental matters as head of that practice. Even the traditional concern behind the conflict-imputation rule—that attorneys physically working closely together might come upon confidential information about a particular client even without working on that client's matters, *Kirk*, 108 Cal. Rptr. 3d. at 638-39—does not bear out here because Apple's patent matters were handled in other Morgan Lewis offices besides its Philadelphia office, where John McAleese practiced.

Indeed, Morgan Lewis's own general counsel testified that, after conducting an extensive forensic investigation of Morgan Lewis's system, there is no evidence that John McAleese ever accessed or received any confidential information about Apple. Carlson Decl. Ex. 4 at 117-22. While Cyndi Wheeler, Senior Patent Litigation Counsel at Apple, declared that Morgan Lewis received "considerable confidential information relating to Apple," she does not state that John

1  McAleese received any of it. Wheeler Decl. ¶ 5. The declarations of Mark Carlson and Steve
2  Berman of Hagens Berman, Jennifer McAleese, and Dr. Milekic all reflect that neither they nor
3  Hagens Berman ever received any confidential information about Apple. Berman Decl. ¶ 6;
4  Carlson Decl. ¶ 17; Jennifer McAleese Decl. ¶ 11; Milekic Decl. ¶ 4. While the Court is cognizant
5  that declarations can sometimes be self-serving, "absent credible evidence otherwise, there is no
6  reason to disbelieve [] factual statements in a declaration." *Oracle*, 2011 WL 2940313, at *5
7  (citation omitted). Apple has pointed to no evidence that John McAleese passed on any
8  confidential information about it or, indeed, actually had any confidential information to give. *See*
9  Reply at 9-10. Thus, Hagens Berman should not be disqualified.

10 Apple argues that *Pound*—the single case where a California state court disqualified one
11 counsel based solely upon co-counsel's conflict—is "on point here" and mandates disqualifying
12 Hagens Berman. Br. at 16. There, the Court of Appeal disqualified an attorney who received
13 confidential information based on his earlier representation of his now-adverse party. In order "to
14 protect defendants' confidences from the possibility of inadvertent disclosure," the court also
15 disqualified the attorney's co-counsel even though the trial court found that the co-counsel never
16 received any confidential information himself. 36 Cal. Rptr. 3d at 928. Similarly, in *Beltran v.*
17 *Avon Products*, a federal court disqualified co-counsel of a conflicted lawyer who had confidential
18 information without a showing that the co-counsel actually received any of the information giving
19 rise to the conflict. 867 F. Supp. 2d 1068 (C.D. Cal. 2012) (stating that "there is no direct
20 California authority regarding vicarious disqualification of an associated [counsel]"). However, it
21 does not follow from *Pound* or *Beltran* that disqualification of counsel is necessary for associating
22 with a conflicted attorney who had *no* actual confidential information from the adverse party, as is
23 the case here.

24 Indeed, in several other cases, courts have declined disqualifying counsel even when the
25 conflicted co-counsel did in fact have confidential information but never shared it with the counsel
26 being challenged. *See, e.g.*, *Oracle*, 2011 WL 2940313; *In re Airport Car Rental Antitrust Litig.*,
27 470 F. Supp. 495. The courts in those cases found disqualification unwarranted if there was "no
28 evidence that [the attorney] shared any confidential information." *See, e.g.*, *Canatella*, 2012 WL

14

847493, at *2.  Apple's attempt to distinguish *In re Airport Car Rental Antitrust Litigation*, *Canatella*, and *Oracle* (cases in which the court refused to automatically disqualify co-counsel without a showing of shared confidential information) from *Pound* and *Beltran* (cases in which the court automatically disqualified co-counsel based on one attorney's having confidential information) does not help it because none of those cases involved an attorney whose conflict was imputed and who possessed no confidential information.  No case cited by Apple or of which the Court is aware would support disqualification of co-counsel under the factual scenario presented here.

