UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLATWORLD INTERACTIVES LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>APPLE INC.,<br><br>  Defendant. | Case No. 12-cv-01956-WHO<br><br>**ORDER GRANTING APPLE INC.'S MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIMS**<br><br>Re: Dkt. No. 228 |

## INTRODUCTION

Defendant Apple Inc. ("Apple") moves for leave to amend its answer and counterclaims to plaintiff FlatWorld Interactives LLC's ("FlatWorld") Complaint. Apple seeks to add counterclaims for (1) aiding and abetting, (2) tortious interference with contract, and (3) violations of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200 *et seq*. For the reasons below, the Motion for Leave to Amend Answer and Counterclaims is GRANTED.

## BACKGROUND

The Court incorporates by reference its discussion in its Order Denying Apple's Motion to Disqualify Hagens Berman Sobol Shapiro LLP or to Refer Matter to Special Master ("Order"). Dkt. No. 196.

On August 7, 2013, the Court denied Apple's motion to disqualify FlatWorld's counsel.

On October 9, 2013, Apple's counsel wrote to counsel for John McAleese and Morgan Lewis's general counsel, demanding, pursuant to "Apple's agreements with Morgan Lewis," that they mediate claims Apple "intends to assert [ ] against Morgan Lewis and Mr. McAleese for breach of contract, breach of fiduciary duty, fraud, and other torts."[1] Berman Decl. (Dkt. No. 155)

---

[1] Apple argues that while FlatWorld makes various remarks throughout its Opposition about the mediation between Apple, Morgan, Lewis and Bockius LLP ("Morgan Lewis"), and John

Ex. 1.

On October 15, 2013, Apple filed this Motion for Leave to Amend Answer and Counterclaims. Dkt. No. 228. FlatWorld filed an Opposition brief and Apple filed a Reply. Dkt. Nos. 255, 258. On December 4, 2013, the Court heard argument on the motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading once as a matter of course within (1) 21 days after serving the pleading or (2) 21 days after the earlier of service of a responsive pleading or service of a Rule 12(b) motion. FED. R. CIV. PRO. 15. Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave," though the court "should freely give leave when justice so requires." *Id.* In *Lockheed Martin Corp. v. Network Solutions, Inc.*, the Ninth Circuit stated that leave to amend should be freely given absent "(1) bad faith on the part of the plaintiffs; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment." 194 F.3d 980, 986 (9th Cir. 1999). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Granting leave to amend does not necessarily mean that the underlying allegations ultimately have merit. Rather, "[a]bsent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* (original emphasis). However, the Ninth Circuit has held, "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

## DISCUSSION

Guided by the Ninth Circuit's instruction that leave to amend should be "freely given"

---

McAleese, FlatWorld does not tie them to any issue relevant to the motion to amend. Reply 15. Apple further argues that there is nothing improper about having a separate mediation with Morgan Lewis and John McAleese because (1) the engagement agreement between Apple and Morgan Lewis requires them to do so, and (2) there is nothing "duplicative" about that proceeding and the action before the Court. FlatWorld provides no persuasive argument why the concurrent mediation provides cause to deny the motion for leave to amend, thus the Court finds no need to decide any such issue.

absent a showing of the following four factors, the Court addresses them in turn.

## I. UNDUE PREJUDICE

Apple argues that "FlatWorld cannot show undue prejudice here because the counterclaims that Apple seeks to add are closely related to the defenses in its initial answer and involve the same basic facts." Br. 4. In its initial answer, Apple pleaded defenses of laches and unclean hands. Dkt. No. 13 ¶ 41. Apple argues that those defenses "rel[y] on facts that overlap with those that will be implicated in Apple's counterclaims." Br. 5. With regard to its laches defense, Apple argues that FlatWorld "knew of Apple as a target in 2007, but waited to sue until 2012." Br. 5. Had Apple known that it was a target, it "could have taken steps to avoid or mitigate liability." Br. 5. "The same facts that will be used to show undue delay and prejudice to Apple for its laches defense will be important in establishing damages suffered by Apple as a result of the events underlying Apple's counterclaims." Br. 5. Apple asserts that the remaining discovery needed to bring its new claims "will need to be done in support of Apple's defenses in any event," and thus allowing leave to amend would not cause undue prejudice to FlatWorld. Br. 6.