  **C. John McAleese's Minimal Role In This Litigation Is A Further Reason Not To Disqualify Hagens Berman.**

 The minimal contact between John McAleese and Hagens Berman belies Apple's fear that John McAleese is in any substantive way co-counsel in this matter.  Hagens Berman never consulted John McAleese about the case or vice versa.  Berman Decl. ¶ 2; Carlson Decl. *passim*; Meyer Decl. ¶ 3.  The few communications between John McAleese and Hagens Berman that Apple points out as providing a "pipeline" for client confidences are insufficient to overcome this conclusion.  After discussing "disputed terms" in Hagens Berman's engagement agreement on behalf of FlatWorld, John McAleese had no contact with Hagens Berman for nearly a year.  Berman Decl. ¶ 2-3; Carlson Decl. ¶ 4; Meyer Decl. ¶ 3.  That period ended only when, during what is described as small-talk during a social lunch, John McAleese asked Mark Carlson how Dr. Milekic's deposition went; nothing else related to this litigation was discussed.  Carlson Decl. ¶ 5.  John McAleese's communications with Steve Berman, another Hagens Berman attorney, consisted only of one phone call and some emails about an employment law issue.  Berman Decl. ¶ 3.  The only other communications between John McAleese and Hagens Berman related to this case appear limited to the issue of the privilege logs only, which does not go to the heart of this case.  At no point did they discuss "any potential defendants," Apple, or "any litigation tactics or strategy."  Carlson Decl. ¶ 3.  While Apple correctly points out that Jennifer McAleese forwarded numerous emails apparently containing legal advice from Hagens Berman to her husband, Hagens Berman never knew that its emails were being forwarded to John McAleese by Jennifer McAleese

15

1 until after February 13, 2013.  Opp'n at 5-6.  The unidirectional flow of information—away from
2 the counsel of record, no less—does not suggest the existence of a material role being played by
3 John McAleese in this case, nor does the lack of evidence that he assisted Hagens Berman in any
4 way.
5     Of course, the materiality of John McAleese's role in this litigation is a wholly different
6 issue than whether he actually possessed confidential information gained from Apple while at
7 Morgan Lewis, of which there is no evidence other than the Risher email.  Disqualifying Hagens
8 Berman from representing FlatWorld is unwarranted.

> **D. Disqualifying Hagens Berman Would Prejudice FlatWorld And Impose A Significant Hardship On It.**

11      As shown above, as applied to the facts of this case, the law supports denial of Apple's
12 motion to disqualify Hagens Berman.  In addition, the Court finds that disqualifying Hagens
13 Berman would prejudice and impose a significant hardship on FlatWorld.  California courts have
14 held that a court considering a motion to disqualify may consider whether disqualification
15 "imposes a substantial hardship" or a "financial burden on a client to replace disqualified
16 counsel."  *SpeeDee Oil*, 980 P.2d at 378; *Gregori*, 207 Cal. App. 3d at 300.  This case is on the
17 eve of a *Markman* hearing and Apple's argument that FlatWorld has not "paid a single cent" to
18 bring this litigation holds no water in light of the work invested thus far by Hagens Berman.
19 Apple ignores the realities of finding sophisticated plaintiff's counsel who can spend the
20 significant time and money it takes to bring patent litigation.  FlatWorld has retained Hagens
21 Berman on a contingency basis, and Hagens Berman has invested thousands of hours and
22 hundreds of thousands of dollars in this case since this matter was filed fifteen months ago.
23 Berman Decl. ¶ 9; Jennifer McAleese Decl. ¶ 19.  It is evident, as FlatWorld asserts, that
24 disqualifying its counsel would impose a substantial hardship upon it due to (i) the difficulty of
25 finding a willing and able patent litigation firm, (ii) the replication of expended efforts, and (iii)
26 the delay disqualification would cause.  Disqualification of Hagens Berman would clearly
27 prejudice its client.

**III.  THERE IS NO REASON TO REFER THESE ISSUES TO A SPECIAL MASTER.**

The Court has carefully considered all the reasons Apple gives for referring these issues to a special master.  Reply at 10-15.  It is certainly possible that further discovery might complete the picture of what occurred, but it would not change the outcome.  In light of the evidence that was presented in this motion, which includes among other things the privilege logs and declarations under penalty of perjury from counsel at Hagens Berman and Jennifer McAleese that combine to show at best minimal communications between Mr. McAleese and Hagens Berman, and information regarding the forensic examination by Morgan Lewis that showed no access by John McAleese to Apple's confidential information other than the Risher email, and for the reasons stated above, there is no basis for this litigation to be sidetracked any further by referral to a special master.

**CONCLUSION**

As an attorney at Morgan Lewis, John McAleese was barred from being adverse to his firm's long-time client, Apple.  By acting as an attorney for Apple's adversary, FlatWorld, even in an unpaid capacity and even though his spouse was FlatWorld's co-founder and principal, he violated his duty as an attorney.  But there is no evidence that he actually possessed confidential information belonging to Apple that he could pass on to Hagens Berman other than the Risher email, and no evidence that he did so.  His conflict does not taint Hagens Berman.  Accordingly, Apple's motion to disqualify Hagens Berman is DENIED.  Apple's alternative motion to refer these issues to a special master is also DENIED.

**IT IS SO ORDERED.**

Dated: August 7, 2013

_____
WILLIAM H. ORRICK
United States District Judge