The Court finds that granting Apple leave to amend its Answer and Counterclaims will not unduly prejudice FlatWorld. "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp.*, 194 F.3d at 986. The Court has not set a pre-trial scheduling order yet, discovery remains open, and much of the discovery relevant to the issues has already been conducted or is relevant to issues for which discovery must be conducted in any case. Accordingly, this factor weighs in favor of Apple and there must be a "strong showing of any of the remaining [ ] factors" for leave to be denied. *Eminence Capital*, 316 F.3d at 1052.

## II. UNDUE DELAY

Apple argues that within a week after learning of potential improprieties concerning John McAleese and FlatWorld, it immediately served discovery upon third parties, and document production from them was not completed until July 2013. Br. 6. In addition, "FlatWorld itself produced documents relevant to Mr. McAleese's involvement as late as September 2013, and it has refused to produce all communications between FlatWorld and Mr. McAleese." Br. 6 (citing

3

1 Overson Br. Decl. ¶ 5). Thus, Apple argues that it did not unduly delay bringing this motion since it comes only two months after the Court issued its Order. Br. 6. Apple also argues that adding these counterclaims will not delay the case because no discovery deadlines or trial date has been set in this case.

"[D]elay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 665 F.2d 977, 980 (9th Cir. 1981); *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("delay of nearly two years, while not alone enough to support denial, is nevertheless relevant"). However, undue delay combined with other factors may warrant denial of leave to amend. *See, e.g.*, *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387-89 (9th Cir. 1990) (holding that prejudice and undue delay are sufficient to deny leave to amend).

The Court finds that Apple has not unduly delayed in seeking leave to amend its Answer and Counterclaims. Apple filed this motion just over two months after the Court issued its Order and discovery is ongoing. Viewed under the circumstances, the motion was not unduly delayed. Accordingly, this factor weighs in favor of Apple.

### III. FUTILITY

"A motion for leave to amend may be denied if it appears to be futile or legally insufficient. However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim [ ]." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted). The standard to be applied is identical to that on a motion to dismiss for failure to state a claim. *Id.*

**A. Aiding And Abetting**

Apple points out that the Court's Order already found that John McAleese breached his fiduciary duty to Apple. Br. 7. Apple argues that because FlatWorld "knew Mr. McAleese's and Morgan Lewis's conduct constituted a breach of duty," it "gave substantial assistance or encouragement to Mr. McAleese to so act," thereby making it liable for aiding and abetting. Br. 7.

"California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially

4

assisted." *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (Ct. App. 2005). "Liability may [] be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Saunders v. Super. Ct. of State of Cal., Cnty. of L.A.*, 27 Cal. App. 4th 832, 846 (1994). "Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879 (2007). "[W]hile aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Howard v. Super. Ct. of L.A. Cnty.*, 2 Cal. App. 4th 745, 749 (Ct. App. 1992).

The Court concludes that Apple's proposed amendments for aiding and abetting liability are not futile or legally insufficient. That does not mean that the allegations have merit or that the Court thinks that they can ultimately be proven; rather, they merely meet the liberal bar for pleading and for seeking leave to amend, which the Court must "freely" grant.

Apple brings its claim under the first prong for aiding and abetting liability, Reply 3, and its proposed amendments plead sufficient factual allegations that FlatWorld knew that John McAleese's conduct constituted a breach of duty but nonetheless gave substantial assistance or encouragement to him to so act. *Saunders*, 27 Cal. App. 4th at 846. With regard to actual knowledge, Apple pleads that FlatWorld and one of its principals, Jennifer McAleese, knew since at least 2007 that John McAleese's then-firm, Morgan, Lewis & Bockius LLP ("Morgan Lewis"), represented Apple and that he was prohibited from acting adversely against Apple. *See, e.g.*, Overson Br. Decl. Ex. A ¶¶ 20-22, 24-30, 37. While several of Apple's allegations were pleaded based on "information and belief," the issue is whether Apple pleaded those allegations with sufficient factual support and did not merely provide conclusory assertions. *See Waldo v. Eli Lilly & Co.*, No. 13-cv-0789, 2013 WL 5554623, at *5 (E.D. Cal. Oct. 8, 2013) ("That an allegation is pled on information and belief is neither dispositive nor particularly germane. Per *Iqbal* and

5

*Twombly,* the proper inquiry remains whether the plaintiff has presented a non-conclusory factual allegation."). It has. For example, while Apple pleads "[o]n information and belief [that] FlatWorld and Ms. McAleese have known since at least the beginning of 2007 that Morgan Lewis, and thus Mr. McAleese, represented Apple," it goes on to cite facts supporting that conclusion, such as the fact that "FlatWorld told potential litigation counsel of this conflict" and that John McAleese sought potential patent purchasers on behalf of his wife around the same time she sent emails discussing "litigation theories" and the "iPhone." Overson Br. Decl. Ex. A ¶¶ 20-21, 25. In addition, John McAleese was drafting a letter about suing Apple "on behalf of FlatWorld" in February 2008. Overson Br. Decl. Ex. A ¶ 27.

Apple also sufficiently pleads that FlatWorld gave substantial assistance or encouragement to John McAleese in his breach of his duty to Apple. Apple pleads that Jennifer McAleese knew that John McAleese had certain ethical obligations, Overson Br. Decl. Ex. A ¶ 21, but she continually forwarded him emails about FlatWorld and its attempts to find a purchaser or to sue Apple, *see, e.g.*, Overson Br. Decl. Ex. A ¶¶ 31-34. On one occasion, Jennifer McAleese emailed John McAleese, asking him to call her so that they could discuss a response to an email from Nokia that referenced FlatWorld's "various patent litigations with Apple." Overson Br. Decl. Ex. A ¶ 30. Apple also pleads that John McAleese attended a meeting with prospective litigation counsel for FlatWorld and that he assisted in negotiating an engagement agreement with Hagens Berman. Overson Br. Decl. Ex. A ¶ 32-33. Despite FlatWorld's alleged knowledge (through Jennifer McAleese) of John McAleese's conflict, the facts pleaded show that FlatWorld substantially assisted in and encouraged his continued breach of his ethical duty.

Furthermore, Apple argues that "FlatWorld had actual and/or imputed knowledge since at least the beginning of 2007" that John McAleese was conflicted from being adverse to Morgan Lewis's client, Apple. Br. 7; Reply 5 (citing Opp'n 10). Although FlatWorld admits that it had actual knowledge in March 2012, Apple argues that it had imputed knowledge of the conflict much earlier, either "through its attorney Mr. McAleese and/or its manager Ms. McAleese." Br. 7. John McAleese knew or should have known about Morgan Lewis's work on Apple matters, and any knowledge Jennifer McAleese had about Morgan Lewis's representation of Apple would be

6

imputed to FlatWorld. Apple cites to evidence that Jennifer McAleese knew since 2007 of her husband's potential conflicts. Br. 8 (citing Overson Br. Decl. Ex. B). In one particular email exchange from July 2007, a potential litigation counsel for FlatWorld noted that Jennifer McAleese had set up a meeting with a potential patent purchaser through someone at Morgan Lewis, which was "conflicted out." Overson Br. Decl. Ex. B. These allegations further support the plausibility of FlatWorld's liability for aiding and abetting.

FlatWorld argues that "[t]here is nothing in the amended counterclaims to suggest that FlatWorld intended to engage [John] McAleese for the conscious purpose of assisting him and [Morgan Lewis] *to breach any duty of loyalty to Apple*." Opp'n 12. FlatWorld also argues that it is implausible that Jennifer McAleese "reached a conscious decision to participate in tortious activity for the purpose of assisting her husband in performing a wrongful act – to participate in a breach of fiduciary duty to Apple." Opp'n 2 (brackets and quotation marks omitted). What Jennifer McAleese did was nothing "more than obtaining free legal advice from a family member," and FlatWorld, "over six years [ ] never sought Apple confidential or proprietary information that would have been useful in litigation against Apple." Opp'n 6. While Apple alleges that FlatWorld solicited legal advice from John McAleese, FlatWorld asserts that Apple cannot plausibly allege that FlatWorld sought to cause him and Morgan Lewis to breach their duty of loyalty to Apple. Opp'n 9-10.

FlatWorld's arguments may prove to be valid defenses, but they are immaterial at the pleading stage. Apple is not required to plead that "FlatWorld intended to engage [John] McAleese for the conscious purpose of assisting him and [Morgan Lewis] *to breach any duty of loyalty to Apple*." Opp'n 11. All that it must plead is (1) actual knowledge that John McAleese's conduct constituted a breach of duty and (2) "substantial assistance or encouragement." *See In re First Alliance Mortgage Co.*, 471 F.3d 977, 993 (9th Cir. 2006) ("aiding and abetting liability under California law, as applied by the California state courts, requires a finding of actual knowledge, not specific intent"). Apple has done so, as discussed above. It is enough that it alleged that FlatWorld "took knowing action that substantially aids tortious conduct." Reply 5 (citing *Nielson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d. 1101, 1134-35 (C.D. Cal. 2003)).

7

FlatWorld argues that Apple's counterclaims rely on speculative statements imputing knowledge of Morgan Lewis's representation of Apple to "as early as 2007" on "information and belief" without giving the basis for such beliefs. Opp'n 10, 11. FlatWorld argues that Apple has no evidence that FlatWorld knew of the conflict before March 2012, as it stated in its interrogatory answers. Opp'n 11. In addition, the two emails cited by Apple in Paragraph 21 of the Counterclaims do not support it: one references a conflict of interest with Rembrandt, not Apple, and the second email fails to show knowledge of a conflict by FlatWorld. FlatWorld argues that the more plausible explanation for Jennifer McAleese's conduct is that she is simply seeking advice from a family member, not that she and FlatWorld sought to assist John McAleese and Morgan Lewis in breaching their duty of loyalty to Apple. Opp'n 12.

While FlatWorld is correct that Apple has made certain allegations "on information and belief," its allegations are not devoid of factual support. FlatWorld disputes the exact point in time at which it had actual or imputed knowledge of John McAleese's conflict, but the issue is whether FlatWorld knew of the conflict at any point and gave substantial assistance or encouragement to John McAleese's breach, not whether Apple correctly pleaded that it happened either in 2007 or 2012. As for the two emails disputed by FlatWorld and cited by Apple in Paragraph 21 of the Counterclaims, while they do not definitively establish that FlatWorld knew about John McAleese's conflict, they provide a plausible inference that it did and also provide the factual bases for Apple's allegation that FlatWorld knew of the conflict since 2007. By alleging that Jennifer McAleese recognized that "John McAleese is unable to speak with you as his law firm, Morgan Lewis & Bockius represents Rembrandt" and that FlatWorld *may* have told a potential litigation counsel of Morgan Lewis's conflict, in addition to other allegations, Apple provides factual support for its assertion that FlatWorld had knowledge of John McAleese's breach of duty. The weight of those emails, as with that of other evidence alleged, however, is a question of fact that the Court cannot decide on a motion to dismiss.

FlatWorld argues that Apple cannot show substantial assistance in the breach of the duty of loyalty. FlatWorld points out that the Court found that the breach of the duty of loyalty occurred when John McAleese performed legal work for FlatWorld, but FlatWorld did not provide

"substantial assistance" in causing McAleese to do so. Opp'n 13. In any event, whatever "assistance" FlatWorld provided, such as by asking for legal advice, is de minimis. Opp'n 13.

At this stage and given the low showing necessary for granting leave to amend, Apple's allegations are sufficient to plead that FlatWorld gave "substantial assistance or encouragement" to John McAleese in his breach of duty. It does not matter whether the assistance provided by FlatWorld is de minimis. Among other claims, Apple alleges that FlatWorld (through Jennifer McAleese) explicitly sought John McAleese's help and received it, whether in drafting documents, discussing how to respond to potential patent purchasers, or assisting in efforts to retain litigation counsel. Overson Br. Decl. Ex. A ¶¶ 27, 30, 33. The consistent seeking and receiving of John McAleese's assistance allegedly happened over a number of years—this is not a situation where "[t]he assistance of or participation by the defendant may be so slight that he is not liable for the act of the other." Opp'n 13 (citing Restatement (Second) of Torts § 876(b) cmt. (1965)).

FlatWorld argues that Apple fails to plausibly allege a duty in tort. While John McAleese may have acted wrongly, FlatWorld argues that it has no duty to not receive legal services provided in violation of a duty to its attorneys' client. Opp'n 3. FlatWorld argues that Apple's claims lead to the absurd result that clients will have a duty to know about the representations of any firm they seek to represent them, lest they be liable for aiding and abetting any breach of fiduciary duty that occurs. Opp'n 14.

FlatWorld provides no legal support for the proposition that Apple must plead duty to support its claim. Indeed, one court noted, "No California case . . . holds that a party must owe the plaintiff a duty before he or she can be held liable as an aider and abettor." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1133 (C.D. Cal. 2003). As the test for liability states, all that must be alleged is that the defendant "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act *or* (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Saunders*, 27 Cal. App. 4th at 846. It is enough that FlatWorld knew that John McAleese owed a duty of loyalty to Apple and that FlatWorld was "actively asking for and using Mr. McAleese's free legal advice" to make

FlatWorld liable for aiding and abetting. Reply 7.

FlatWorld also argues that "Apple does not plausibly allege proximate cause" sufficient to show that FlatWorld's actions caused harm to Apple. Opp'n 15. It is not plausible that FlatWorld would not have sued Apple but for the modest assistance John McAleese provided FlatWorld, nor would the world be different. Opp'n 3-4. FlatWorld argues that FlatWorld had invited Apple through a letter to submit prior art relevant to the patent-in-suit in September 2007, but Apple ignored FlatWorld's letter. Opp'n 4. Similarly, FlatWorld argues that Apple's assertion that it would have taken precautionary measures to reduce its patent infringement exposure had John McAleese not breached his duty is implausible since Apple ignored a letter from FlatWorld informing Apple of the patent. Opp'n 17. For that reason, it asserts that Apple cannot argue that John McAleese's breach of duty caused any alleged damaged, including the current action. Opp'n 16.

On the other hand, Apple alleges that had FlatWorld "not encouraged, assisted, and concealed Mr. McAleese's and Morgan Lewis's breaches," this suit would not have happened. John McAleese provided funds and legal advice to FlatWorld, including assisting in finding potential purchasers and negotiating the engagement agreement with Hagens Berman. Reply 10-11. Among other things, Apple alleges that it was harmed because (1) Apple now faces a lawsuit it would not have otherwise faced; (2) Apple paid Morgan Lewis millions of dollars "that Apple was ultimately forced to transition to a new firm"; (3) FlatWorld continued to use John McAleese's "funds to maintain its patent and to tailor its claims more closely to the iPhone"; and (4) FlatWorld destroyed evidence. Reply 9. With regard to (1), Apple argues that the letter FlatWorld sent Apple regarding FlatWorld's reissue application of the patent only gave notice of the application and the opportunity to file a protest identifying prior art; it did not say that FlatWorld was planning to sue Apple. Reply 9 (citing Overson Decl. Ex. G). With regard to (2), Apple argues that it will lose money and expertise from transitioning matters away from Morgan Lewis. Reply 10.

As with duty, FlatWorld cites to no controlling case stating that "[c]ausation is an essential element of an aiding and abetting claim." Opp'n 15. Rather, FlatWorld cites to an Eighth Circuit

10

1    and an Eastern District of New York case, both involving federal securities law; a Southern
2    District of New York case applying New York law; and a Georgia Court of Appeals case applying
3    Georgia law. Opp'n 15 (citing *Metge v. Baehler*, 762 F.2d 621, 624 (8th Cir. 1985); *In re Agape*
4    *Litig.*, 773 F. Supp. 2d 298, 323 (E.D.N.Y. 2011); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d
5    452, 470 (S.D.N.Y. 2001); *White v. Shamrock Building Sys., Inc.*, 294 Ga. App. 340, 343 (Ct.
6    App. 2008)). None apply California law, and the Court will not import elements from other
7    bodies of law. Nor do the parties cite to any case stating whether damage must be pleaded and, if
8    so, how.

9    To the extent that pleading causation or damages is required, Apple has done so. Apple
10   asserts that had it known about the conflict, it "could have terminated its attorney-client
11   relationship with Morgan Lewis in 2007." Instead, it retained Morgan Lewis to handle hundreds
12   of matters over the years. Overson Br. Decl. Ex. A ¶ 48. "Transitioning all of those matters to a
13   new firm has prejudiced and will prejudice Apple in terms of getting new counsel up to speed, loss
14   of institutional knowledge . . . and the inevitable delay caused in both litigation and non-litigation
15   matters by switching counsel." Overson Br. Decl. Ex. A ¶ 48. Further, by concealing its
16   involvement in John McAleese's breach of duty, Apple has been harmed due to the loss of
17   evidence over the years, including Jennifer McAleese's closing of two email accounts and the loss
18   of memory for deponents. Overson Br. Decl. Ex. A ¶ 50. Given the facts described in the Order,
19   the Court is skeptical whether evidence exists to establish causation or damages. But this case is
20   still at the pleading stage, and the allegations are sufficient for pleading purposes.

21   **B. Tortious Interference With Contract**

22   "The elements which a plaintiff must plead to state the cause of action for intentional
23   interference with contractual relations are (1) a valid contract between plaintiff and a third party;
24   (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a
25   breach or disruption of the contractual relationship; (4) actual breach or disruption of the
26   contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
27   50 Cal. 3d 1118, 1126 (1990). "To establish the claim, the plaintiff need not prove that a
28   defendant acted with the primary purpose of disrupting the contract, but must show the

11

defendant's knowledge that the interference was certain or substantially certain to occur as a result of his or her action." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004).

The Court concludes that Apple's proposed amendments for tortious interference with contract are not futile or legally insufficient. Apple alleges that Morgan Lewis and John McAleese were bound to Apple through Engagement Agreements and a Master Legal Services Agreement. Overson Br. Decl. Ex. A ¶ 13. In addition, Morgan Lewis and John McAleese were bound to Apple through the rules of professional responsibility. Overson Br. Decl. Ex. A ¶ 13. Apple alleges that FlatWorld knew about such obligations, as evidenced by Jennifer McAleese's knowledge that John McAleese could be liable for conflicts of interest, John McAleese's drafting of a letter on FlatWorld's behalf referencing Apple, and a potential litigation counsel's knowledge of the conflict. Overson Br. Decl. Ex. A ¶¶ 21, 27.

Apple also alleges that FlatWorld continued to seek John McAleese's legal advice despite knowledge of the conflict. "FlatWorld accepted financial contributions from Apple's attorney, Mr. McAleese," used John McAleese to retain Hagens Berman, and used him to find a company that would buy FlatWorld's patent to sue Apple, as prohibited by the agreement. Br. 9. In addition, John McAleese's statement to another Morgan Lewis attorney that he is "not at liberty to allow you to disclose this potential lawsuit now" is evidence that "FlatWorld affirmatively took steps to prevent Morgan Lewis from disclosing [John McAleese's relationship with FlatWorld] to Apple, even though Morgan Lewis had a contractual duty to do so." Br. 9 (citing Dkt. No. 149 Ex. 5). Given Jennifer McAleese's knowledge that a conflict of interest may prevent John McAleese from speaking with certain parties or about certain topics, it is plausible that FlatWorld knew that its continued reliance on John McAleese's actions was "substantially certain" to disrupt Apple's relationship with Morgan Lewis. *Reeves*, 33 Cal. 4th at 1148.

Apple alleges that there was an actual breach or disruption of the contractual relationship, as shown by Apple's pursuit of this matter and its transition of matters away from Morgan Lewis. *See, e.g.*, Overson Br. Decl. Ex. A ¶ 48. And, as discussed above, Apple alleges that it was harmed. Therefore, it states a claim for tortious interference with contract because it is not the case that there is "no set of facts [that] can be proved under the amendment to the pleadings that

would constitute a valid and sufficient claim [ ]." *Miller*, 845 F.2d at 214.

FlatWorld argues that Apple fails to plausibly allege that "FlatWorld knew of the terms of any agreement with Apple, or even that an actual contractual relationship existed before March[] 2012." Opp'n 4. As with Apple's "aiding and abetting" charge, FlatWorld argues that Apple's claim would make clients liable for breaches of the duty of loyalty. Opp'n 19. FlatWorld argues that Apple's allegation that FlatWorld was "procuring, using, and/or receiving legal advice from McAleese directly adverse to the interests of Apple" does not plead wrongful conduct. Further, Apple fails to plead proximate cause. Finally, the damages alleged are speculative. Opp'n 20.

FlatWorld's arguments are unpersuasive. First, as explained above, the Court finds that Apple adequately alleges that FlatWorld knew of an actual contractual relationship between Morgan Lewis and John McAleese and Apple. Second, there is no requirement that Apple allege that FlatWorld "knew of the *terms* of any agreement." Third, to the extent that FlatWorld may be liable for this cause of action, it is because it acted inappropriately despite the fact that it knew that John McAleese was conflicted. This conclusion does not mean that all clients would be liable for breaches of their attorneys' duty of loyalty; rather, only clients who knowingly take part in such breaches in a manner that interferes with others' contracts would be held liable. Fourth, the elements of the cause of action do not include independently wrongful conduct or proximate causation, nor has FlatWorld cited any cases to the contrary. Finally, as discussed above, Apple has adequately pleaded damage.

### C. "Unlawful" Prong of Unfair Competition Law

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." *Daugherty v. Am. Honda Motor Co., Inc.*, 51 Cal. Rptr. 3d 118, 128 (Ct. App. 2006). This includes common law torts.

*Cortez v. Global Ground Support, LLC*, No. 09-cv-4138-SC, 2009 WL 4282076, at *2-*3 (N.D. Cal. Nov. 25, 2009). The Ninth Circuit has held that intentional interference with a contract is sufficient to establish a UCL claim. *See, e.g.*, *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007).

Because the Court has already found that Apple sufficiently pleads tortious interference with contract and aiding and abetting liability, the Court also concludes that Apple adequately pleads a cause of action under the UCL's "unlawful" prong.

FlatWorld argues that Apple fails to state a UCL claim because FlatWorld and Apple are not direct competitors, and the UCL only applies to direct competition or consumer protection cases. Opp'n 20-21. FlatWorld is incorrect. As Apple correctly points out, the excerpts from cases cited by FlatWorld in its Opposition brief are irrelevant because they address claims under the "unfair" prong of the UCL. Reply 14. They have nothing to do with the "unlawful" prong, which is the only prong under which Apple brings its UCL claim and which, as noted above, recognizes claims premised on any violation of law.

## IV. BAD FAITH

There is no evidence before the Court that Apple is seeking leave to amend its pleadings based on bad faith, and FlatWorld provides no argument or evidence to the contrary. Accordingly, this factor weighs in favor of Apple.

## CONCLUSION

The Ninth Circuit has instructed that Rule 15's policy in favor of amendment is "to be applied with extreme liberality." *Eminence Capital*, 316 F.3d at 1051. For the reasons above, Apple's Motion for Leave to Amend Answer and Counterclaims is GRANTED. Apple shall file its amended Answer and Counterclaim within three days of the date of this Order.

**IT IS SO ORDERED**.

Dated: December 6, 2013



WILLIAM H. ORRICK
United States District Judge